**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel@edge.law
Seth W. Wiener (SBN 203747)
seth@edge.law
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Tarek H. Zohdy (SBN 247775)
tarek.zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs
ANDREW AXELROD and ELIOT BURK

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf of all others similarly situated, | Case No.: 4:21-cv-06770-JSW |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| LENOVO (UNITED STATES) INC., a Delaware corporation, | |
| Defendant. | |

Plaintiffs Andrew Axelrod and Eliot Burk ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Lenovo (United States) Inc. ("Lenovo").  Upon personal knowledge as to their own acts and status and upon information and belief as to all other matters, Plaintiffs allege the following:

## INTRODUCTION

1.      This is a class action against Lenovo for false advertising on its website, lenovo.com. Lenovo is the largest computer manufacturer in the world.  To sell more products and maximize its profits, Lenovo displays false regular prices on its website and advertises false discounts based on those prices.  The regular prices are false because they do not represent the price at which Lenovo actually sells its products.  The discounts are false because they do not represent the actual savings obtained by customers.  This unlawful marketing practice, commonly known as false reference pricing, artificially increases demand for Lenovo's products and induces customers to pay more for Lenovo-branded products based on a false impression of their value.  Lenovo's use of false regular prices and false discounts is pervasive throughout its website.

2.      California law and federal regulations specifically prohibit this type of false advertising.  For example, California's consumer protection statute prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Civ. Code § 1770(a)(13).  California's false advertising law prohibits advertising a former price unless it was the prevailing market price during the previous three months.  Bus. & Prof. Code § 17501.  As explained in the Federal Trade Commission's (FTC) Guide Against Deceptive Pricing,

> [When] the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1.

3.      Lenovo willfully violates these laws.  For example, in September 2019, Plaintiff Eliot Burk purchased a ThinkPad P52 Mobile Workstation laptop on Lenovo's website.  Lenovo advertised the laptop for $1,189 and represented to Burk that he would save $1,170 off the regular price of $2,359 with the coupon code WSCLEARANCE—an abbreviation for Workstation Clearance.

4.      However, $2,359 was not the regular price of the laptop.  In fact, discovery will show that Lenovo never sold Burk's laptop for anywhere near $2,359.  For example, in August 2019, one month before Burk's purchase, Lenovo sold the laptop for $1,229.  In July 2019, two months before Burk's purchase, Lenovo sold the laptop for $1,169.

5.      Curiously, over the same time period, Lenovo increased the regular price of the laptop from $1,559 in July, to $2,049 in August, to $2,359 in September.  As depicted in the screenshots below, with each increase to the regular price, Lenovo advertised that customers were saving even more money.

| July 9, 2019 | August 10, 2019 | September 1, 2019 |
|---|---|---|
| ThinkPad P52 Mobile Workstation | ThinkPad P52 Mobile Workstation | ThinkPad P52 Mobile Workstation |
| Part Number: 20M9S0AW00 | Part Number: 20M9S0AW00 | Part Number: 20M9S0AW00 |
| Web Price:          $1,559.00 | Web Price:          $2,049.00 | Web Price:          $2,359.00 |
| After Instant Savings:   $1,409.00 | After Instant Savings:   $1,429.00 | **After eCoupon:** |
| **After eCoupon:** | **After eCoupon:** | **$1,189.00** |
| **$1,169.00** | **$1,229.00** | Savings:          $1,170.00 |
| Savings:          $390.00 | Savings:          $820.00 | Use eCoupon: **WSCLEARANCE** |
| Use eCoupon: **THINKBFNJ** | Use eCoupon: **THINKBIG** | Ships in 1-3 business days. |
| eCoupon limited to 2 units only | Ships same business day if ordered by 2PM ET | |
| Ships same business day if ordered by 2PM ET | | |
| 🛒 ADD TO CART | 🛒 ADD TO CART | 🛒 ADD TO CART |

6.      According to Lenovo, a customer who purchased Burk's laptop in July 2019 for $1,169 saved $390, while a customer who purchased the same laptop in September 2019 for $1,189 saved $1,170.

7.      Lenovo's artificial increases to the regular price demonstrate the fraudulent nature of its pricing scheme.  Rather than advertise the true regular price of its products—i.e., the price at which Lenovo formerly sold the products—Lenovo inflates the regular price to make customers believe they are getting an incredible deal—here, $1,170 off the regular price.

8.      Indeed, to justify the Workstation Clearance sale that was advertised to Burk, it appears Lenovo first increased the regular price of the laptop, and then advertised it as 50% off, as depicted in the email marketing newsletter below, which was sent by Lenovo on September 2, 2019, three days before Burk's purchase.

FIRST AMENDED CLASS ACTION COMPLAINT



9.      The "Big Summer Workstation Blowout" advertised in Lenovo's newsletter was hardly a "blowout sale," as reasonable consumers understand that term.[1]  The sale price of Burk's laptop in September was only forty dollars less than the price in August, and twenty dollars *more* than the price in July.

10.      In addition to harming consumers, Lenovo's deceptive pricing scheme also harms competition by giving Lenovo an unfair advantage over other computer manufacturers that do not engage in this type of false advertising.  After all, a customer is more likely to purchase a $2,000 laptop advertised at 50% off its regular price than pay full price for a $1,000 laptop.

11.      Lenovo advertises false regular prices and false discounts for hundreds of products on its website every day.  The pervasive, ongoing nature of its pricing scheme demonstrates that false reference pricing is central to its overall marketing strategy.  In bringing this lawsuit, Plaintiffs intend curb this and other unlawful and deceptive marketing practices used on Lenovo's website, and seek compensation for themselves and all others similarly situated who have been duped by Lenovo's false advertising.

**THE PARTIES**

12.      Plaintiff Andrew Axelrod ("Axelrod") is a California citizen.  On January 1, 2021, Axelrod accessed Lenovo's website from his residence in San Francisco, California, and purchased a laptop from Lenovo.

13.      Plaintiff Eliot Burk ("Burk") is a California citizen.  On September 5, 2019, Burk accessed Lenovo's website from his workplace in California and purchased a laptop from Lenovo.

---

[1] *See* https://en.wiktionary.org/wiki/blowout_sale (defining blowout sale to be "a sale that is advertised as having bigger than usual discounts, clearance") (last visited Aug. 15, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT

14.     Defendant Lenovo (United States) Inc. ("Lenovo") is a Delaware corporation, with its principal place of business at 8001 Development Dr. Morrisville, North Carolina, 27560. Lenovo manufactures and sells computers and related peripheral parts, software, and services to customers in California through its website, lenovo.com.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate claims of the members of the proposed Classes exceed $5 million (exclusive of interest and costs), the proposed Classes consist of 100 or more members, and at least one member of the proposed Classes is a citizen of a different state than Lenovo.

16.     California has personal jurisdiction over Lenovo because Lenovo is registered with the California Secretary of State and authorized to do business in California; maintains offices and is licensed to do business and does business in California; and has sufficient minimum contacts with California, having intentionally availed itself of the California market through the promotion, marketing, and sale of products in California so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions which give rise to Plaintiffs' claims occurred in San Francisco, California.

## INTRADISTRICT ASSIGNMENT

18.     Pursuant to the Northern District of California's Local Rule No. 3-2(d), assignment of this matter to the San Francisco Division or Oakland Division is appropriate because this action arises in San Francisco County, in that a substantial part of the events or omissions which give rise to the claims asserted herein occurred in San Francisco County.

## FACTUAL ALLEGATIONS

19.     Lenovo is the U.S. subsidiary of Lenovo Group Limited ("Lenovo Group"), a Chinese multinational technology company.  Lenovo Group is a $60 billion Fortune Global 500 company and the largest computer manufacturer in the world.  In the first half of 2021, Lenovo

Group had roughly a 25% market share of the global PC market and a 15% market share in the United States.  In 2020 alone, Lenovo Group shipped over 10 million computers to the United States.[2]

20.     Within the United States, Lenovo employs thousands of employees across its operations, sales, research, manufacturing, and call centers in California, Georgia, North Carolina, and Texas.  Lenovo's customers include individual consumers, small to medium-sized businesses, state and local governments, healthcare providers, K-12 and higher education organizations, and large corporations.

21.     Lenovo does not have any physical retail stores in the United States.  Instead, Lenovo directly markets and sells its products and services directly to customers through its website, lenovo.com.[3]  In June 2021, Lenovo's website received over 100 million visits, of which approximately 18% originated from the United States.[4]

22.     Lenovo's online success has in significant part resulted from its use of false regular prices, false discounts, and fake limited-time offers, which Lenovo advertises are "available exclusively online at Lenovo.com."

**A.      Lenovo's Pricing Scheme**

23.     Lenovo creates an illusion of savings on its website by advertising false regular prices and false discounts based on those prices.

24.     Before August 25, 2021, Lenovo perpetrated this scheme by advertising a **regular price**—i.e., the product's full, non-discounted price—which it typically displayed as the "Web Price," "Base Price," or simply as a price in strikethrough typeface (e.g., ~~$1,199.99~~).  The Web Price, Base Price, and strikethrough price were used interchangeably on Lenovo's website.

25.     Below the regular price, Lenovo advertised a **sale price**, which was typically described as the "After Instant Savings" or "After eCoupon" price.  This price (or the lower of the

---

[2] Sources: https://news.lenovo.com/pressroom/press-releases/lenovo-climbs-to-159-on-fortune-global-500-list; https://www.gartner.com/en/newsroom/archive.

[3] Customers that access Lenovo's website from the United States are automatically redirected to Lenovo's U.S. website aimed at customers in the United States: https://www.lenovo.com/us/en/pc.

[4] Source: https://www.semrush.com/analytics/traffic/overview/lenovo.com.

two prices when both were advertised) was the price at which Lenovo sold the product.

