1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   P. CRAIG CARDON, Cal. Bar No. 168646
2  ccardon@sheppardmullin.com
   BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
3  baigboboh@sheppardmullin.com
   ALYSSA SONES, Cal. Bar No. 318359
4  asones@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California 90067-6055
   Telephone:     310.228.3700
6  Facsimile:     310.228.3701

7
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
8  ABBY H. MEYER, Cal. Bar No. 294947
   ameyer@sheppardmullin.com
9  650 Town Center Drive, 10th Floor
   Costa Mesa, California 92626-1993
10 Telephone:     714.513.5100
   Facsimile:     714.513.5130
11
   *Attorneys for Defendant*
12 LENOVO (UNITED STATES) INC.

13
                   **UNITED STATES DISTRICT COURT**
14
          **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**
15

| ANDREW AXELROD and ELIOT BURK, individually and on behalf all others similarly situated, | Case No. 4:21-cv-06770-JSW-RMI |
|---|---|
| | [*Assigned to the Hon. Jeffrey S. White*] |
| Plaintiffs, | **DEFENDANT'S MOTION UNDER FEDERAL RULES OF EVIDENCE 702 AND 403 TO EXCLUDE CHRISTIAN TREGILLIS' OPINIONS REGARDING CLASS-WIDE DAMAGES AND LIABILITY (DKT. 200-5)** |
| v. | |
| LENOVO (UNITED STATES) INC., a Delaware corporation, | |
| Defendant. | |
| | Hearing Date: February 7, 2025 |
| | Hearing Time: 9:00 a.m. |
| | Complaint Filed: August 31, 2021 |
| | FAC Filed: January 25, 2022 |
| | Trial Date: None Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 7, 2025 at 9:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612, the Honorable Jeffrey S. White presiding, Defendant Lenovo (United States) Inc. ("Defendant") will and hereby does move the Court for an order excluding testimony from Plaintiffs Andrew Axelrod and Eliot Burk's ("Plaintiffs") expert, Christian Tregillis ("Tregillis"), regarding his class-wide damages and liability conclusions pursuant to Federal Rule of Evidence 702.

Defendant's *Motion to Exclude Christian Tregillis' Opinions Regarding Class-Wide Damages and Liability* ("*Motion*") is made on the grounds that that he fails to meet the standards required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). This *Motion* is based on this *Notice*, the accompanying *Memorandum of Points and Authorities*, the *Declaration of Abby H. Meyer*, the *Declaration of Kevin Morey*, and the *[Proposed] Order* submitted concurrently herewith, all pleadings, papers and other documentary materials in the Court's file for this action, all matters of which this Court may or must take judicial notice, and any other matters the Court may consider.

Dated:  October 4, 2024　　　　　　　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By　　　　　*/s/ P. Craig Cardon*
　　　　　P. CRAIG CARDON
　　　　　ABBY H. MEYER
　　　　　BENJAMIN O. AIGBOBOH
　　　　　ALYSSA SONES
　　　　*Attorneys for Defendant*
　　　　LENOVO (UNITED STATES) INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................6

II. BACKGROUND FACTS ......................................................................................................6

    A. Plaintiffs' Motion for Class Certification...................................................................6

    B. Tregillis' Report and Opinions...................................................................................7

III. LEGAL STANDARD ............................................................................................................8

IV. TREGILLIS' OPINIONS SHOULD BE EXCLUDED .........................................................8

    A. Tregillis' Opinions Are Irrelevant And Unhelpful To The Trier Of Fact ..................8

        1. Tregillis' Use of a Mode Price Over a 90-Day Period Is Legally Irrelevant ..................................................................................................8

        2. Tregillis' Conclusions Regarding the Mode Price Over a 90-Day Period Are Little More Than Legal Conclusions .........................................10

    B. Tregillis' Opinions Are Not Based on Sufficient Facts or Data, Nor Are They the Product of Reliable Methods That Were Reliably Applied ......................11

        1. Tregillis' Methods Are Unfounded and Do Little More Than Simple Arithmetic............................................................................................12