26.     Below the sale price, Lenovo advertised a **discount** or **savings**, which was typically displayed as a dollar amount equal to the difference between the regular price and the sale price. Lenovo also advertised the discounts as a percentage equal to the amount of savings divided by the regular price.  Lenovo prominently advertised the purported savings on its website alongside words or phrases such as "Savings of," "Instant Saving," "SAVE ___%" "You're saving," and "Item Discount."

27.     On August 25, 2021, Lenovo redesigned its website, but the substance of its deceptive pricing scheme remains the same.  For example, instead of referring to the regular price as a "Web Price," Lenovo now displays it as a strikethrough price.  Instead of displaying the sale price after the terms "After Instant Savings" or "After eCoupon," Lenovo displays it in larger font directly below the strikethrough price.  Lastly, instead of advertising the discount as either the dollar amount or percentage saved, Lenovo now almost always advertises it as both.

28.     Below are examples of the same product advertised on Lenovo's website from before and after the redesign.



29.     Plaintiffs and other reasonable consumers interpret Lenovo's Web Prices and strikethrough prices to represent the actual price at which Lenovo regularly sells its products. Indeed, Lenovo expressly states on its website that the advertised savings are "**referenced off regular Lenovo web prices**."

FIRST AMENDED CLASS ACTION COMPLAINT

30.     After customers add a product to their online shopping cart on Lenovo's website, they are directed to additional pages where Lenovo offers them additional software, services, and accessories.  On each of these pages, Lenovo prominently displays the regular prices of the products being purchased and the savings the customers are purportedly receiving.  Below are examples of these representations made to customers during the checkout process from before and after the redesign.



31.     Once customers reach the page displaying their online shopping cart, Lenovo again displays the regular prices of the products in their cart and the savings the customers are purportedly receiving.  Below the estimated total, Lenovo tells the customers in bold, green font "**You're saving _____.**"  Below are examples of these representations made to customers in their online shopping carts from before and after the redesign.



FIRST AMENDED CLASS ACTION COMPLAINT

1

**August 27, 2021**



32.     Customers are then directed to the checkout page where they input their shipping address and credit card information and place their order.  On the checkout page, Lenovo again promises customers savings equal to the difference between the advertised regular price and the price to be paid by the customers.  These terms are part of the contract that is entered into between Lenovo and its customers, and are part of the bargain that is struck between them.

**August 10, 2021**          **August 27, 2021**



33.     The savings promised by Lenovo are memorialized in an order confirmation Lenovo sends to customers after receiving their order.



-8-
FIRST AMENDED CLASS ACTION COMPLAINT

**B.      Lenovo's False Regular Prices and False Discounts**

34.      For the vast majority of products offered on Lenovo's website for the vast majority of the time, Lenovo advertises a regular price, a sale price, and a corresponding discount.  But discovery will show that the vast majority of regular prices are false because they do not represent the actual prices at which Lenovo formerly sold the products for a reasonably substantial period of time.

35.      Lenovo's pricing scheme is misleading because Lenovo's "regular" prices do not reflect the actual regular prices, as Plaintiffs and reasonable consumers understand that term, and the advertised "savings" do not represent the actual savings, as Plaintiffs and reasonable consumers understand that term.  Moreover, Lenovo's regular prices violate California law because they do not reflect the prevailing market price during the previous three months.

36.      For example, on July 15, 2021, Lenovo advertised a ThinkPad X1 Carbon Gen 8 Intel (14"), part number 20U9001NUS ("X1 Laptop")—the same laptop Plaintiff Axelrod purchased.  Lenovo advertised that the laptop's regular price was $2,279, and offered it for sale for 40% off, or $1,367.40.  Yet, discovery will show that since releasing the X1 Laptop in or around June 2020, Lenovo rarely, if ever, sold the laptop for anywhere near the advertised regular price of $2,279, as indicated by the pricing data below.

**Advertised Prices of X1 Laptop**

| Date | Reg. Price | Sale Price |
|---|---|---|
| 6/15/20 | $2,279.00 | $1,595.30 |
| 7/13/20 | $2,279.00 | $1,367.40 |
| 8/12/20 | $2,279.00 | $1,367.40 |
| 9/15/20 | $2,279.00 | $1,249.99 |
| 10/15/20 | $2,279.00 | $1,367.40 |
| 11/15/20 | $2,279.00 | $949.99 |
| 12/15/20 | $2,279.00 | $949.99 |
| 1/9/21 | $2,279.00 | $949.99 |
| 2/17/21 | $2,279.00 | $949.99 |
| 3/13/21 | $2,319.00 | $1,391.40 |
| 4/16/21 | $2,319.00 | $1,391.40 |
| 5/10/21 | $2,329.00 | $1,397.40 |
| 6/15/21 | $2,349.00 | $1,409.40 |
| 7/15/21 | $2,279.00 | $1,367.40 |

FIRST AMENDED CLASS ACTION COMPLAINT

37.     Lenovo's use of false regular prices is so deeply ingrained in its marketing strategy that often when Lenovo increases the sale price of a product, it also increases the regular price so as to maintain a certain percentage discount.   For example, between April 16, 2021 and June 15, 2021, Lenovo incrementally increased the sale price of the X1 Laptop.  With each increase to the sale price, Lenovo increased the regular price by a proportional amount so as to maintain a 40% discount, as shown below.

**Advertised Discount of X1 Laptop**

| Date | Reg. Price | Sale Price | Discount |
|------|-----------|-----------|----------|
| 4/16/21 | $2,319.00 | $1,391.40 | 40% |
| 5/10/21 | $2,329.00 | $1,397.40 | 40% |
| 6/15/21 | $2,349.00 | $1,409.40 | 40% |

38.     The parallel increases to the sale price and regular price demonstrate that the regular prices did not reflect the actual price at which Lenovo formerly sold the X1 Laptop.  Rather, Lenovo deliberately inflated the regular price to convey a false sense of savings to potential customers—here, 40% off.

39.     Discovery will show that Lenovo's increases to the sale price and regular price were uniform across Lenovo's ThinkPad X1 product line.  For example, below are tables reflecting price increases for two other ThinkPad X1 laptops over the same time period.  For each laptop, Lenovo increased the sale price and regular price in parallel to maintain a 40% discount, as shown below.

**Advertised Discount of ThinkPad X1, #20U9005LUS**

| Date | Reg. Price | Sale Price | Discount |
|------|-----------|-----------|----------|
| 4/16/21 | $3,219.00 | $1,931.40 | 40% |
| 5/10/21 | $3,229.00 | $1,937.40 | 40% |
| 6/15/21 | $3,249.00 | $1,949.40 | 40% |

**Advertised Discount of ThinkPad X1, #20U9005MUS**

| Date | Reg. Price | Sale Price | Discount |
|------|-----------|-----------|----------|
| 4/16/21 | $3,259.00 | $1,955.40 | 40% |
| 5/31/21 | $3,269.00 | $1,961.40 | 40% |
| 6/15/21 | $3,289.00 | $1,973.40 | 40% |

40.     Below is an example of the 40% discount that was advertised across Lenovo's ThinkPad X1 product line in April 2021.



41.     Discovery will show that Lenovo advertises false regular prices and false discounts for nearly every product offered for sale on its website.  For example, below are charts reflecting the regular and sale prices of ten different products advertised on Lenovo's website for a period of more than three months.  As shown, the sale price rarely, if ever, equals the regular price. Furthermore, for several products, Lenovo appears to have increased the advertised regular price despite not having previously sold the product at that price.





-11-

FIRST AMENDED CLASS ACTION COMPLAINT



FIRST AMENDED CLASS ACTION COMPLAINT

42.     Lenovo perpetually advertises false regular prices and false discounts on its website. For example, on May 10, 2021, Lenovo advertised eleven different rack servers for sale on its website.  Lenovo advertised that each server was significantly discounted—ranging between 40% and 58% off the regular price—and represented that customers were saving anywhere between $624.90 and $3,679.25.  Over the next three months, Lenovo continued to advertise each of the servers at a significant discount, and only for a fraction of the days did Lenovo advertise any of the servers at regular price, as shown below.

**Rack Server Prices from May 10, 2021 to August 23, 2021**

| Part Number | Days of data | Days at regular price | Average Discount |
|---|---|---|---|
| 7D2VA01ANA | 102 | 4 | 48% |
| 7D2XA01HNA | 101 | - | 47% |
| 7X02A0D7NA | 100 | - | 40% |
| 7X04A0AANA | 101 | - | 53% |
| 7X06A0HLNA | 101 | - | 38% |
| 7X08A0A0NA | 101 | - | 54% |
| 7X99A08FNA | 101 | 4 | 51% |
| 7Y03A086NA | 101 | 4 | 52% |
| 7Y51A07LNA | 96 | - | 43% |
| 7Y99A01CNA | 101 | 4 | 51% |
| 7Z01A03DNA | 101 | - | 56% |

43.     As of the filing of the original complaint in this action, Lenovo continued to advertise each of the servers above at a significant discount off the advertised regular price.

44.     Pricing data collected by Plaintiffs' counsel for hundreds of products on Lenovo's website over the course of more than three months revealed that on average, Lenovo's products are on sale approximately 75–80% of the time.

**C.     Lenovo's Fake Limited-Time Offers**

45.     In addition to advertising false regular prices and false discounts, Lenovo further misrepresents that the discounts are available only for a limited time.  By giving potential customers the false impression that they will miss out on the advertised markdowns if they do not make a purchase soon, Lenovo induces customers to make purchases they would not have otherwise made and deters them from shopping at competitor websites.

46.    For that reason, the FTC's Guide Against Deceptive Pricing provides:

[Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited.  In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful.

16 C.F.R. § 233.5.

47.    Lenovo employs a variety of means to impart this false sense of urgency on potential customers.  One way is by simply advertising that its discounts will not last.  Below are a few quoted examples of such statements found throughout Lenovo's website.