        2. Tregillis' Opinions Rely on Dimofte's Survey Results, Which Themselves Are Unreliable and Not Based on Sufficient Facts and Data ...............................................................................................................15

V. CONCLUSION ....................................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Bennett v. PRC Public Sector, Inc.*
   931 F.Supp. 484 (S.D.Tex.1996) ........................................................................................ 12

*Chowning v. Kohl's Dept. Stores, Inc.*
   2016 WL 1072129 at *11-12 (C.D. Cal. Mar.15,2016) ...................................................... 9, 10

*Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*
   383 F.3d 110 (3d Cir. 2004) ............................................................................................... 15

*In re ConAgra Foods, Inc.*
   302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................................ 8

*Crow Tribe of Indians v. Racicot*
   87 F.3d 1039 (9th Cir. 1996) .............................................................................................. 10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) .......................................................................................................... 2, 8

*Daubert v. Merrell Dow Pharms., Inc.*
   43 F.3d 1311 (9th Cir. 1995) ............................................................................................... 9

*Dukes v. Wal-Mart, Inc.*
   222 F.R.D. 189 (N.D. Cal. 2004) ...................................................................................... 15

*Ellis v. Costco Wholesale Corp.*
   657 F.3d 970 (9th Cir. 2011) ............................................................................................... 8

*Gray v. Cty. of Riverside*
   2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ....................................................................... 8

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*
   2005 WL 5955701 (S.D. Fla. Aug. 17, 2005) .................................................................... 12

*Hangarter v. Provident Life & Acc. Ins. Co.*
   373 F.3d 998 (9th Cir. 2004) .............................................................................................. 10

*Jinro Am. Inc. v. Secure Investments, Inc.*
   266 F.3d 993 (9th Cir. 2001) ............................................................................................... 9

*Lust by & Through Lust v. Merrell Dow Pharms., Inc.*
   89 F.3d 594 (9th Cir.1996) ................................................................................................ 12

*McHugh v. United Service Automobile Ass'n*
   164 F.3d 451 (9th Cir. 1999) .............................................................................................. 10

*Nationwide v. Kass Info. Sys., Inc.*
　523 F.3d 1051 (9th Cir. 2008) ................................................................................................ 10

*Ngethpharat v. State Farm Fire & Cas. Co.*
　2021 WL 2823245 (W.D. Wash. July 7, 2021) ........................................................................ 9

*Omega Pats., LLC v. CalAmp Corp.*
　13 F.4th 1361 (Fed. Cir. 2021) ............................................................................................... 12

*Primiano v. Cook*
　598 F.3d 558 (9th Cir. 2010) ................................................................................................... 9

*Roblox Corp. v. WowWee Grp. Ltd.*
　2024 WL 4057418 (N.D. Cal. Sept. 3, 2024) ......................................................................... 10

*Smith v. Pac. Bell Tel. Co.*
　662 F.Supp.2d 1199 (E.D. Cal. 2009) .................................................................................... 12

*Sony Music Entm't v. Cox Comm'ns, Inc.*
　2019 WL 9088257 (E.D. Va. Nov. 19, 2019) ........................................................................ 10

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*
　2007 WL 5674021 (C.D. Cal. Dec. 10, 2007) ....................................................................... 12

State Cases

*People v. Superior Court (J.C. Penney Corp., Inc.)*
　34 Cal. App. 5th 376 (2019) ................................................................................................... 11

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rule of Evidence 403 ............................................................................................... 1,12

Federal Rule of Evidence 702 ............................................................................................ passim

Federal Rule of Evidence 703 ................................................................................................. 11

State: Statutes, Rules, Regulations, Constitutional Provisions

California Business and Professions Code § 17501 ................................................................ 11

## I.   INTRODUCTION

Plaintiffs Andrew Axelrod and Eliot Burk ("Plaintiffs") have submitted the *Declaration of Christian Tregillis, CPA, ABV, CFF, CLP* (Dkt. 200-5, the "*Tregillis Declaration*") in support of their motion to certify damages and injunctive relief classes of Lenovo laptop, desktop, workstation, and tablet purchasers. The Court should exclude Tregillis' opinions under Federal Rule of Evidence 702. First, Tregillis' opinions are irrelevant and unhelpful because they measure a product's market value by calculating the "mode" or most frequent price offered over the previous 90 days. No economic or other empirical research supports using a "mode" price to calculate a product's market value, and there is no statutory or economic basis for looking back 90 days to arrive at that "mode" price.