- **The limited time discounts and deals on laptops found here can save you some serious coin on a new laptop for work, school, home, or gaming.**

- **These are the best deals for laptops, don't miss them.**

- **Shop now while we have the best deals on laptop computers.**

- **Don't miss these Lenovo promo codes and the best deals for computers as they may not last!**

- **For a limited time only, pay what Lenovo employees pay on select products.**

- **Don't miss today's doorbusters.**

- **Find the best deals on laptops today.**

- **This weekend only!**

48.    Another way Lenovo imparts a false sense of urgency on customers is by using fake coupon codes it calls "eCoupons."

49.    Ordinarily, coupons are used by retailers to sell the same product at two different prices.  As the theory goes, cost-sensitive shoppers who are unwilling to pay regular price will still purchase the item if a coupon is available.  On the other hand, cost-*in*sensitive shoppers will pay regular price regardless of whether a coupon is available.  By selling the same item at a lower price to customers who are not willing to pay more, and at a higher price to customers who are, a retailer can bring in more revenue than by either (a) selling the item to both customers at the lower price, or (b) selling the item to only one customer at the higher price.  Thus, online retailers generally do not advertise their coupons on their own website, for doing so would result in both types of customers taking advantage of the coupon's discount, thereby defeating the purpose of offering a coupon in

the first place.  Moreover, virtually every online retailer requires that customers take some action, such as entering the coupon code during the checkout process, in order to receive the benefits of the coupon.

50.     Lenovo is unique among online retailers in that it both prominently displays its coupons on its website and does not require that customers take any action to receive the coupons' benefits.  As stated on Lenovo's website, "**Lenovo coupon codes deliver deep discounts on top [sic] Lenovo's laptop discount sale. Just click ADD TO CART on any product listed with a Lenovo eCoupon and the savings will apply automatically at checkout.**"  In other words, every customer receives the savings associated with Lenovo's coupons, regardless of whether the customer enters the coupon code during checkout, or is even aware of the coupon's existence.  But automatically applying the coupon to all customer purchases defeats the very purpose of using coupons in the first place—that is, to charge different prices to different customers.

51.     Lenovo's eCoupons are a sham.  Lenovo uses them merely as another means of misleading customers into believing that its discounts will not last.  Indeed, that is precisely what Lenovo tells customers on its website: "**Don't miss these Lenovo promo codes and the best deals for computers as they may not last!**"

52.     One way Lenovo accomplishes this deception by incorporating specific words and references into the coupon codes that indicate the discount will soon expire.

53.     For example, on March 13, 2021, Lenovo advertised the regular price of Plaintiff Axelrod's X1 Laptop as being $2,319.  However, Lenovo told customers they could save $927.60 if they "**Use eCoupon: THINKMAR**"[5]—a reference to Lenovo's ThinkPad line of computers and the month of March.  A reasonable consumer is thus led to believe that the coupon code and corresponding savings will expire at the end of March.

54.     While the coupon code did in fact expire at the end of March, the corresponding savings did not.  Instead, Lenovo merely updated the coupon code to THINKAPR and continued to advertise the laptop at the same price and discount.

---

[5]     This statement is in itself misleading because customers do not have to "use" the coupon to receive the discount.  As discussed above, Lenovo's coupons automatically apply to all customers.





55.    Lenovo's use of fake coupon codes is pervasive and uniform.  For example, Lenovo used the same ploy when advertising the ThinkPad X1 P/N 20U9005MUS.  In March, Lenovo advertised a 40% discount together with the coupon code THINKMAR.  But, predictably, the 40% discount did not expire at the end of March.  Lenovo merely updated the coupon code to THINKAPR and continued to advertise the laptop at the same price and the same discount.

56.    Similarly, on June 28, 2021, Lenovo advertised the regular price of the ThinkPad X1 P/N 20U9005MUS as being $3,289.  However, Lenovo told customers they could save $1,315.60 if they "**Use eCoupon: THINKJUNE.**"  A reasonable consumer considering purchasing the laptop is

FIRST AMENDED CLASS ACTION COMPLAINT

thus induced to complete her purchase within two days (before the end of June) lest she miss out on the discounted price of $1,973.40.  In fact, she would have been better off waiting because in July, Lenovo began selling the laptop for $1,931.40—forty dollars less than the price in June.

| June 28, 2021 | July 5, 2021 |
|---|---|
| Web Price: $2,349.00 | Web Price: $2,279.00 |
| After eCoupon: | After eCoupon: |
| **$1,409.40** | **$1,367.40** |
| Savings: $939.60 | Savings: $911.60 |
| Use eCoupon: THINKJUNE | Use eCoupon: THINKJULY |
| eCoupon Limit to 2 units only | eCoupon Limit to 2 units only |
| Ships FREE Next Business Day | Ships FREE Next Business Day |

57.     The table below reflects discounts and corresponding coupon codes Lenovo advertised for the ThinkPad X1 P/N 20U9005MUS over a span of five months.  As shown, each month Lenovo updated the coupon code to incorporate the name of the new month, while continuing to advertise the laptop at 40% off.

**Coupon Codes for ThinkPad X1 P/N 20U9005MUS**

| Date | Reg. Price | Sale Price | Discount | Coupon Code |
|---|---|---|---|---|
| 2/3/21 | $3,219.00 | $1,931.40 | 40% | THINKFEB |
| 3/9/21 | $3,259.00 | $1,955.40 | 40% | THINKMAR |
| 3/31/21 | $3,259.00 | $1,955.40 | 40% | THINKMAR |
| 4/6/21 | $3,259.00 | $1,955.40 | 40% | THINKAPR |
| 4/16/21 | $3,259.00 | $1,955.40 | 40% | THINKAPR |
| 5/31/21 | $3,269.00 | $1,961.40 | 40% | THINKMAY |
| 6/28/21 | $3,289.00 | $1,973.40 | 40% | THINKJUNE |
| 7/5/21 | $3,219.00 | $1,931.40 | 40% | THINKJULY |

58.     In addition to the names of months, Lenovo uses other references in its coupon codes to mislead customers into believing they are getting a limited-time offer.  Below are a few examples of such coupon codes.

| Coupon Code | Reference |
|---|---|
| THINKSGIVING2 | Thanksgiving |
| DAYLIGHTSAVE10 | Daylight savings |
| THINKEASTER | Easter holiday |
| MEMORIAL70 | Memorial Day |
| GAMERDADS | Father's Day |
| B2SCHOOLDB3 | Back to school |

-17-
FIRST AMENDED CLASS ACTION COMPLAINT

| WEEKENDSALE | Weekend sale |
|---|---|
| WSCLEARANCE | Clearance sale |
| BLOWOUT30 | Blowout sale |
| YOGAFIRESALE | Fire sale |
| WSDOORBUSTER | Doorbuster |
| BFFLASHDEALS | Flash sale |

59.     In addition to incorporating misleading words and references into its coupon codes, Lenovo appears to use fake progress bars to further induce customers to quickly make a purchase. For example, on November 17, 2020, Lenovo advertised the X1 Laptop at the discounted price of $949.99 together with the coupon code X1BLACKFRIDAY.  Below the coupon code, Lenovo displayed a progress bar indicating that 77% of the coupons had been claimed.  By implying the coupons were scarce, Lenovo goads customers into making a purchase to avoid missing out on the limited-time offer.

60.     While one would expect the percentage of claimed coupons to increase over time as more customers claim them, curiously, the exact opposite occurred.  A week later, on November 24, 2020, Lenovo advertised that only 65% of the coupons had been claimed.

| November 17, 2020 | November 24, 2020 |
|---|---|
| ThinkPad X1 Carbon Gen 8 | ThinkPad X1 Carbon Gen 8 |
| Part Number: 20U9001NUS | Part Number: 20U9001NUS |
| Web Price: $2,279.00 | Web Price: $2,279.00 |
| After eCoupon: | After eCoupon: |
| $949.99 | $949.99 |
| Savings: $1,329.01 | Savings: $1,329.01 |
| Use eCoupon: X1BLACKFRIDAY | Use eCoupon: X1BLACKFRIDAY |
| eCoupon Limit to 2 units only | eCoupon Limit to 2 units only |
| Ships Next Business Day | Ships Next Business Day |
| 77% of ecoupons claimed | 65% of ecoupons claimed |
| Add to cart | Add to cart |

61.     That the percentage of coupons claimed decreased, rather than increased, over time demonstrates the fraudulent nature of Lenovo's coupon codes.  Indeed, for at least two months after Lenovo represented initially represented that 77% of the coupons had been claimed, Lenovo continued offer the same laptop, at the same price, at the same discount, and simply updated the coupon code every few weeks.

62.     In addition to the use of fake coupons, Lenovo further deceives customers by misrepresenting when its discounts are going to end.  For example, on October 30, 2020, Lenovo advertised the X1 Laptop for $949.99 as part of a "**Black Friday Sneak Peek**" sale.  At the top of the screen, Lenovo displayed a banner, which stated, "**Save up to 58% on ThinkPad X1 Carbon Gen 8 (14").  Hurry! Sale Ends 11/2.**"

**October 30, 2020**



63.     However, the sale did not end on November 2 as Lenovo had represented it would. Instead, Lenovo merely invented a new sale, changed the coupon code, and continued to advertise the X1 Laptop at the same price and discount.  As shown below, Lenovo advertised its new "**Days of Doorbusters**" would end on November 15.

**November 5, 2020**



64.     But the sale did not end on November 15 either.  As shown below, Lenovo continued to invent new sales, each time indicating that the 58% discount would soon expire.

-19-

FIRST AMENDED CLASS ACTION COMPLAINT

**December 14, 2020 – Green Monday, "Sale ends today"**



**December 24, 2020 – End of Year Savings, "Ends 12/30"**



**January 9, 2021 – Best of 2020, "Limited time only"**



**January 22, 2021 – New Year Savings Event, "Ends 1/25"**



65.     Despite repeatedly stating that the 58% discount would soon expire, Lenovo continued to sell the X1 Laptop for the same price and discount.  As shown below, Lenovo maintained this discount for over three months.