Second, the Court should reject Tregillis' declaration and testimony in their entirety because his opinions are fundamentally unreliable. Specifically, Tregillis offers a methodology to identify harmed purchasers and calculate class-wide damages in support of Plaintiffs' *Motion for Class Certification* ("*Certification Motion*"). The results of his methodology fail to exclude countless unharmed class members who he admits have not been deceived by the alleged misrepresentations at issue. His methodology then presents no reliable method to calculate damages on a class-wide basis in this case because it amounts to little more than a series of novel assumptions and calculations without any economic basis, paired with simplistic arithmetic. Tregillis' liability and damages methodology also must be excluded because it detrimentally relies on the results of the two flawed surveys conducted by Plaintiffs' survey expert, Dr. Claudiu Dimofte ("Dr. Dimofte"), which themselves must be excluded for lacking empirical support as set out in the contemporaneously filed motion to exclude Dr. Dimofte's opinions.

For these reasons, and the reasons detailed below, the Court should exclude the *Tregillis Declaration* and all related opinions and testimony of Tregillis.

## II.   BACKGROUND FACTS

### A.   Plaintiffs' Motion for Class Certification

One June 5, 2024, Plaintiffs filed the *Certification Motion* seeking to certify the following classes:

> **Injunctive Relief Class**: All individuals who purchased two or fewer Class Products in a single transaction from Lenovo through the website lenovo.com/us/en primarily for personal or family purposes while in the State of California on any Class Day10 on or after June 2, 2017.
>
> **Damages Class**: All individuals who purchased two or fewer Class Products in a single transaction from Lenovo through the website lenovo.com/us/en primarily for personal or family purposes while in the State of California on any Class Day between June 2, 2018 and April 12, 2022 (inclusive).
>
> > **Web Price Damages Subclass**: All members of the Damages Class who made their purchase between June 2, 2018 and August 24, 2022 (inclusive).

(Dkt. 200.) Included with the *Certification* Motion is the Tregillis Report. (Dkt. No. 200-5.)

### B.  Tregillis' Report and Opinions

Plaintiffs attempt to support their *Certification Motion* with the opinions of Tregillis, a Certified Public Accountant and partner at a forensic and financial consulting firm. (Dkt. 200-5 ¶ 2.) At a high level, for each of the two products he analyzed, Tregillis' methodology consists of five "steps":

1.  He determines the days that he will consider as "Class Days" by checking if two conditions hold: (1) that the relevant product was available on Lenovo's public website, www.lenovo.com/us/en (the "Website"), on that day, and (2) that the posted reference price on the Website on that day was higher than the most frequently offered price on the Website in the previous 90 days. (Dkt. 200-5 ¶¶ 37, 39; Dkt. 222-3, *Expert Report of Lorin Hitt, Ph.D.* ("*Hitt R.*") ¶ 24.)

2.  For each "Class Day," Tregillis determines what he considers the "true" reference price as the offer prices presented to consumers on the greatest number of days in the preceding 90 days. (Dkt. 200-5 ¶ 39; *Hitt R.* ¶ 24.)

3.  Using input from Dr. Dimofte's Equivalent True Discount Survey, Tregillis discounts the "true" reference price by a percentage amount that he also calls "equivalent true discount" and that he calculates by extrapolating Dr. Dimofte's "equivalent true discount" to different price conditions. (Dkt. 200-5 ¶ 46; *Hitt R.* ¶ 24.)