**Advertised Prices of the X1 Laptop**

| Date | Reg. Price | Sale Price | Discount | Coupon Code |
|---|---|---|---|---|
| 10/27/20 | $2,279.00 | $949.99 | 58% | THINKSNEAK1 |
| 11/5/20 | $2,279.00 | $949.99 | 58% | X1BLACKFRIDAY |
| 11/17/20 | $2,279.00 | $949.99 | 58% | X1BLACKFRIDAY |
| 12/1/20 | $2,279.00 | $949.99 | 58% | CYBERSUN2 |
| 12/15/20 | $2,279.00 | $949.99 | 58% | THINKHOLIDAY |
| 12/31/20 | $2,279.00 | $949.99 | 58% | THINKHOLIDAY |
| 1/29/21 | $2,279.00 | $949.99 | 58% | THINKDEAL |
| 2/17/21 | $2,279.00 | $949.99 | 58% | THINKPRESDAY |

66.     Lenovo also uses fake countdown timers to misrepresent when discounts are going to end.  For example, on December 1, 2020, Lenovo advertised the X1 Laptop using a banner at the top of the screen which stated, "**Save up to 58% on ThinkPad X1 Carbon Gen 8 (14")**" next to a live countdown timer indicating the discount would end in a matter of hours, minutes, and seconds. When the screenshot below was taken, the banner indicated the discount would end in 20 hours, 53 minutes, and 49 seconds.

FIRST AMENDED CLASS ACTION COMPLAINT

**December 1, 2020**



67.     However, the sale did not end in 20 hours, 53 minutes, and 49 seconds.  As shown above, Lenovo offered the 58% discount on the X1 Laptop for more than two months following this advertisement.

68.     Lenovo's use of fake countdown timers is not limited to the holiday season.  For example, on Saturday, April 24, 2021, Lenovo advertised an employee discount on its homepage, which stated "**For a limited time only, pay what Lenovo employees pay on select products. Hurry, sale ends April 25.**"

**April 24, 2021**



69.     Lenovo advertised the limited-time employee discount on several pages featuring various products.  For example, on the page featuring an IdeaPad Flex 5 (15") laptop, Lenovo advertised "**YOU PAY WHAT WE PAY**" and offered the laptop for sale for $911.79, or 6% off the regular price of $969.00.  At the top of the screen, Lenovo displayed a banner which stated, "**Look for extra savings with code WEEKENDSALE**" next to a live countdown timer.  At the time the screenshot below was taken, the banner indicated the sale would end in 16 hours, 51 minutes, and 28 seconds, which corresponded to Sunday, April 25, 2021, the end of the weekend.

1

2

3

4

5

6

7

8

9



10    70.     Reasonable consumers viewing this advertisement are led to believe that if they do

11  not make a purchase soon, they will miss out on the employee discount.  But in fact, just six days

12  later, on April 30, Lenovo offered the very same laptop at an even greater discount—now 20% off.

13

14

15

16

17

18

19

20

21  **D.     The Ongoing Nature of Lenovo's Deceptive Pricing**

22    71.     On July 20, 2021, Plaintiffs' counsel sent a pre-suit demand letter to Lenovo

23  notifying Lenovo of its unlawful and deceptive marketing practices.  Although counsel for Lenovo

24  confirmed on August 13, 2021, that he had recently received a copy of the letter, Lenovo continues

25  to advertise false regular prices, false discounts, and fake limited-time offers on its website.

26    72.     Indeed, on August 25, 2021, Lenovo completely redesigned its website but failed to

27  make any change to correct its deceptive pricing practices.  In fact, Lenovo's new website design is

28  even more deceptive because now Lenovo advertises its false discounts as both a dollar amount and

a percentage nearly every page featuring the discounted product.  As of the filing of the original complaint in this action, there is no evidence that Lenovo intends to implement corrective changes in the future.

73.     Plaintiffs desire to make purchases on Lenovo's website in the future and would make such purchases if they could be certain that the regular prices displayed on Lenovo's website represented the true market value of Lenovo's products, and that the advertised savings represented the actual savings they would receive based on bona fide regular prices.

74.     Plaintiffs are susceptible to Lenovo's ongoing false advertising scheme because they cannot be certain whether Lenovo has corrected its deceptive pricing practices.  As such, without an injunction ordering Lenovo to cease its deceptive pricing practices, Plaintiffs are unable to rely on Lenovo's representations regarding the prices of its products when deciding whether to make future purchases on Lenovo's website.

**E.     <u>Plaintiff Axelrod's Purchase</u>**

75.     On January 1, 2021, Axelrod accessed Lenovo's website from his residence in San Francisco, California, and purchased a ThinkPad X1 Carbon Gen 8, part number 20U9001NUS ("X1 Laptop").

76.     Lenovo offered the X1 Laptop for sale for $949.99, and represented to Axelrod that he would save $1,329.01 off the Web Price of $2,279.00 if he used the coupon THINKHOLIDAY. An example of the advertisement Axelrod viewed before making his purchase is depicted below.



77.     Axelrod understood the Web Price to be the regular price of the X1 Laptop, which he believed reflected the laptop's value.  He further understood the coupon THINKHOLIDAY to indicate that the advertised discount was available only for a limited time.

78.     Enticed by the idea of paying significantly less than regular price and getting a laptop valued at $2,279 for only $949.99, Axelrod proceeded to purchase the X1 Laptop.

79.     After adding the X1 Laptop to his online shopping cart, Axelrod was directed to additional pages on Lenovo's website where Lenovo offered him additional software, services, and accessories to add to his order.  On each of these additional pages, Lenovo prominently displayed to Axelrod the regular price of the X1 Laptop and the savings of $1,329.01 he was purportedly receiving.

80.     After declining any additional software, services, or accessories, Axelrod was directed to a page displaying his online shopping cart.  In his shopping cart, Lenovo again represented to Axelrod that he was saving $1,329.01 off the regular price of the X1 Laptop, and displayed in bold, green font, "**You're saving $1,329.01**" below the estimated total of his order.

81.     Axelrod was then directed to the checkout page on Lenovo's website where he input his shipping and payment information.  On the checkout page, Lenovo again represented to Axelrod that he was saving $1,329.01 off the regular price of the X1 Laptop, and displayed in bold, green font, "**You're saving $1,329.01**" directly above the button to place his order.

82.     In reliance on Lenovo's representations and omissions with respect to the regular price of the X1 Laptop, and the savings he was purportedly receiving, Axelrod placed an order for the X1 Laptop.

83.     Immediately after completing his purchase, Lenovo sent Axelrod an order confirmation via email.  The order confirmation confirmed that Axelrod had saved $1,329.01—an amount equal to the difference between the advertised regular price of $2,279 and his purchase price of $949.99.

Your Order Summary:

| Item: | Status: | Qty: | Price: |
|---|---|---|---|
| ThinkPad X1 Carbon Gen 8 | Received* | 1 | $949.99 |
| | Part No:<br>20U9001NUS | | |

**Configuration Details**

- Processor: 10th Generation Intel® Core™ i5-10210U Processor (1.60 GHz, up to 4.20 GHz with Turbo Boost, 4 Cores, 8 Threads, 6 MB Cache)
- Operating System: Windows 10 Pro 64
- Display Type: 14.0" FHD (1920 x 1080) IPS, anti-glare, 400 nits
- Memory: 8 GB LPDDR3 2133MHz (Soldered)
- Hard Drive: 256 GB PCIe SSD
- Warranty: 1 year Depot or Carry-in
- Graphics: Integrated Intel® UHD Graphics
- Camera: 720p HD
- Fingerprint Reader: Yes
- Keyboard: Backlit - US English
- Wireless: Intel® Wi-Fi 6™ AX201 802.11AX (2 x 2) & Bluetooth® 5.1

| | | |
|---|---|---|
| Sub total: | $949.99 |
| Tax : | $80.75 |
| Recycling Fee : | $4.00 |
| CouponSaved: | $1,329.01 |
| Shipping Fees: | FREE |
| Total: | $1,034.74 |

84.     Axelrod purchased the X1 Laptop after Lenovo had represented to him that its regular price was $2,279.  At the time, Axelrod believed he was purchasing a laptop valued at $2,279 for approximately 58% off.

85.     However, prior to Axelrod's purchase, discovery will show that Lenovo did not sell the X1 Laptop for $2,279 for a reasonably substantial period of time, if ever at all.  As shown in the table of advertised prices of the X1 Laptop above, it appears that since the X1 Laptop was first released in or around June 2020, Lenovo never sold it for anywhere near the purported regular price of $2,279.  In fact, discovery will show that not only did Lenovo not sell the X1 Laptop for $2,279, for at least two months prior Axelrod's purchase, Lenovo regularly sold the laptop for $949.99.

86.     Axelrod's perceived value of the X1 Laptop was based on his belief that Lenovo regularly sold the laptop for $2,279, and that $2,279 represented its market value.  Axelrod was induced to purchase the X1 Laptop by Lenovo's representation that he was saving $1,329.01 off the regular price of $2,279.  Axelrod would not have purchased the X1 Laptop, or would have paid less for it, had he known that the true regular price of the laptop was substantially less than the $2,279.

**F.    Plaintiff Burk's Purchase**

87.    On September 5, 2019, Burk accessed Lenovo's website from his workplace in California, and purchased a ThinkPad P52 Mobile Workstation, part number 20M9S0AW00 ("P52 Laptop").

88.    Lenovo offered the P52 Laptop for sale for $1,189, and represented to Burk that he would save $1,170 off the Web Price of $2,359.00 if he used the coupon code WSCLEARANCE. An example of the advertisement Burk viewed before making his purchase is depicted below.



89.    Burk understood the Web Price to be the regular price of the P52 Laptop, which he believed reflected the laptop's value. He further understood the coupon code WSCLEARANCE to indicate that the advertised discount was unusually large and available only for a limited time.

90.    Enticed by the idea of paying significantly less than regular price and getting a laptop valued at $2,359 for only $1,189, Burk proceeded to purchase the P52 Laptop.