4.  If the resulting value (the "equivalent true discount price") is lower than the real-world offer price, he estimates a "damages factor" as the difference between the real-world offer price and the "equivalent true discount price" re-expressed as a percentage of the real-world offer

price, which he suggests (without applying) could be used to calculate damages. (Dkt. 200-5 ¶¶ 50, 54; *Hitt R.* ¶ 24.)

5.  While it is not in the *Tregillis Declaration*, he testifies that if the "damages factor" is lower than Lenovo's production cost for the particular item, the "damages factor" is revised (exactly how is not explained) to ensure that the damages do not result in Lenovo losing money on the putative class members' purchases. (Dkt. 222-12 ("*Tregillis Tr.*") at 86:15-87:25, 88:24-89:6.)

## III. LEGAL STANDARD

Courts evaluating motions for class certification apply *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) to expert testimony. *See Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011); *In re ConAgra Foods, Inc.,* 302 F.R.D. 537, 549 (C.D. Cal. 2014). Under *Daubert*, "[a] trial judge has a 'gatekeeping' obligation with respect to opinion testimony of experts." *Gray v. Cty. of Riverside,* 2014 WL 5304915, at *16 (C.D. Cal. Sept. 2, 2014) (quoting *Daubert*, 509 U.S. at 589). "[T]he trial judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Daubert*, 509 U.S. at 543). Under Federal Rule of Evidence 702, courts may admit expert testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;"
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party offering the expert bears the burden of establishing that Rule 702 is satisfied." *ConAgra Foods, Inc.,* 302 F.R.D. at 549 (citation and quotation marks omitted).

## IV. TREGILLIS' OPINIONS SHOULD BE EXCLUDED

### A. Tregillis' Opinions Are Irrelevant And Unhelpful To The Trier Of Fact

#### 1. Tregillis' Use of a Mode Price Over a 90-Day Period Is Legally Irrelevant

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), as amended (Apr. 27, 2010) (quoting *Daubert*, 509 U.S. at 592). This ensures that the expert will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded. *Id.* Expert testimony inherently has the potential to have outsized influence on a trier of fact based on the fact that the person is being presented as an expert. *See Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001), amended on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001) (noting that because expert came before the jury "cloaked with the mantle of an expert"… "his statements were likely to carry special weight with the jury"); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n. 17 (9th Cir. 1995). Experts whose opinions are irrelevant to the pertinent issues in the case are excluded at the class certification stage as well as at trial. *See, e.g.*, *Ngethpharat v. State Farm Fire & Cas. Co.*, 2021 WL 2823245, at *3 (W.D. Wash. July 7, 2021) (excluding survey that was irrelevant to the case at class certification).

Here, Tregillis' opinions regarding the mode (or most frequently offered) price in effect over a 90-day period are irrelevant and, because they are presented through purported expert testimony, are potentially harmful. The use of mode price as a means to calculate prevailing market price under California's false advertising laws has been unequivocally rejected. *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *11-12 (C.D. Cal. Mar. 15, 2016), *aff'd,* 735 F. App'x 924 (9th Cir. 2018), *amended on denial of reh'g,* 733 F. App'x 404 (9th Cir. 2018), and *aff'd,* 733 F. App'x 404 (9th Cir. 2018). In *Chowning*, as here, the expert proposed to measure prevailing market value by way of a mode price without "any evidence to demonstrate that mode price reflects the retail value of the merchandise." *Id.* at 12. The expert in *Chowning* opined that "the retail value of a product is the price that most customers are willing to pay for that product" and that "the retail value of a product … is the most frequent price that occurred." *Id.* at 11-12. Tregillis assumes precisely the same thing. (Dkt. 200-5 ¶ 39 (to calculate the "true reference price," or market value, Tregillis will "identify the price offered to consumers on the greatest number of days in the preceding 90 days, or, in statistical terms, the 'mode' offer price in the prior 90 days"); *Tregillis Tr.* at 72:4-73:10

("To be the prevailing price, it has to be the mode, the most frequent.").) Like the expert in *Chowning*, Tregillis cites no economic or legal basis for taking this approach. *Chowning*, 2016 WL 1072129, at *12. Use of the mode price to calculate a market value, or "true reference price," "has no basis in economics or consumer behavior." (*Hitt R.* ¶¶ 143-144.) As a result, Tregillis' damages methodology using this market value as the basis for price premium damages should be rejected and his opinions (declaration and testimony) based thereon should be excluded.