91.    After adding the P52 Laptop to his online shopping cart, Burk was directed to additional pages on Lenovo's website where Lenovo offered him additional software, services, and accessories to add to his order. On each of these additional pages, Lenovo prominently displayed to Burk the regular price of the P52 Laptop and the savings of $1,170 he was purportedly receiving.

92.    After declining any additional software, services, or accessories, Burk was directed to a page displaying his online shopping cart. In his shopping cart, Lenovo again represented to Burk that he was saving $1,170 off the regular price of the P52 Laptop, and displayed in bold, green font, "**You're saving $1,170.00**" below the estimated total of his order.

93.    Burk then obtained an additional five percent discount on his order, which reduced

1  the price of the P52 Laptop to $1,129.55 and increased his savings $1,229.45.

2      94.    Burk was then directed to the checkout page on Lenovo's website where he input his

3  shipping and payment information.  On the checkout page, Lenovo represented to Burk that he was

4  saving $1,229.45 off the regular price of the P52 Laptop, and displayed in bold, green font,

5  "**You're saving $1,229.45**" directly above the button to place his order.

6      95.    In reliance on Lenovo's representations and omissions with respect to the regular

7  price of the P52 Laptop, and the savings he was purportedly receiving, Burk placed an order for the

8  P52 Laptop.

9      96.    Immediately after completing his purchase, Lenovo sent Burk an order confirmation

10  via email.  The order confirmation confirmed that Burk had saved $1,229.45—an amount equal to

11  the difference between the advertised regular price of $2,359 and his purchase price of $1,129.55.



## Your Order Summary:

| Item: ThinkPad P52 Mobile Workstation | Status: Received* | Qty: 1 | Price: $1,129.55 |
|---|---|---|---|

Part No:
20M9S0AW00

**Configuration Details**

- Processor: 8th Generation Intel® Core™ i7-8750H (2.20GHz, up to 4.10GHz with Turbo Boost Technology, 9MB Cache)
- Operating System: Windows 10 Pro 64
- Display Type: 15.6" FHD (1920 x 1080, 300nits) IPS anti-glare, 72% color gamut
- Memory: 16 GB DDR4 2400MHz
- Hard Drive: 512GB Solid State Drive, PCIe OPAL2.0 M.2
- Warranty: 1 Year Depot or Carry-in
- AC Adapter: 170W AC Adapter (2pin) - USB Type C
- Graphics: NVIDIA Quadro P1000 4GB
- Battery: 6 cell Li-Ion 90Wh
- Camera: 720p HD Camera with ThinkShutter and microphone
- Fingerprint Reader: Integrated fingerprint reader
- Keyboard: Backlit Keyboard with Number Pad - US English
- Wireless: Intel® 9560 vPro 802.11AC (2 x 2) & Bluetooth 5.0
- Integrated Mobile Broadband: None

| | |
|---|---|
| Sub total: | $1,129.55 |
| Tax : | $104.48 |
| Recycling Fee : | $6.00 |
| CouponSaved: | $1,229.45 |
| Shipping Fees: | FREE |
| Total: | $1,240.03 |

FIRST AMENDED CLASS ACTION COMPLAINT

97.     Burk purchased the P52 Laptop after Lenovo had represented to him that its regular price was $2,359.  At the time, Burk believed he was purchasing a laptop valued at $2,359 for approximately 50% off.

98.     However, prior to Burk's purchase, discovery will show that Lenovo did not sell the P52 Laptop for $2,359 for a reasonably substantial period of time, if ever at all.  As shown below, in the weeks and months prior to Burk's purchase, Lenovo sold the P52 Laptop at prices significantly lower than $2,359.  Moreover, during that same period, Lenovo advertised a significantly lower regular price for the P52 Laptop, indicating that the advertised regular price of $2,359 at the time of Burk's purchase was entirely fictitious.

**Advertised Prices of P52 Laptop**

| Date | Reg. Price | Sale Price | Savings | Discount |
|------|-----------|-----------|---------|----------|
| 7/1/2019 | $1,559.00 | $1,409.00 | $150.00 | 10% |
| 7/9/2019 | $1,559.00 | $1,169.00 | $390.00 | 25% |
| 7/28/2019 | $2,049.00 | $1,286.10 | $762.90 | 37% |
| 8/1/2019 | $2,049.00 | $1,429.00 | $620.00 | 30% |
| 8/13/2019 | $2,049.00 | $1,229.00 | $820.00 | 40% |
| 8/17/2019 | $2,359.00 | $1,189.00 | $1,170.00 | 50% |
| 8/18/2019 | $2,359.00 | $1,189.00 | $1,170.00 | 50% |
| 9/1/2019 | $2,359.00 | $1,189.00 | $1,170.00 | 50% |

99.     Burk's perceived value of the P52 Laptop was based on his belief that Lenovo regularly sold the laptop for $2,359, and that $2,359 represented its market value.  Burk was induced to purchase the P52 Laptop by Lenovo's representation that he was saving $1,170 (and later $1,229.45) off the regular price of $2,359.  Burk would not have purchased the P52 Laptop, or would have paid less for it, had he known that the true regular price of the laptop was substantially less than the $2,359.

## CLASS ALLEGATIONS

100.    Plaintiffs bring this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.  The Nationwide Class, Nationwide Consumer Subclass, California Class, and California Consumer Subclass ("Classes") are defined as follows:

**Nationwide Class:**  All individuals and entities that, within the applicable statute of limitations period, purchased one or more Lenovo-branded products on Lenovo's website that were advertised as discounted from a reference price (i.e., a "Web Price," "Base Price," or a strikethrough price).

**Nationwide Consumer Subclass:**  All members of the Nationwide Class who, within the applicable statute of limitations period, made their respective purchases primarily for personal, family, or household purposes.

**California Class:**  All individuals and entities that, while in the State of California, on or after May 30, 2017, purchased one or more Lenovo-branded products on Lenovo's website that were advertised as discounted from a reference price (i.e., a "Web Price," "Base Price," or a strikethrough price).

**California Consumer Subclass:**   All members of the California Class who are "consumers" within the meaning of California Civil Code § 1761(d) and made their respective purchases on or after May 30, 2018.

101.    Excluded from the Classes are Lenovo, its parents, subsidiaries, affiliates, officers, directors, legal representatives, predecessors, successors, assigns, and employees, and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

102.    <u>Numerosity</u>:  Although the exact number of members of the Classes is uncertain and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable.  Plaintiffs are informed and believe there are hundreds of thousands, if not millions, of members of the Classes that have been damaged by Lenovo's deceptive practices alleged herein.  The disposition of the claims of all Classes in a single action will provide substantial benefits to all parties and to the Court.  The members of the Classes are readily identifiable from information and records in Lenovo's possession, custody, or control.

103.    <u>Commonality</u>:  This action involves common questions of law and fact, including, but not limited to, the following:

        a.     whether Lenovo made false or misleading statements of fact in its advertisements;

        b.     whether Lenovo's advertisements had a tendency to mislead a reasonable consumer;

        c.     whether Lenovo's advertising and marketing practices, as alleged herein, violated established law;

1    d.  whether Lenovo intended the reference prices advertised on its website to

2 represent the regular prices of the products offered for sale on its website;

3    e.  whether Lenovo ever sold or offered for sale the products at the advertised

4 reference prices;

5    f.  whether the limited-time offers advertised on Lenovo's website were, in fact,

6 so limited in time;

7    g.  whether Lenovo's statements concerning the reference prices, discounts, and

8 limited-time offers displayed on its website were material, such that a reasonable consumer would

9 attach importance to and be induced to act on the information in determining whether to make a

10 purchase on Lenovo's website;

11    h.  whether a reasonable consumer would believe the products offered for sale

12 on Lenovo's website have a market value equal to the advertised reference price;

13    i.  whether Lenovo misrepresented and/or failed to disclose material facts about

14 the reference prices, discounts, and limited-time offers advertised on its website;

15    j.  whether Lenovo knew, or by the exercise of reasonable care should have

16 known, that the reference prices, discounts, and limited-time offers advertised on its website were

17 untrue and misleading;

18    k.  whether Lenovo intended the reference prices, discounts, and limited-time

19 offers advertised on its website to induce customers to purchase products;

20    l.  whether the practices alleged herein constituted a breach of contract;

21    m.  whether the practices alleged herein constituted a breach of express warranty;

22    n.  whether Lenovo's pricing scheme alleged herein—consisting of false

23 reference prices, false discounts, and fake limited-time offers—was false or misleading within the

24 meaning of California's False Advertising Law, Consumer Legal Remedies Act, or Unfair

25 Competition Law.

26    o.  how to calculate the prevailing market price for products sold on Lenovo's

27 website for the purposes of Cal. Bus. & Prof. Code § 17501;

28    p.  whether the reference prices displayed on Lenovo's website equaled the

-30-

FIRST AMENDED CLASS ACTION COMPLAINT

prevailing market price for the products in question during the three-month period preceding their publication;

q. whether Lenovo's pricing scheme alleged herein constitutes "fraud," as that term is defined in Civ. Code § 3294(c)(3);

r. whether Lenovo has been unjustly enriched from products falsely advertised and sold on its website;

s. whether Lenovo is likely to continue engaging in false advertising such that an injunction is necessary; and

t. whether Plaintiffs and members of the Classes are entitled to damages, restitution, and/or punitive damages as a result of Lenovo's conduct alleged herein.

104. <u>Typicality</u>:  Plaintiffs' claims are typical of the Class claims in that Plaintiffs, like all members of the Classes, were deceived and damaged by Lenovo's misrepresentations and corresponding failure to provide the advertised discounts, savings, and product values. Furthermore, the factual bases of Lenovo's misconduct are common to all members of the Classes and represent a common thread resulting in injury to the Classes.

105. <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of all members of the classes, and Plaintiffs' interests are coincident with and not antagonistic to those of other members of the Classes.  Plaintiffs have retained competent counsel who is experienced in prosecuting class actions.