### 2. Tregillis' Conclusions Regarding the Mode Price Over a 90-Day Period Are Little More Than Legal Conclusions

Relatedly, "an expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004). This prohibition extends to testimony that seeks to infer a legal meaning to its analysis of the facts. *See generally McHugh v. United Service Automobile Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) (an expert's "testimony cannot be used to provide legal meaning" or interpretation); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is not proper for issues of law because the role of an expert is to interpret and analyze factual evidence, not to testify about the law). Allowing an expert to "offer[] legal conclusion testimony invades the province of the trial judge." *Nationwide v. Kass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). Courts have excluded Tregillis' testimony in at least one other case where it improperly proffered "arguments that would be more appropriately raised by [the party's] lawyers," and should do the same here. *See Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4057418, at *17 (N.D. Cal. Sept. 3, 2024) (excluding portions of Tregillis' expert report and testimony because "the Court does not find that the opinion … is based on specialized knowledge that will help the trier of fact understand the evidence or determine a fact in issue"); *Sony Music Entm't v. Cox Comm'ns, Inc.*, 2019 WL 9088257, at *2 (E.D. Va. Nov. 19, 2019) (granting in part motion to exclude Tregillis' testimony, holding "Tregillis' testimony may not use legal definitions to limit statutory damages").

Here, Tregillis' opinions regarding the mode price in effect over a 90-day period are harmful and improper because they provide little more than legal conclusion. The choice to calculate the

"true reference price" with a 90-day lookback at prior offer prices appears to be little more than an inaccurate and improper legal conclusion, misapplying the strict "three month" standard in California Business and Professions Code section 17501 (which is not applicable to the damages class, as explained further in Lenovo's *Opposition*).[1] Tregillis testified as much:

> Q.  And paragraph 17, you are referring to California Business and Professions Code Section 17501. Is this where the -- again, the majority of 90 days concept comes from that you've utilized?
>
> A.  I'm aware of the 90-day reference as part of 17501. It is something that I have used in other context as well, but it starts with 17501.
>
> Q.  Okay. Is there any reason you're using that construct, the majority of the proceeding 90 days in your calculations beyond the fact that it's included in 17501?
>
> A.  The fact that I haven't seen other prescriptions for what a reasonably -- a reasonable period of time is.

(*Tregillis Tr.* at 54:1-19.) As with his use of the mode price, Tregillis cites no academic literature, empirical evidence, or other scientific basis for his assumption that consumers interpret reference prices in relation to the offer prices used over the previous 90 days. (*Hitt R.* ¶¶ 143-144.) Instead, this results solely from his interpretation of California law, which as shown in *J.C. Penney* is not correct. Tregillis' methodology based on an improper and baseless legal conclusion should be rejected.

### B. Tregillis' Opinions Are Not Based on Sufficient Facts or Data, Nor Are They the Product of Reliable Methods That Were Reliably Applied

Federal Rule of Evidence 702 provides that an expert's testimony must be "the product of reliable principles and methods." Federal Rule of Evidence 703 provides that the facts or data relied upon by an expert need not be independently admissible so long as the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The party proffering the expert has the burden of showing that the requirements for

---

[1] Even where Section 17501 applies, which it does not for damages purposes here, 90 days is the wrong measure. *People v. Superior Court (J.C. Penney Corp., Inc.)*, 34 Cal. App. 5th 376, 415 n.24 (2019) (noting, "We recognize that the complaints rely on a 90-day period, rather than a three-month period. The complaints' allegations are thus technically defective, as the three-month period will comprise 89 to 92 days …" and observing that whether the statute is contravened if a former price obtains on fewer than half of the days in a 3-month period is a legal conclusion).

admissibility of the expert's testimony have been satisfied. *See Lust by & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir.1996); *Bennett v. PRC Public Sector, Inc.*, 931 F.Supp. 484, 489-90 (S.D.Tex.1996). If the basis for an expert's opinion is clearly unreliable, it may be disregarded. *Smith v. Pac. Bell Tel. Co.*, 662 F.Supp.2d 1199, 1226 (E.D. Cal. 2009).