106. Class certification is appropriate under Rule 23(b)(2) because Lenovo has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to all members of the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

107. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any question that may affect only individual members of the Classes.  Plaintiffs and members of the Classes have all suffered, and will continue to suffer, harm and damages as a result of Lenovo's uniform deceptive pricing practices.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

Individual litigation of the claims of all members of the Classes is impracticable because the cost of litigation would be prohibitively expensive given the relatively small size of the individual Class members' claims.  Moreover, individualized litigation would impose an immense burden upon the courts and present the potential for varying, inconsistent, or contradictory judgments.  By contrast, maintenance of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all members of the Classes. Absent a class action, Plaintiffs and members of the Classes would be unable seek redress, and Lenovo's deceptive pricing practices would continue unabated without remedy or relief.

## <u>FIRST CAUSE OF ACTION</u>
### Breach of Contract
### (On Behalf of the Nationwide Class, or alternatively, the California Class)

108.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

109.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

110.    Plaintiffs and Class members entered into written contracts with Lenovo when they placed orders to purchase products on Lenovo's website.

111.    The contracts are drafted by Lenovo and are uniform as to their material terms, which are presented to customers at the time they place an order on Lenovo's website, and which are memorialized in the order confirmations Lenovo emails to customers immediately after they place their order.

112.    The contracts provided that Plaintiffs and Class members would pay Lenovo for their products.

113.    The contracts further provided that (i) Lenovo would provide Plaintiffs and Class members products that had a market value equal to the reference price displayed on Lenovo's website, and (ii) Lenovo would provide a specific discount equal to the difference between the reference price and purchase price.  The specified discount was a specific and material term of each contract.

114.    The specified discount was displayed to Plaintiffs and Class members at the time they placed their orders and was memorialized in the order confirmations that Lenovo emailed to them after they had placed their orders.

115.    Plaintiffs and Class members paid Lenovo for the products they ordered, and satisfied all other conditions of their contracts.

116.    Lenovo breached the contracts with Plaintiffs and Class members by failing to provide products that had a market value equal to the reference price displayed on its website, and by failing to provide the promised discount, instead charging Plaintiffs and Class members the full market price of the products they ordered.

117.    As a direct and proximate result of Lenovo's breaches, Plaintiffs and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class, or alternatively, the California Class)**

118.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

119.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

120.    The Uniform Commercial Code § 2-313 provides that any affirmation of fact or promise made by a seller to a buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

121.    Through its advertising, marketing, and sales, Lenovo made affirmations of fact to Plaintiffs and Class members including, but not limited to, affirmations that the reference prices displayed on its website reflected the market values of the products Plaintiffs and Class members purchased.

122.    Through its advertising, marketing, and sales, Lenovo made promises to Plaintiffs and Class members including, but not limited to, promises that Plaintiffs and Class members would save money as a result of the discounts advertised on Lenovo's website and that the amount of

-33-

money saved would equal the difference between the reference price and the purchase price.

123.   The affirmations of fact and promises made by Lenovo to Plaintiffs and Class members were specific, in writing, and expressed unequivocally, and were made to induce Plaintiffs and Class members to purchase products from Lenovo's website.

124.   Plaintiffs and Class members relied on the affirmations of fact and promises in deciding to purchase products from Lenovo.

125.   The affirmations of fact and promises became part of the basis of the bargain struck between Lenovo and Plaintiffs and Class members, and created an express warranty that the products purchased by Plaintiffs and Class members would conform to Lenovo's representations.

126.   All conditions precedent to Lenovo's liability under the express warranties created by Lenovo's representations have been fulfilled by Plaintiffs and Class members or have been waived.

127.   Lenovo breached the terms of the express warranty by failing to deliver products that conformed to its representations.  The products did not have the market value specified by Lenovo; the products were not sold or offered for sale at the reference prices displayed on Lenovo's website for a reasonably substantial period of time; and Plaintiffs and Class members did not receive the savings Lenovo had promised them.

128.   Lenovo has actual notice that the products purchased by Plaintiffs and Class members were not delivered as warranted by Lenovo.  On July 20, 2021, Plaintiffs' counsel sent Lenovo a pre-suit demand letter notifying it that, as a result of the false advertising on its website, Plaintiffs and Class members were duped making purchases based on a false sense of savings and value.  On August 13, 2021, counsel for Lenovo confirmed he recently had received the pre-suit demand letter.

129.   Lenovo has constructive notice that its products are not delivered as warranted in light of the deliberate, pervasive, and ongoing nature of its deceptive pricing scheme, as described herein.

130.   Despite having notice of its breaches of express warranty, Lenovo has taken no action to date to remedy its breaches of express warranty.

131.    As a direct and proximate result of Lenovo's breach of express warranty, Plaintiffs and Class members have been injured and have suffered actual damages.

### THIRD CAUSE OF ACTION
**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class, or alternatively, the California Class)**

132.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

133.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

134.    Lenovo made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence, duration, and/or nature of the discounts and savings advertised on its website.

135.    As part of those false representations, Lenovo engaged in the following practices:

a.    falsely representing that customers were receiving a discount from a reference price, when in fact Lenovo inflated the regular price such that the promised discount was false;

b.    falsely representing that customers were receiving savings equal to the difference between the regular price and sale price, when in fact customers received no such savings, or received substantially less savings, because the regular price was inflated and not the actual price at which Lenovo formerly sold the product; and

c.    falsely representing that its discounts were limited-time offers, when in fact the discounts were not so limited in time.

136.    Lenovo's false representations were the type of representations that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

137.    Lenovo's false representations of discounts and savings based on inflated regular prices are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

138.    Lenovo's false representations were made to Plaintiffs and Class members for the purpose of affecting their purchasing decisions.

139.    Lenovo had no reasonable grounds for believing its false representations were true.

140.    Lenovo failed to exercise reasonable care and/or diligence in communicating its false representations to Plaintiffs and Class members.

141.    Plaintiffs and Class members reasonably and justifiably relied to their detriment on Lenovo's false representations.

142.    Lenovo's false representations were a factor in causing Plaintiffs and Class members to purchase products on Lenovo's website.

143.    As a proximate result of Lenovo's false representations, Plaintiffs and Class members were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Intentional Misrepresentation**
**(On Behalf of the Nationwide Class, or alternatively, the California Class)**

144.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

145.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

146.    Lenovo intentionally made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence, duration, and/or nature of the discounts and savings advertised on its website.

147.    As part of those false representations, Lenovo engaged in the following practices:

        a.      falsely representing that customers were receiving a discount from a regular price, when in fact Lenovo inflated the purported regular price such that the promised discount was false;

        b.      falsely representing that customers were receiving savings equal to the difference between the regular price and sale price, when in fact customers received no such savings, or received substantially less savings, because the regular price was inflated and not the actual price at which Lenovo formerly sold the product; and

        c.      falsely representing that its discounts were limited-time offers, when in fact the discounts were not so limited in time.

148.    Lenovo intentionally failed to disclose material facts regarding the above. Specifically, Lenovo intentionally failed to disclose to Plaintiffs and Class members that (i) the advertised regular prices did not reflect bona fide regular prices—i.e., the price at which Lenovo formerly sold or offered for sale the product for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.  These omissions were material, and had Lenovo disclosed the above information, Plaintiffs and Class members would not have purchased the products or would have paid less for them.

149.    Lenovo's false representations were the type of representations that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

150.    Lenovo's false representations of discounts and savings based on inflated regular prices are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

151.    Lenovo intended Plaintiffs and Class members to rely on the false representations when making purchases on Lenovo's website.

152.    Lenovo knew that the misrepresentations and material omissions alleged herein were false at the time Lenovo made them and/or acted recklessly in making such misrepresentations and material omissions.

153.    Plaintiffs and Class members reasonably and justifiably relied to their detriment on Lenovo's intentional misrepresentations and material omissions.

154.    Lenovo's intentional misrepresentations and material omissions were a substantial factor in causing Plaintiffs and members of the Class to purchase products and services from Lenovo.

155.    As a proximate result of Lenovo's intentional misrepresentations and material omissions, Plaintiffs and Class members suffered an ascertainable loss and are entitled to compensatory and punitive damages, in an amount to be determined at trial.

156.    Lenovo acted with malice, oppression, and fraud.

157.    Lenovo's conduct alleged herein constitutes "fraud," as that term is defined in Civ. Code § 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to Lenovo, and was done with the intent to cause Plaintiffs and Class members to purchase products they would not have otherwise purchased and/or pay more for them based on a false perception of their market value.

**FIFTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**(Nationwide Consumer Subclass, or alternatively, the California Consumer Subclass)**

158.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

159.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Consumer Subclass, or alternatively, the California Consumer Subclass.

160.    Lenovo violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that products offered for sale on its website have characteristics or benefits which they do not have.  Specifically, Lenovo represents that the value of its products is greater than it actually is by advertising inflated reference prices for products sold on its website.

161.    Lenovo violated, and continues to violate, Section 1770(a)(9) of the California Civil Code by advertising products as discounted when Lenovo intends to, and does in fact, sell them at its regular prices.

162.    Lenovo violated, and continues to violate, Section 1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website.  Specifically, Lenovo has violated Section 1770(a)(13) by engaging in the following unlawful acts and practices:

a.    misrepresenting the regular price of products on its website by advertising false reference prices;

b.    advertising discounts and savings that are exaggerated or nonexistent because they are based on false reference prices;

c.    misrepresenting that discounts and savings on its website are available only for a limited time, when in fact the discounts and savings are not so limited in time; and

d. misrepresenting that the discounts and savings are unusually large, when in fact the purported discounts are regularly available.

163. Lenovo violated, and continues to violate, Section 1770(a)(16) of the California Civil Code by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Specifically, Lenovo represents on its website that it sells products at a discount from their regular prices. After a customer places an order, Lenovo emails the customer an order confirmation confirming that the products were sold at a discount. But in fact, Lenovo does not sell, nor does it intend to sell, its products at a discount.