Numerous courts have excluded Tregillis' damages-related testimony and/or reports "because the methodology he used to assess [the] Plaintiffs' damages fail[ed] to meet the *Daubert* standard for reliability." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 2005 WL 5955701, at *1, 5 (S.D. Fla. Aug. 17, 2005) (concluding Tregillis' "testimony is inadmissible because the method by which Mr. Tregillis determines the percentage of those profits that are attributable to Mr. Islas's appearance is unreliable"). *See also Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1381-82 (Fed. Cir. 2021) (holding district court abused its discretion in denying request for new trial on patent infringement damages where Tregillis' testimony failed to account for differences in relevant patents resulting in a lack of evidence supporting royalty rates in licenses at issue); *Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2007 WL 5674021, at *1-2 (C.D. Cal. Dec. 10, 2007) (excluding portions of Tregillis damages methodology that were based on assumptions presented without any supporting evidence, rendering calculation of damages inadmissible under Rules 403 and 702).

### 1. Tregillis' Methods Are Unfounded and Do Little More Than Simple Arithmetic

As explained further by Professor Hitt, Tregillis' damages methodology is unreliable because his criterion used to define "Class Days" has no economic basis on actual consumer behavior. (*Hitt R.* ¶ 148.) The "Class Days" calculation is little more than a basic tabulation of whether a product was offered at the reference price in the previous 90 days, which does not require any specialized knowledge to help a trier of fact to understand the evidence or to determine a fact in issue, but Tregillis uses that to then extrapolate whether Lenovo has liability for purported misrepresentations to putative class members and the amount of such liability. (Dkt. 200-5 ¶¶ 37-38 ("If a day is determined not to be a Class Day … then I treat that is [*sic*] though there is no liability and no damages would accrue.").) Yet Tregillis' "Class Days" concept has no economic

basis and he provides no economic or other sound motivation for using this definition. (*Hitt R.* ¶ 144.) His choice of a 90-day period to compare reference and offer prices creates an arbitrary difference in how he treats sales completed on consecutive days with the same price. (*Id.* ¶ 140.) This arbitrary difference between identical transactions completed on two consecutive dates has no economic basis that is founded on consumers' perceptions about the savings associated with such transactions, or any theoretical argument or empirical evidence at all. (*Id.* ¶ 141.) Tregillis acknowledges that no consumer perception evidence or research supports his "Class Days" definition. (*Id.*; *Tregillis Tr.* at 142:2-17.) Accordingly, Tregillis' "Class Days" methodology is unreliable.

Similarly, Professor Hitt explains the unreliability of the next step in Tregillis' methodology, wherein he calculates a "true reference price" by identifying the most-frequently-offered price ("mode" price) in the previous 90 days. Tregillis' "true reference price" has no basis in economics or consumer behavior. (*Hitt R.* ¶ 143-144.) Again, he cites no academic literature, empirical evidence, or other scientific basis for the conclusion that the rolling mode of offer prices over the last 90 days represents a reference price that consumers could, should, or do consider when evaluating a product. (*Id.*) Neither Tregillis nor Prof. Dimofte provide any evidence that a posted reference price that exceeded their claimed "true reference price" caused any putative class member to make a different purchase choice or to pay more for a product than they would have otherwise. (*Id.*) In fact, strong evidence suggests that many were not affected and that even among those who were, the extent of the effect is heterogeneous across consumers. (*Id.*) Moreover, the "true reference price" methodology completely ignored that some units of the relevant products were offered by Lenovo at the full posted reference price (without any discount) depending on the total quantity of a product purchased by a consumer, meaning both the reference price and promotional price were real offer prices for real consumers. (*Id.* ¶ 145.) Because Tregillis' definition of a purported "true reference price" did not consider the fact that Lenovo indeed offered more than one price per At-Issue Product and day, Tregillis' definition of a purported "true reference price" is unsupported and, as a result, unreliable. (*Id.*)