164. Pursuant to Cal Civ. Code § 1782(a), on July 20, 2021, Plaintiffs' counsel provided proper notice to Lenovo of Plaintiff Burk's intent to pursue claims for damages under the CLRA on behalf of himself and all others similarly situated, and provided Lenovo a reasonable opportunity to cure. The letter was sent via certified mail, return receipt requested, to Lenovo's mailing address listed with the California Secretary of State, 8001 Development Dr., Morrisville, North Carolina 27560. According to the USPS, Lenovo received the letter on July 26, 2021. As of the filing the original complaint in this action, Lenovo had not taken any actions to correct the false advertising on its website, nor had it addressed any of other issues raised in the letter, such as such as notifying and providing monetary compensation to Class members. Accordingly, pursuant to Section 1780 of the California Civil Code, Plaintiffs seek actual damages, punitive damages, injunctive relief, and any other relief that the court deems proper.

**SIXTH CAUSE OF ACTION**
**Violation of Section 17500 of California's False Advertising Law**
**(On Behalf of the Nationwide Class, or alternatively, the California Class)**

165. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 of this Complaint.

166. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

167. Lenovo has violated, and continues to violate, Section 17500 of the California Business and Professions Code by disseminating untrue and misleading advertisements over the internet to Plaintiffs and Class members.

168.   Lenovo disseminated untrue and misleading advertisements by advertising false reference prices, false discounts, and fake limited-time offers with respect to Lenovo-branded products offered for sale on its website.

169.   Lenovo disseminated such untrue and misleading advertisements with the intent to induce Plaintiffs and Class members to purchase products on its website.

170.   Lenovo knew, or by the exercise of reasonable care should have known, that the false reference prices, false discounts, and fake limited-time offers were untrue or misleading.

171.   Lenovo fraudulently concealed from and intentionally failed to disclose to Plaintiffs and Class members the truth about the false reference prices, false discounts, and fake limited-time offers.  Specifically, Lenovo failed to inform Plaintiffs and Class members that (i) the advertised reference prices did not reflect bona fide regular prices—i.e., the price at which Lenovo actually sold the laptop for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.

172.   Plaintiffs and Class members reasonably relied on Lenovo's representations and/or omissions made in connection with the advertised reference prices, discounts, and limited-time offers, and were induced to purchase Lenovo-branded products based on the belief that they were receiving a substantial discount on products valued at more than what they actually received, and that the discount would be available only for a limited time.

173.   Lenovo's representations and/or omissions made in connection with its reference prices, discounts, and limited-time offers were likely to deceive reasonable consumers by obfuscating the true value of Lenovo-branded products.

174.   Had Plaintiffs and Class members known that the reference prices were false and artificially inflated, they would not have purchased products from Lenovo or would have paid less for them.

175.   As a direct and proximate result of Lenovo's untrue and misleading advertising, Lenovo has improperly acquired money from Plaintiffs and Class members.  As such, Plaintiffs request this Court order Lenovo to restore this money to them and all Class members.

176.     Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17535 of the California Business and Professions Code.  Lenovo's violations of Section 17500 are ongoing because it continues to advertise false reference prices, false discounts, and fake limited-time offers to Plaintiffs, Class members, and the public at large.  Unless restrained by this Court, Lenovo will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500.  Accordingly, Plaintiffs seek an injunction enjoining Lenovo from continuing to violate Section 17500.

177.     Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17535 of the California Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them in their first through fifth causes of action are not as equally prompt and certain, and in other ways efficient.  Specifically,

a.     the legal remedies available to Plaintiffs for their Breach of Contract claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that they entered into written contracts with Lenovo, that the contracts provided that the products Plaintiffs purchased had a market value equal to the reference price and that Lenovo would provide a discount equal to the difference between the reference price and purchase price, that the specified discounts were material and specific terms of each contract, and that Lenovo breached the contracts by failing to provide the products with a market value equal to the reference price and by failing to provide the promised discount.  None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17500;

b.     the legal remedies available to Plaintiffs for their Breach of Express Warranty claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made affirmations of fact relating to the references prices displayed on their website, that the affirmations were specific and expressed unequivocally, that Plaintiffs relied on the affirmations of fact, and that the affirmations of fact and promises became part of the bargain struck between Lenovo and Plaintiffs.  None of these elements are required for Plaintiffs to prevail

on their claim for restitution under Section 17500;

    c. the legal remedies available to Plaintiffs for their Negligent Misrepresentation claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made false representations or material omissions of fact and that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website.  Neither of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17500;

    d. the legal remedies available to Plaintiffs for their Intentional Misrepresentation claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo intentionally made false representations or material omissions of fact, that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website, and that Lenovo intended for Plaintiffs to rely on such representations and material omissions. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17500; and

    e. the legal remedies available to Plaintiffs for their CLRA claims are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that the reference prices and false discounts advertised by Lenovo were characteristics or benefits of the products they purchased, that Lenovo advertised the products as discounted but did not intend to sell them at discounted prices, that Lenovo made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, or that Lenovo falsely represented that the products they purchased were supplied in accordance with their previous representations regarding the reference prices and discounts of the products. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17500.

   178. To prevail on their claim for restitution under Section 17500, Plaintiffs merely need to show (i) Lenovo disseminated untrue or misleading statements, which were known, or which by the exercise of reasonable care should have been known, by Lenovo to be untrue or misleading, (ii) members of the public were likely to be deceived by such statements, and (iii) Plaintiffs suffered economic injury as a result of such statements, which may be demonstrated by a showing of harm

in fact.  Plaintiffs' legal remedies in their first through fifth causes of action all require additional elements.  For example, whereas Section 1770(a)(13) of the CLRA requires a false or misleading statement *of fact* concerning the reasons for, existence of, or amounts of a price reduction, Section 17500 applies to any statement that is untrue or misleading.  As such, Plaintiffs' available legal remedies in their first through fifth causes of action are not as equally prompt and certain, and in other ways efficient as their claim for restitution under Section 17500.

179.    Moreover, Plaintiffs lack an adequate remedy at law with respect to their claim for restitution because they have not yet retained an expert to determine whether an award of damages can or will adequately remedy their monetary losses caused by Lenovo.  In particular, because damages focus remedying the injury to Plaintiffs, and restitution focuses wholly on restoring money wrongly obtained by Lenovo, legal damages are inadequate because Plaintiff does not know at this juncture whether a model for legal damages (as opposed to equitable restitution) will be viable or adequately compensate Plaintiffs for their injuries.

**SEVENTH CAUSE OF ACTION**
**Violation of Section 17501 of California's False Advertising Law**
**(On Behalf of the California Class)**

180.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 and 179 of this Complaint.

181.    Plaintiffs bring this cause of action on behalf of themselves and the California Class.

182.    Lenovo has violated, and continues to violate, Section 17501 of the California Business and Professions Code by advertising on its website false former prices, as that term is defined in section 1301, title 4, California Code of Regulations.

183.    Lenovo advertises former prices on its website by using words and phrases such as "Web Price," "Base Price," and "regular Lenovo web price," displaying prices using strikethrough typeface (e.g., ~~$1,249.99~~), and/or displaying discounts using words and phrases such as "Savings of," "Instant Saving," "Save ___%" "You're saving," and "Item Discount."

184.    The former prices advertised by Lenovo (i) do not reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement, (ii) were not offered by Lenovo on a bona fide basis for a majority of the days the

products were offered for sale during the three-month period immediately preceding publication of the advertisement, and/or (iii) were never offered by Lenovo on a bona fide basis.

185.   Lenovo's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  In fact, Lenovo's former price advertisements provide no indication whether or to what extent the former prices advertised on its website were offered on a bona fide basis.  Instead, Lenovo deliberately misleads customers by representing that the advertised savings are "referenced off regular Lenovo web prices."

186.   The relevant "market" for the purpose of applying Section 17501 consists of offers made on Lenovo's website because (i) all of the advertisements at issue concern Lenovo-branded products, manufactured by Lenovo, and offered for sale on Lenovo's website, (ii) Lenovo states on its website that the advertised savings are "referenced off regular Lenovo web prices," (iii) Lenovo intends its representations relating to former prices and discounts to refer to its own former website prices; and (iv) Plaintiffs and Class members reasonably interpreted Lenovo's former price advertisements to refer to Lenovo's former website prices.

187.   Lenovo violated, and continues to violate, Section 17501 with actual or constructive knowledge that its former price advertisements are untrue or misleading.

188.   Lenovo violated, and continues to violate, Section 17501 to induce Plaintiffs and Class members to make purchases on its website based on the false impression they are receiving a substantial discount on a product valued at more than what they actually received.

189.   Plaintiffs and Class members reasonably relied on Lenovo's representations and/or omissions made in violation of Section 17501, and were thereby induced to pay more for Lenovo-branded products and make purchases they would not have otherwise made.

190.   As a direct and proximate result of Lenovo's violations of Section 17501, Lenovo has improperly acquired money from Plaintiffs and Class members.  As such, Plaintiffs request this Court order Lenovo to restore this money to them and all Class members.

191.   Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17535 of the Business and Professions Code.  Lenovo's violations of Section 17501 are ongoing because it continues to advertise former prices that do not reflect the prevailing market prices for

the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail.  Unless restrained by this Court, Lenovo will continue to violate Section 17501, as alleged above.  Accordingly, Plaintiffs seek an injunction enjoining Lenovo from continuing to violate Section 17501.