Finally, while it is true that damages methodologies need not be fully executed at the class

certification stage to be admissible, the extent to which Tregillis failed to show by way of even an example that his methodology ***could be executed*** renders it inadmissible for the purpose of establishing that a class-wide damages methodology is feasible.  The *Tregillis Declaration* does not show that he calculated any monetary damages, even for purchasers of the two exemplar products he analyzes so as to show that such calculations would be possible. (*Hitt R.* ¶¶ 169-172.)  Critically, Tregillis testified that for purposes of class certification sampling in this litigation,[2] he would be unable to test or design his methodology unless he had a sampling of laptops, desktops, workstations, and tablets allowing for "a 95% level of confidence that the sample data obtained are accurate to +/-5% of the population's values." (Dkt. 72-9 ¶¶ 4-5, 11-13, 32, 34.)  Here, that would necessitate a sample of around 344 products (which he had adequate data to create) based on Tregillis' requirements and analysis, whereas his actual report sampled two. (*Id.*; Dkt. 200-5 ¶ 40 and Ex. D, Sched. 1.1, 2.1; *Declaration of Abby H. Meyer* ("*Meyer Decl.*") ¶ 9.)  For each of the two products he did consider, Tregillis' damages methodology stops with the calculation of a "Damages Factor" on each calendar day he identified as a "Class Day." (*Hitt R.* ¶ 169; Dkt. 200-5, Ex. D, Sched. 1.1, 2.1.)  In his deposition, Tregillis stated that his proposal is to apply the same "Damages Factor" to all transactions of the same product that happened on the same "Class Day." (*Tregillis Tr.* at 171:3–5.)  This approach is, at best, incomplete and is likely to give an incorrect amount of any possible injury to putative class members (or the class as a whole). (*Hitt R.* ¶¶ 169-172.)  This is because, for example, not all purchasers would be class members, and the "Damages Factor" results in a windfall for some consumers either because they were not deceived to that extent (if at all) or because they paid less than the offered price considered by Tregillis due to individual

---

[2] Magistrate Judge Illman relied on Tregillis' purported need for this substantial product and sales data when ordering Lenovo to produce substantial discovery on thousands of products before class certification. (*See* Dkt. 92.)  Plaintiffs largely relied on the need for this and similar data in asking for a six month extension of their class certification deadlines, in response to which they were granted a four month extension. (*See* Dkt. 95 ("If the February 5, 2024 class certification deadline is not extended, Plaintiffs and their experts will not have sufficient time to analyze the data and incorporate it into their reports and motion"); Dkt. 117.)  The relevant data purportedly necessary for Tregillis to complete his damages methodology report was produced. (*See Meyer Decl.* ¶¶ 6-8.)  Accordingly, Tregillis had a full and complete opportunity to prepare his report in the manner sought by Plaintiffs.

discounts. (*Id.*) Accordingly, the failure to fully complete even an exemplar of the results of his damages methodology prevented Tregillis from being able to show that it would be reliable (and, as set out by Hitt, these exemplars would almost certainly have shown how it is not reliable).

### 2. Tregillis' Opinions Rely on Dimofte's Survey Results, Which Themselves Are Unreliable and Not Based on Sufficient Facts and Data

Methodological problems that call into question the reliability of the survey justify exclusion. *See, e.g., In re ConAgra Foods, Inc.,* 90 F. Supp. 3d at 949-50 (excluding survey where methodological problems indicated it was not "conducted according to accepted principles and reliable") (internal quotations omitted); *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 121 (3d Cir. 2004) (excluding survey because the "methodology was fundamentally flawed," and rejecting contention that flawed methodology went to the weight, rather than the admissibility). Additionally, surveys are subject to exclusion where the participants could tell the purpose for which the survey was administered due to bias in the questions. *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189 (N.D. Cal. 2004).

As set out in the contemporaneously filed *Motion to Exclude Claudiu V. Dimofte, Ph.D.'s Opinions Regarding Consumer Behavior* ("*Dimofte Motion*"), the insufficient facts or data and fundamental biases plaguing Prof. Dimofte's surveys render them inadmissible for purposes of supporting class certification. The Consumer Perception Survey lacks real-world purchasing conditions and is characterized by persistent focalism bias (drawing participants' attention to the answers they "should" provide), such that it cannot be used by Tregillis as a reliable basis for his assumption that reference prices drive purchase behavior. (Dkt. 200-5 ¶¶ 19-20.) Similarly, the Equivalent True Discount Survey is a *sui generis* methodology lacking empirical or scientific validity, and as reviewed by Prof. Hitt, would never be supported by scientific rigor because it simplifies the purchasing situation with unrealistic scenarios, does not isolate the impact of reference prices versus other information, and relies on self-reported hypothesized behavior instead of reporting of realistic choices. (*Hitt R.* ¶¶ 78-82.) The fact that it is the entire underpinning of Tregillis' damages methodology therefore undermines his entire damages analysis. Finally, while Prof. Dimofte does not actually run a conjoint survey, Tregillis states that he is willing to rely on

Prof. Dimofte's generally hypothesized conjoint analysis as an alternative, without seeing its design, what form the results would take, and whether those results could realistically be used as inputs for his damages methodology. For these reasons, as further explained in the *Dimofte Motion*, these flaws in the underlying surveys render the entire damages methodology unreliable.

Flaws in Tregillis' own methodologies, to the extent they exist, similarly render the Tregillis damages methodology unreliable. Prof. Hitt explains why Tregillis' use of input from Prof. Dimofte's Equivalent True Discount Survey improperly extrapolates the results of the survey to completely different settings, based on arbitrary assumptions lacking any scientific support. (*Hitt R.* ¶¶ 151-154.) Tregillis uses the Equivalent True Discount Survey input to discount the "true refence price" by a flat per-product discount percentage (which he also calls "equivalent true discount"). (*Id.* ¶ 24.) Tregillis points to a concept he calls "discount compression" whereby the amount of discount that would be required for a consumer to decide to purchase a product (i.e., the "equivalent true discount") may decline when the reference price declines, such that a product with a lower reference price would need a lesser discount in order for the consumer to decide to purchase it. (*Id.* ¶¶ 151-154.) Tregillis introduces his own method—which entirely lacks scientific basis—to translate the "equivalent true discount" found in Prof. Dimofte's survey for a particular product, particular reference price and particular offer price to other settings with different products and prices. (*Id.*) All three of the underlying assumptions, as explained by Prof. Hitt in detail, are untested, arbitrary, and lack scientific support. (*Id.*) The amount of work that would be required to test these assumptions is cost- and time-prohibitive, rendering it impractical and infeasible on a class-wide basis.

Additionally, Prof. Hitt describes how Tregillis' disregard of the heterogeneous effect reference prices have on putative class members renders Tregillis' methodology unreliable. (*Id.* ¶¶ 165-168.) Tregillis uses a single "Damages Factor" (i.e., amount of damages) for each product at issue ono a given day, regardless of the heterogeneity in how different consumers respond to reference prices based on the knowledge and experiences with which they interpret those prices. (*Id.*) Indeed, some consumers pay no attention to reference prices at all. (*Id.*) This feature of Tregillis' methodology design renders it unreliable. (*Id.*)

## V. CONCLUSION

For these reasons, Defendant respectfully requests that the Court exclude all Tregillis testimony and declarations in connection with its review and adjudication of the *Class Certification Motion*.

Dated: October 4, 2024                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                By   */s/ P. Craig Cardon*
                                     P. CRAIG CARDON
                                     ABBY H. MEYER
                                     BENJAMIN O. AIGBOBOH
                                     ALYSSA SONES
                                     *Attorneys for Defendant*
                                     LENOVO (UNITED STATES) INC.