192.    Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17535 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient. Specifically,

a.      the legal remedies available to Plaintiffs for their Breach of Contract claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that they entered into written contracts with Lenovo, that the contracts provided that the products Plaintiffs purchased had a market value equal to the reference price and that Lenovo would provide a discount equal to the difference between the reference price and purchase price, that the specified discounts were material and specific terms of each contract, and that Lenovo breached the contracts by failing to provide the products with a market value equal to the reference price and by failing to provide the promised discount.  None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17501;

b.      the legal remedies available to Plaintiffs for their Breach of Express Warranty claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made affirmations of fact relating to the references prices displayed on their website, that the affirmations were specific and expressed unequivocally, that Plaintiffs relied on the affirmations of fact, and that the affirmations of fact and promises became part of the bargain struck between Lenovo and Plaintiffs.  None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17501;

c.      the legal remedies available to Plaintiffs for their Negligent Misrepresentation

claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made false representations or material omissions of fact and that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website.  Neither of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17501;

d.      the legal remedies available to Plaintiffs for their Intentional Misrepresentation claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo intentionally made false representations or material omissions of fact, that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website, and that Lenovo intended for Plaintiffs to rely on such representations and material omissions. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17501; and

e.      the legal remedies available to Plaintiffs for their CLRA claims are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that the reference prices and false discounts advertised by Lenovo were characteristics or benefits of the products they purchased, that Lenovo advertised the products as discounted but did not intend to sell them at discounted prices, that Lenovo made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, or that Lenovo falsely represented that the products they purchased were supplied in accordance with their previous representations regarding the reference prices and discounts of the products. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17501.

193.      To prevail on their claim for restitution under Section 17501, Plaintiffs merely need to show (i) Lenovo advertised a former price that was not the prevailing market price within three months next preceding the publication of the advertisement, (ii) Lenovo did not clearly, exactly, and conspicuously state in the advertisement when the alleged former price did prevail, and (iii) Plaintiffs suffered economic injury as a result of such advertisements, which may be demonstrated by a showing of harm in fact.  Plaintiffs' legal remedies in their first through fifth causes of action all require additional elements.  As such, Plaintiffs' available legal remedies in their first through

fifth causes of action are not as equally prompt and certain, and in other ways efficient as their claim for restitution under Section 17501.

## EIGHTH CAUSE OF ACTION
### Violation of Section 17200 of California's Unfair Competition Law
### (On Behalf of the Nationwide Class, or alternatively, the California Class)

194.    Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 107 and 179 of this Complaint.

195.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, or alternatively, the California Class.

196.    Lenovo violated Section 17200 of the Business and Professions Code by engaging in unfair, deceptive, untrue or misleading advertising on its website which has adversely affected Plaintiffs and Class members.

197.    Lenovo has violated, and continues to violate, the "unlawful" prong of Section 17200 by engaging in the following unlawful business acts and practices:

a.    disseminating untrue and misleading advertisements over the internet by advertising false reference prices, false discounts, and fake limited-time offers, in violation of California Business and Professions Code section 17500;

b.    advertising former prices of products which do reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail, in violation of California Business and Professions Code section 17501;

c.    by representing that products offered for sale on its website have characteristics or benefits which they do not have in violation of California Civil Code section 1770(a)(5);

d.    by advertising products on its website with intent not to sell them as advertised, in violation of California Civil Code section 1770(a)(9);

e.    making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to products sold on its website, in violation of California Civil Code section 1770(a)(13); and

f.      representing that products sold on its website were supplied in accordance with its previous representations when in fact they were not, in violation of California Civil Code section 1770(a)(16).

198.   Lenovo has violated, and continues to violate, the "fraudulent prong" of the UCL by engaging in the following fraudulent business acts and practices:

a.      using misrepresentations, deception, and/or concealment of material information in connection with the regular price and market value of products sold on Lenovo's website, such that Plaintiffs and Class members were likely to be deceived;

b.      advertising reference prices, discounts, and limited-time offers that are false, misleading, and/or have a capacity, likelihood, or tendency to deceive Plaintiffs and Class members; and

c.      failing to provide Plaintiffs and Class members with information as to when, if ever, the reference prices displayed on Lenovo's website were bona fide offer prices.

199.   Lenovo has violated, and continues to violate, the "unfair" prong of the UCL by engaging in the following unfair business acts and practices:

a.      engaging in false reference pricing in connection with the sale of products on its website such that Plaintiffs and Class members who could not have reasonably avoided such predatory schemes have been substantially injured—a practice that serves no benefit to consumers or competition;

b.      engaging in false reference pricing whereby the harm to consumers, competition, and the public far outweighs any utility of the practice, which only serves to give Lenovo an unfair advantage over other computer manufacturers; and

c.      engaging in false and misleading advertising in contravention of public policy, including such public policy as reflected in California Business and Professions Code section 17501, California Civil Code section 1770(a)(13), and sections 233.1 and 233.5 of Title 16 of the Code of Federal Regulations.

200.   Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17203 of the Business and Professions Code.  Lenovo's violations of Section 17200 are ongoing

because it continues to advertise former prices that do not reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail.  Unless restrained by this Court, Lenovo will continue to violate Section 17200, as alleged above.  Accordingly, Plaintiffs seek an injunction enjoining Lenovo from continuing to violate Section 17200.

201.    Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17203 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.  Specifically,

a.       the legal remedies available to Plaintiffs for their Breach of Contract claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that they entered into written contracts with Lenovo, that the contracts provided that the products Plaintiffs purchased had a market value equal to the reference price and that Lenovo would provide a discount equal to the difference between the reference price and purchase price, that the specified discounts were material and specific terms of each contract, and that Lenovo breached the contracts by failing to provide the products with a market value equal to the reference price and by failing to provide the promised discount.  None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17200;

b.       the legal remedies available to Plaintiffs for their Breach of Express Warranty claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made affirmations of fact relating to the references prices displayed on their website, that the affirmations were specific and expressed unequivocally, that Plaintiffs relied on the affirmations of fact, and that the affirmations of fact and promises became part of the bargain struck between Lenovo and Plaintiffs.  None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17200;

c.      the legal remedies available to Plaintiffs for their Negligent Misrepresentation claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo made false representations or material omissions of fact and that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website.  Neither of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17200;

d.      the legal remedies available to Plaintiffs for their Intentional Misrepresentation claim are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that Lenovo intentionally made false representations or material omissions of fact, that Plaintiffs relied on such representations and material omissions to their detriment in deciding to purchase products on Lenovo's website, and that Lenovo intended for Plaintiffs to rely on such representations and material omissions. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17200; and

e.      the legal remedies available to Plaintiffs for their CLRA claims are not as equally prompt, certain, and in other ways efficient because they require that Plaintiffs show that the reference prices and false discounts advertised by Lenovo were characteristics or benefits of the products they purchased, that Lenovo advertised the products as discounted but did not intend to sell them at discounted prices, that Lenovo made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, or that Lenovo falsely represented that the products they purchased were supplied in accordance with their previous representations regarding the reference prices and discounts of the products. None of these elements are required for Plaintiffs to prevail on their claim for restitution under Section 17200.

202.    To prevail on their claim for restitution under Section 17200, Plaintiffs merely need to show (i) Lenovo engaged in unfair, deceptive, untrue or misleading advertising, (ii) members of the public were likely to be deceived by such advertising, and (iii) Plaintiffs suffered economic injury as a result of such statements, which may be demonstrated by a showing of harm in fact. Plaintiffs' legal remedies in their first through fifth causes of action all require additional elements. For example, whereas Section 1770(a)(13) of the CLRA requires a false or misleading statement *of*

*fact* concerning the reasons for, existence of, or amounts of a price reduction, Section 17200 applies to any statement made in advertising that is unfair, deceptive, untrue or misleading.  As such, Plaintiffs' available legal remedies in their first through fifth causes of action are not as equally prompt and certain, and in other ways efficient as their claim for restitution under Section 17200.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the court order the following relief and enter judgment against Lenovo (United States) Inc. as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed representatives of the Classes, and Plaintiffs' counsel be appointed Class Counsel;

B.     An order enjoining Lenovo from continuing to violate California's False Advertising Law, Consumer Legal Remedies Act, and Unfair Competition Law, as described herein;

C.     A judgment awarding Plaintiffs and Class members restitution and/or other equitable relief, including, without limitation, disgorgement of all money Lenovo improperly acquired from Plaintiffs and Class members as a result of its false advertising and unlawful, unfair, and fraudulent business practices;

D.     A judgment awarding Plaintiffs and members of the Classes actual damages in an amount to be determined at trial;

E.     A judgment awarding Plaintiffs and Class members punitive damages in an amount to be determined at trial;

F.     A judgment awarding Plaintiffs and their costs of suit; including reasonable attorney's fees pursuant to California Civil Code section 1780(d), Code of Civil Procedure section 1021.5, and as otherwise permitted by statute;

G.     Pre- and post-judgment interest; and

H.     Such other and further relief as may be necessary or appropriate under the circumstances.

FIRST AMENDED CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

　　　　Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local

3

Rule 3-6, Plaintiffs demand a jury trial on all triable issues.

4

5

Dated:  January 25, 2022　　　　　　　Respectfully submitted,

6

7

　　　　　　　　　　　　　　　　By:　　/s/ Daniel A. Rozenblatt

8

　　　　　　　　　　　　　　　　　　　Daniel A. Rozenblatt (SBN 336058)

9

　　　　　　　　　　　　　　　　　　　Seth W. Wiener (SBN 203747)
　　　　　　　　　　　　　　　　　　　EDGE, A PROFESSIONAL LAW CORPORATION

10

　　　　　　　　　　　　　　　　　　　1341 La Playa Street 20
　　　　　　　　　　　　　　　　　　　San Francisco, CA 94122

11

　　　　　　　　　　　　　　　　　　　Telephone: (415) 515-4809

12

　　　　　　　　　　　　　　　　　　　Tarek H. Zohdy (SBN 247775)

13

　　　　　　　　　　　　　　　　　　　Cody R. Padgett (SBN 275553)
　　　　　　　　　　　　　　　　　　　CAPSTONE LAW APC

14

　　　　　　　　　　　　　　　　　　　1875 Century Park East, Suite 1000
　　　　　　　　　　　　　　　　　　　Los Angeles, California 90067

15

　　　　　　　　　　　　　　　　　　　Telephone: (310) 556-4811
　　　　　　　　　　　　　　　　　　　Facsimile: (310) 943-0396

16

17

　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　ANDREW AXELROD and ELIOT BURK

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT