**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
Natasha Dandavati (SBN 285276)
natasha.dandavati@edge.law
981 Mission Street 20
San Francisco, CA 94103
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
laura.goolsby@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>    Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br>*Assigned to the Hon. Jeffrey S. White*<br><br>**PLAINTIFFS' OPPOSITION TO LENOVO'S MOTION TO EXCLUDE CLAUDIU V. DIMOFTE, PH.D.'S OPINIONS (DKT. 224)**<br><br>Date:        February 7, 2025<br>Time:        9:00 a.m.<br>Crtrm:       5<br><br>Action Filed:   August 31, 2021<br>Trial Date:     None Set |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................................1

II.  FACTUAL SUMMARY ......................................................................................1

    A.   The *Consumer Perceptions Survey*..........................................................1

    B.   The Proposed *Equivalent True Discount Survey*.......................................1

    C.   The Proposed *Conjoint Analysis.*............................................................2

III. LEGAL STANDARD ........................................................................................2

IV.  ARGUMENT.....................................................................................................3

    A.   A limited *Daubert* assessment is the appropriate legal standard. ..................3

    B.   Dr. Dimofte is qualified to offer opinions about consumer behavior and
         methodologies for calculating damages on a classwide basis. ......................3

    C.   The *Consumer Perception Survey* is methodologically sound and
         reliable. ..............................................................................................4

        (1)   *The Consumer Perception Survey uses realistic screen captures
             from Lenovo's website and appropriately isolates the challenged
             statements.*....................................................................................4

        (2)   *The Consumer Perception Survey is not undercut by focalism
             bias.*............................................................................................6

        (3)   *Lenovo relies on non-binding, inapplicable case law to support
             its bias arguments.* .......................................................................8

        (4)   *Focalism bias goes to the weight, not the admissibility of Dr.
             Dimofte's consumer perceptions survey.* .........................................10

    D.   The *Equivalent True Discount Survey* is methodologically sound and
         reliable. ............................................................................................10

        (1)   *Dr. Dimofte's contingent valuation methodology is widely
             accepted as a reliable measurement of price premia in false
             advertising cases.*.......................................................................10

        (2)   *Lenovo's remaining criticisms go to the weight, not the
             admissibility of Dr. Dimofte's conclusions.* ....................................12

        (3)   *Lenovo's concerns about Plaintiffs' class-wide damages
             methodology are not appropriate for a Daubert motion.*...................13

*(4)*    *Lenovo's criticisms' of the survey's illustrative results are misplaced.* ..............................................................................14

E.    Dr. Dimofte's proposed conjoint analysis is reliable and will be further developed before being used to calculate price premiums ..........................................14

*(1)*    *The fact that the conjoint analysis does not isolate reference price does not render Professor Dimofte's methodology unreliable* ..............................................................................14

*(2)*    *Dr. Dimofte's proposed conjoint analysis will be further developed and satisfies the threshold for admissibility* ...................................15

V.    CONCLUSION..............................................................................................15

1

**TABLE OF AUTHORITIES**

2    *CASES*

3    *Blue Bottle Coffee, LLC v. Chuan Liao,* No. 3:21-cv-06083-CRB, 2023 U.S. Dist.

4        LEXIS 234802 (N.D. Cal. Nov. 30, 2023)........................................................................ 4, 5

5    *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993) ........................................... 1, 2, 3, 8, 13, 14, 15

6    *H&R Block E. Enterprises v. Intuit,* 2013 WL 12129646 (W.D. Mo. Mar. 11, 2013)............................9

7    *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018)...................................... 12, 14, 15

8    *Hilsley v. Ocean Spray Cranberries*, No. 3:17-cv-2335, 2018 U.S. Dist. LEXIS 202679

9        (S.D. Cal. Nov. 29, 2018) ............................................................................................... 11, 13

10   *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 220969

11       (C.D. Cal. June 7, 2017) .............................................................................................................16

12   *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334 (N.D. Cal. 2018)....................................10

13   *In re Autozone, Inc.* 2016 U.S. Dist. LEXIS 105746 (N.D. Cal. Aug. 10, 2016) ...................................8

14   *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015)................................................ 14, 15

15   *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 288 (S.D.N.Y.

16       2022)...................................................................................................................................................8

17   *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS 34597

18       (N.D. Cal. Jan. 25, 2022) .............................................................................................................10

19   *In re Toyota Motor Corp. Hybrid Brake Mktg.*, No. 8:10-mdl-2172, 2012 U.S. Dist.

20       LEXIS 151559 (C.D. Cal. Sep. 20, 2012)..............................................................................11

21   *Lytle v. Nutramax Labs.*, 114 F.4th 1011 (9th Cir. 2024).......................................... 2, 3, 14, 15

22   *Miller v. Fuhu,* No. 2:14-cv-06119, 2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1,

23       2015)..................................................................................................................................................11

24   *Miller v. Travel Guard Grp.*, No. 3:21-cv-9751-TLT, 2023 U.S. Dist. LEXIS 195418

25       (N.D. Cal. Sept. 14, 2023) .............................................................................................................5

26   *Orgain v. N. Innovations Holding,* No. 8:18-cv-1253, 2022 U.S. Dist. LEXIS 109050

27       (C.D. Cal. Jan. 28, 2022) ...............................................................................................................5

28   *Orshan v. Apple Inc.*, No. 5:14-cv-5659-EJD, 2024 U.S. Dist. LEXIS 177689 (N.D.

Cal. Sep. 30, 2024) ........................................................................................2

*Procter & Gamble Pharms. v. Hoffmann-LaRoche*, 2006 U.S. Dist. LEXIS 64363

(S.D.N.Y. Sep. 6, 2006) ...............................................................................10

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) .............................2

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264 (4th Cir. 2002) ........................9

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015)........................ 2, 3

*Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-cv-10053-YGR, 2024 U.S. Dist. LEXIS

198028 (N.D. Cal. Sep. 20, 2024) ...............................................................10

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) .................2

*Testone v. Barlean's Organic Oils, LLC*, 3:19-cv-169, 2021 U.S. Dist. LEXIS 185896,

(S.D. Cal. Sep. 28, 2021) .............................................................................12

*THOIP v. Walt Disney*, 690 F. Supp. 2d 218 (S.D.N.Y. 2010) .............................6

*Valador v. HTC Corp.*, 242 F. Supp. 3d 448 (E.D. Va. 2017) .............................9

*Vans v. Walmart*, No. 8:21-cv-1876-DOC, 2023 U.S. Dist. LEXIS 190515 (C.D. Cal.

Oct. 11, 2023)......................................................................................... 4, 5, 6

*Vizcarra v. Unilever United States Inc.*, No. 4:20-cv-2777-YGR, 2023 U.S. Dist.

LEXIS 38208 (N.D. Cal. Feb. 24, 2023)............................................... 11, 12, 13

*Wendt v. Host Int'l*, 125 F.3d 806 (9th Cir. 1997) ..........................................12

## I.    <u>INTRODUCTION</u>

Before the Court is the Motion to Exclude Claudiu V. Dimofte, Ph.D.'s Opinions ("Motion") filed by Defendant Lenovo (United States) Inc. ("Lenovo") in this matter.  The Motion should be denied for the following reasons.  First, Lenovo applies the wrong legal standard for evaluating a motion to exclude expert testimony at the class certification stage.  Where a damages model has not been fully executed, as here, the Court need not conduct a full *Daubert* analysis.  Second, Lenovo seeks to challenge the admissibility of Dr. Dimofte's surveys and proposed methodologies by alleging deficiencies in their design and execution.  However, these challenges go to the weight of Dr. Dimofte's surveys and proposed methodologies, not their admissibility.  As detailed below, Dr. Dimofte is highly qualified to opine on consumer behavior and classwide damages.  His qualifications meet the standards of Rule 702 and *Daubert*, and his opinions are both relevant and reliable.  Lenovo's motion to exclude Dr. Dimofte's opinions should be denied in its entirety.

## II.    <u>FACTUAL SUMMARY</u>

### A.    The *Consumer Perceptions Survey.*

To assess how consumers interpret representations of "save" or "savings"—and whether those representations are harmful and impact purchase behavior—Dr. Dimofte conducted a *Consumer Perceptions Survey*.  (Expert Report of Claudiu V. Dimofte, Ph.D. ("Dimofte Rep."), Dkt. No. 200-6 ¶ 30.)  Dr. Dimofte conducted the *Consumer Perceptions Survey* consistent with marketing research science and practice, and adhered to factors in the Federal Judicial Center's *Manual for Complex Litigation*.  (*Id.* ¶¶ 23-24.)

### B.    The Proposed *Equivalent True Discount Survey.*

To calculate the economic harm to consumers who purchased products on Lenovo's website they would not have otherwise purchased but for the deceptive price reductions, Dr. Dimofte designed an *Equivalent True Discount Survey*.  (*Id.* ¶ 27.)  The survey illustrates a method of quantifying the harm to consumers that can be used in a damages model for calculating damages on a classwide basis.  (*Id.* ¶ 21.)  Specifically, the survey "demonstrate[s] how the increase in consumers' purchase likelihood that results from false price reductions can be measured and quantified." (*Id.* ¶¶ 69, 77.)  In other words, the survey measures the price that consumers would pay but for the false and misleading

1    price reductions advertised by Lenovo.  (*Id.* ¶ 69.)

2          **C.**     **The Proposed *Conjoint Analysis.***

3          Dr. Dimofte further proposes using a conjoint analysis he designed to quantify the amount of

4    utility (i.e., value) that consumers place on the misrepresentations at issue.  (*Id.* ¶¶ 119-20.)  The

5    conjoint analysis will measure and quantify damages based on a price premium theory, and the results

6    can be incorporated into a damages model to calculate damages on a classwide basis.  (*Id.* ¶ 22.)

7    **III.**    **<u>LEGAL STANDARD</u>**

8          At class certification, the requirement that expert testimony be reliable and relevant is

9    "somewhat relaxed," and courts do not always need to conduct a full *Daubert* analysis.  *Orshan v.*

10   *Apple Inc.*, No. 5:14-cv-5659-EJD, 2024 U.S. Dist. LEXIS 177689, at *5 (N.D. Cal. Sep. 30, 2024)

11   (citing *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 597 (1993)).  There is no requirement that the

12   evidence relied upon by plaintiffs to support class certification be presented in an admissible form.

13   *Lytle v. Nutramax Labs.*, 114 F.4th 1011, 1024-25 (9th Cir. 2024) (citing *Sali v. Corona Reg'l Med.*

14   *Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018)).  Indeed, district courts in the Ninth Circuit often consider

15   evidence at the class certification stage that may ultimately be inadmissible. *Sali*, 909 F.3d at 1004 n.2.

16         Instead, courts tailor their analysis to whether an expert's opinion is sufficiently reliable to

17   admit for the purpose of proving or disproving Rule 23 criteria.  *Tait v. BSH Home Appliances Corp.*,

18   289 F.R.D. 466, 495 (C.D. Cal. 2012).  Thus, while the requirements of relevance and reliability serve

19   as useful guideposts, the court retains discretion in determining how to test reliability.  *Spann v. J.C.*

20   *Penney Corp.*, 307 F.R.D. 508, 516 (C.D. Cal. 2015) (internal quotation marks and citations omitted).

21         The level of scrutiny that applies at class certification is a function of what aspect of Rule 23 is

22   being addressed.  *Orshan*, 2024 U.S. Dist. LEXIS 177689, at *5 (citing *Lytle*, 114 F.4th at 1030).

23   Where an expert offers opinions to show that damages can be measured on a classwide basis but has

24   not yet collected all of the necessary data to perform his calculations, courts perform only a limited

25   *Daubert* analysis focused on the expert's methodology, and leave a "full-blown *Daubert* assessment"

26   of the expert's results to a later time.  *Id.*  Whether a "full" or "limited" *Daubert* assessment should be

27   applied depends on the timing of the class certification decision.  *Lytle*, 114 F.4th at 1031.  If

28   discovery has closed, and the analysis has been completed, and the surveys have been fully executed,

1 | there may be no reason to delay assessment of the ultimate admissibility at trial. *Id.* But where an

2 | expert's model has yet to be fully developed, "a district court is limited at class certification to making

3 | a predictive judgment about how likely it is the expert's analysis will eventually bear fruit." *Id.* While

4 | courts still assesses whether the model is reliable, a "more full-blown *Daubert* assessment of the

5 | results of the application of the model would be premature." *Id.* At this stage, courts consider only

6 | whether the expert evidence is useful in evaluating whether class certification requirements have been

7 | met. *Spann*, 307 F.R.D. at 516 (internal quotation marks and citations omitted).

8 | **IV.    <u>ARGUMENT</u>**

9 |     **A.    A limited *Daubert* assessment is the appropriate legal standard.**

10 |     Lenovo applies the wrong legal standard—admissibility—in support of its motion to exclude

11 | the Dimofte Report. (Mot. at 9.) As discussed in Part III above, admissibility is not a requirement at

12 | class certification. Here, because discovery has not closed,[1] and Plaintiffs' experts have not fully

13 | executed their models nor completed their analysis, a limited *Daubert* assessment is applicable. Thus,

14 | the Court is "limited to making a predictive judgment about how likely it is the expert's analysis will

15 | eventually bear fruit." *Lytle*, 114 F.4th at 1031.

16 |     **B.    Dr. Dimofte is qualified to offer opinions about consumer behavior and**
17 |           **methodologies for calculating damages on a classwide basis.**

18 |     Dr. Dimofte is exceptionally qualified to offer opinions about consumer behavior and

19 | methodologies for calculating damages on a classwide basis. Dr. Dimofte is a tenured Professor of

20 | Marketing in the Fowler College of Business at San Diego State University and a Research Fellow at

21 | its Centre for Integrated Marketing Communications. (Dimofte Rep. ¶ 5.) Dr. Dimofte has been

22 | involved in hundreds of research projects over his two decades of conducting academic and consulting

23 | research in the field of marketing. (*Id.* ¶ 8.) Dr. Dimofte's research has focused on various areas of

24 | consumer psychology, with a focus on consumer response to marketing stimuli and its measurement

25 | via appropriate marketing metrics. (*Id.* ¶ 5.) Dr. Dimofte's survey experience includes performing

26
27
28

[1] Plaintiffs have encountered numerous delays in attempting to obtain class discovery. Indeed, only in November 2024, five months after Plaintiffs moved for class certification, did Lenovo make its first significant production of class-related documents, comprised of more than one million pages. Prior to November 2024, Lenovo had only produced 39 documents absent a court order. (Dandavati Decl. ¶ 3.) *See also* Dkt. No. 75 (finding that Lenovo was partly at fault for delays in discovery).

and supervising hundreds of surveys at all stages, including the methodologically rigorous selection of appropriate samples from the population of interest. (*Id.* ¶ 9.) Dr. Dimofte's research has appeared in leading scholarly journals in the fields of marketing, consumer psychology, and management science, and he has served on the Editorial Boards of three of the leading academic journals in business: the *Journal of Consumer Psychology*, the *Journal of the Academy of Marketing Science*, and the *Journal of International Marketing*. (*Id.* ¶ 5-6.)

        **C.**      **The *Consumer Perception Survey* is methodologically sound and reliable.**

            (1)    *The Consumer Perception Survey uses realistic screen captures from Lenovo's website and appropriately isolates the challenged statements.*

Lenovo claims that the *Consumer Perception Survey* is unreliable because it "fail[s] to replicate behavior in the real-world." (Mot. at 13:23-24.) However, this argument is misplaced, as the survey relied on "realistic screen captures" from Lenovo's website and was administered online, like the shoppers on Lenovo's website. (Dimofte Rep. ¶¶ 43, 49-50, App. G.) Moreover, any critique "that a failure to replicate real-world conditions bear[s] on a survey's weight, not admissibility." *Vans v. Walmart*, No. 8:21-cv-1876-DOC, 2023 U.S. Dist. LEXIS 190515, at *10 (C.D. Cal. Oct. 11, 2023).

Marketing research is frequently scenario-based and necessarily imposes constraints on infinite real-world possibilities. Dr. Dimofte's surveys employ a common methodological approach wherein respondents are asked to place themselves in marketplace scenarios that replicate actual events and situations. (Dimofte Rep. ¶ 49.) This approach allows researchers to operationalize otherwise prohibitively expensive manipulations and control relevant variables in ways that reduce the random noise that affects real life contexts. (Dkt. No. 233-1, ¶ 2, Ex. 1 ("Dimofte Tr.") at 67:19-22, 135:4-7.) Here, "the whole scenario is structured as an interaction occurring on the Lenovo website," which provides a reasonable degree of mundane realism to the average consumer. (Dimofte Tr. at 185:5-6.) Scenario-based research allows researchers to compress time and focus on specific steps in the consumer decision-making process. (Dimofte Tr. at 186:9-189:5.) For this reason, courts in this district consistently reject challenges to surveys based on their failure to replicate marketplace conditions.

For example, in *Blue Bottle Coffee, LLC v. Chuan Liao*, an expert survey was challenged on the basis that the trademark at issue was tested "in a vacuum" and "removed from its trademark

context." No. 3:21-cv-06083-CRB, 2023 U.S. Dist. LEXIS 234802, at *21, 26 (N.D. Cal. Nov. 30, 2023). The court, however, rejected the challenge, holding that the "criticisms about marketplace realities [did not] render the survey so unreliable as to be inadmissible." *Id.* at 28-29. Similarly, in *Vans*, the court denied Walmart's motion to exclude Vans's expert surveys, which Walmart argued failed to replicate real-world conditions. 2023 U.S. Dist. LEXIS 190515, at *9-10. Walmart claimed the survey presented respondents with "up-close images of a sneaker and a man's leg from the calf down," whereas real-world encounters with shoes differ. *Id.* at *9. Walmart, however, failed to cite authority explaining why such images fail to reflect real-world conditions or deviate from generally accepted survey methods. *Id.* at *9-10; *see also Miller v. Travel Guard Grp.*, No. 3:21-cv-9751-TLT, 2023 U.S. Dist. LEXIS 195418, at *14-15 (N.D. Cal. Sept. 14, 2023) (survey that relied on defendants' "actual offers" was not required "to match real-world conditions exactly"); *Orgain v. N. Innovations Holding,* No. 8:18-cv-1253, 2022 U.S. Dist. LEXIS 109050, at *17 (C.D. Cal. Jan. 28, 2022) (rejecting a challenge to a survey based on the claim that it presented images of single products in isolation, despite the fact that the products were sold side-by-side in reality).

Here, Lenovo raises similar arguments to those rejected in *Blue Bottle Coffee*, *Vans*, *Miller*, and *Orgain*, claiming that the *Consumer Perception Survey* reflects consumer behavior "in a biased vacuum." (Mot. at 12.) But contrary to Lenovo's argument, case law makes clear that Dr. Dimofte was not required to give respondents the "ability to easily compare products and prices across different vendors." (*Id.*) Comparable products and prices were neither part of the challenged statements nor presented on Lenovo's website. (*See* Pls.' Mot. for Class Cert., Dkt. No. 200 at 1-3.) Accordingly, Dr. Dimofte was not required to speculate about other products or vendors that class members might have considered when analyzing the impact of the specific discounts at issue on consumer behavior. *See Orgain,* 2022 U.S. Dist. LEXIS 109050, at *17 (accepting survey where single products were presented in isolation). Dr. Dimofte's approach of presenting survey respondents with the "actual offers" at issue aligns with established case law and accepted practices for assessing consumer perception. *See, e.g.*, *Miller*, 2023 U.S. Dist. LEXIS 195418, at *14-15 (approving a survey that presented "actual offers" to respondents). Here, Dr. Dimofte's survey is even more realistic than the one accepted in *Vans*, as Dr. Dimofte used "realistic screen captures" of the advertising, rather than

1   close-up images.  *See Vans*, 2023 U.S. Dist. LEXIS 190515, at *9.  Lenovo cites no authority

2   suggesting that Dr. Dimofte's use of the "actual offers" displayed on Lenovo's website fails to reflect

3   real-world conditions or deviates from generally accepted methods.  *Id.* at *9-10.

4          The only authority cited by Lenovo, *THOIP v. Walt Disney*, 690 F. Supp. 2d 218 (S.D.N.Y.

5   2010) is inapplicable.  (Mot. at 12.)  In *THOIP*, the court rejected a survey designed to test customer

6   confusion by presenting participants with specific pairs of shirts.  *Id.* at 219.  The court found that the

7   expert failed to show the tested shirt pairs were available in close proximity in the marketplace, and

8   Disney's expert demonstrated that, with one exception, the tested shirts were never sold in the same

9   retail locations.  *Id.* at *237.  In contrast, Dr. Dimofte's surveys do not test for customer confusion

10  between different products, and adding additional products to the survey would have introduced

11  "noise" that undermines the goal of isolating the effect of the specific promotion at issue.  Dr.

12  Dimofte's methodology was designed to reduce such "noise" and focus on the impact of the sales

13  promotion on consumer behavior.  (Dimofte Rep. ¶¶ 85, 102; Dimofte Tr. 135:4-7).  Accordingly, his

14  survey used realistic screen captures from Lenovo's website that accurately depict the advertising in

15  the context in which it was viewed by actual class members.  Lenovo does not dispute the accuracy

16  of these stimuli.  Instead, Lenovo argues that Dr. Dimofte should have included competitor products

17  and prices, despite such information not being displayed on Lenovo's website and despite evidence

18  from Lenovo's own expert survey showing that the most typical consumers visit only one website or

19  store before making a purchase.[2]  (Expert Report of Dr. Itamar Simonson Rep., Dkt. No. 222-1 at 93.)

20              (2)    *The Consumer Perception Survey is not undercut by focalism bias.*

21         Lenovo claims, without support, that the *Consumer Perception Survey*'s "leading, closed-

22  ended questions" limited its ability to capture how consumers approach purchasing decisions and

23  "steered respondents" toward answers favorable for Plaintiffs.  (Mot. at 14.)  This argument is

24  unfounded.  While Lenovo correctly notes that respondents were "asked about the price, the price

25  reduction applied, the amount of the price reduction, and the price before the reduction was applied"

26  and "[t]hus necessarily focused on the role of a price reduction," Lenovo misapprehends the purpose

27  of the survey.  (*Id.*)  The purpose of the survey was to evaluate how consumers interpret the

28  _____
    [2] The results indicate that 100 out of 315 respondents visited a single website or store.  The next
    largest group consisted of 79 respondents, who indicated they visited two websites or stores.

challenged statements "savings" and "save" as shown in the examples below:

  

(Dimofte Rep., App. G at 75-77.)  After respondents passed the initial screening questions, they were

presented with the following questions:

- Looking at your shopping cart, what is the price you will pay for the laptop, before taxes?

- Was there a price reduction applied to the laptop?

- How large is the price reduction, in dollar terms?

- What was the laptop price before the price reduction was applied?

(*Id.*, App. F at 59-60.)  These questions are neither leading nor closed-ended, nor do they steer

respondents toward Plaintiffs' preferences.  In fact, the questions do not use the statements "save" or

"savings" at all.  Instead, they ask open-ended questions to assess whether respondents perceive a

price reduction and, if so, to determine their perception of the amount of the reduction.

Dr. Dimofte's survey results showed that 91.5% of respondents stated there was a price

reduction, and 87.2% correctly identified the price reduction as the amount of advertised savings.

(Dimofte Rep. ¶¶ 61-62.)  Based on the results, Dr. Dimofte concluded that "reasonable consumers

interpret the advertised savings as price reductions whether the reference price is listed as Web price,

strike-through price, or Est. Value strike-through price."  (*Id.* ¶ 67.)  Contrary to Lenovo's assertion,

there is no analytical gap between the data and the opinions proffered.  (*See* Mot. at 12.)

1    Moreover, even if there were an analytical gap, such a gap would not be "too great" under the

2  Supreme Court's standard in *GE v. Joiner*, on which Lenovo relies. 522 U.S. 136 (1997). In *GE*, the

3  plaintiff's expert testimony was excluded because it relied on studies of infant mice injected with

4  massive doses of PCBs, whereas the plaintiff was exposed to far smaller doses. 522 U.S. at 139–140.

5  Additionally, the cancer types in the plaintiff and the infant mice differed, and no study showed that

6  PCBs caused cancer in adult mice or any other species. *Id.* at 144. Based on these facts, the Supreme

7  Court concluded that the district court did not abuse its discretion in finding "simply too great an

8  analytical gap between the data and the opinion proffered." *Id.* at 146. In contrast, in the present case,

9  there is no significant analytical gap that would warrant excluding Dr. Dimofte's opinions, especially

10  given the limited *Daubert* analysis applicable at class certification. (*See supra* Part III.)

11    For instance, after confirming whether respondents interpreted "save" and "savings" as price

12  reductions, the *Consumer Perceptions Survey* assesses the importance that consumers place on such

13  price reductions—i.e., whether the existence of price reductions will affect their purchase behavior.[3]

14    • How important is a price reduction (i.e., dollars off) in determining your
15      likelihood of purchasing a laptop like the one you just saw?

16  Respondents were given eight possible responses ranging from "Not important at all" to "Extremely

17  important," as well as "Do not know / no opinion." (Dimofte Rep., App. H.) This structure does not

18  constitute a closed-ended, leading question, unlike those in the cases Lenovo cites.

19    (3)    *Lenovo relies on non-binding, inapplicable case law to support its bias*
20           *arguments.*

21    In support of its bias argument, Lenovo relies on several non-binding cases from other Circuits

22  involving surveys fundamentally different from those conducted by Dr. Dimofte. The surveys in those

23  cases were rejected for reasons that have no bearing on Dr. Dimofte's surveys.[4] (*See* Mot. at 13–14,

24  citing cases.) For instance, in *In re KIND LLC "Healthy & All Natural" Litig.*, the expert's survey

25  was flawed because it addressed only one definition of "All Natural" (which was provided by

---

[3] Dr. Dimofte's opinions on the impact of price reductions on consumer purchasing behavior are
26  further supported by the *Equivalent True Discount Survey* he designed and tested, the sources cited in
27  his report, and his expertise in consumer psychology and marketing. (*See infra* Part D.)

[4] The only California Lenovo cites, *In re Autozone, Inc.*, is inapposite. 2016 U.S. Dist. LEXIS 105746
28  (N.D. Cal. Aug. 10, 2016). That case concerned "non-response bias"—i.e., bias that results from a
small sample size. *Id.* at *59-60. But Lenovo does not challenge the sample size Dr. Dimofte uses.

plaintiffs' counsel) and limited participants to finite response.  627 F. Supp. 3d 269, 288 (S.D.N.Y. 2022).  In contrast, the *Consumer Perceptions Survey* did not limit respondents to a finite set of choices, nor were any definitions supplied by Plaintiffs' counsel.  Thus, there is no basis to claim that Dr. Dimofte's survey questions were designed solely to support Plaintiffs' litigation strategy.

In *Scotts Co. v. United Indus. Corp.*, the Fourth Circuit held that the district court erred in crediting survey evidence when granting a preliminary injunction because respondents were not given a "not sure" option, effectively forcing them to provide a specific opinion even if they lacked one.  315 F.3d 264, 280–81 (4th Cir. 2002).  The survey also focused on an isolated part of the packaging rather than the advertisement in context as a whole.  *Id.*  Here, in contrast, respondents were provided with a "not sure" option and were presented with all relevant parts of the advertising in its proper context.

In *Valador v. HTC Corp.*, the district court rejected a survey that improperly suggested a connection between the plaintiff and defendant by asking leading questions such as, "'How likely do you think it is that there will be confusion between [the two products],'"  thereby implying the existence of confusion and asking respondents to assess its severity.  242 F. Supp. 3d 448, 465-66 (E.D. Va. 2017).  In contrast, the *Consumer Perceptions Survey* does not suggest to respondents that "save" or "savings" equate to price reductions, nor does it imply that price reductions should be important.[5]   Indeed, the notion that price reductions are important to consumers is uncontroversial. In fact, Lenovo's own expert survey shows that nearly half of respondents consider "Not overpaying" particularly important in their purchasing decisions. (*See* Simonson Rep., Dkt. No. 222-1, Ex. F at 10.)

In *H&R Block E. Enterprises v. Intuit*, the district court denied the plaintiffs' motion for a preliminary injunction, concluding that "plaintiffs are unable to demonstrate a likelihood of success on their claim that the implied claim that 'H&R Block tax professionals are not experts in tax preparation' is false or misleading under the Lanham Act."  2013 WL 12129646 (W.D. Mo. Mar. 11, 2013). Lenovo, however, omits the court's reasoning, which noted that the plaintiffs' expert relied exclusively on closed-ended questions that portrayed the defendant in a positive light and the plaintiffs in a negative light.  *Id.*  As discussed above, the questions in the *Consumer Percerptions Survey* are neither leading nor closed-ended, nor portray Lenovo in a positive or negative light.

_____

[5] Indeed, 2.3% of respondents responded that price reductions are "not important at all" and 1.3% responded they did not know or had no opinion as to their importance. (Dimofte June 4 Rep., App. H.)

In *Procter & Gamble Pharms. v. Hoffmann-LaRoche*, the court noted that "a survey is not credible if it relies on leading questions which are inherently suggestive and invite guessing by those who did not get any clear message at all."  2006 U.S. Dist. LEXIS 64363, at *86 (S.D.N.Y. Sep. 6, 2006) (internal quotation marks and citation omitted).  The court also emphasized that, given respondents' likely limited knowledge about fracture reduction and clinical testing, the survey should have included all possible response options, such as "neither" or "don't know."  *Id.*  Here, in contrast, respondents to Dr. Dimofte's survey clearly possess knowledge about the importance they personally place on price reductions, and the survey provided options such as "Unsure" and "Do not know / no opinion," ensuring respondents were not forced to guess.  (*See generally* Dimofte Rep., App. F.)

          (4)       *Focalism bias goes to the weight, not the admissibility of Dr. Dimofte's consumer perceptions survey.*

Case law in this district makes clear that objections based on focalism bias address the weight of expert surveys, not their admissibility.  *See, e.g.*, *Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-cv-10053-YGR, 2024 U.S. Dist. LEXIS 198028, at *25 (N.D. Cal. Sep. 20, 2024) ("[D]istrict courts have found that alleged focalism bias goes to the weight of the expert's opinion, not its admissibility.") (citing *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372 (N.D. Cal. 2018) (collecting cases).  As discussed in Part IV.C.1-2 above, Lenovo's claim that Dr. Dimofte's survey is inherently biased is unfounded.  However, even if Lenovo's bias concerns had merit, such concerns would pertain to the weight of the evidence and not to the admissibility of Dr. Dimofte's surveys.

      **D.**     **The *Equivalent True Discount Survey* is methodologically sound and reliable.**

Lenovo presents two arguments for excluding the *Equivalent True Discount Survey*. First, Lenovo claims that Dr. Dimofte's attempt to establish a "true discount" based on the survey's findings lacks empirical support.  (Mot. at 15-16).  Next, Lenovo argues the survey is "flawed by design." (Mot. at 16-17).  Lenovo's first argument fails because it misunderstands what the survey actually measures. The remaining arguments challenge the survey's methodology, which pertains to the weight of the evidence rather than its admissibility.

          (1)       *Dr. Dimofte's contingent valuation methodology is widely accepted as a reliable measurement of price premia in false advertising cases.*

1    Lenovo first argues that the *Equivalent True Discount* "employs a novel methodology that

2    deviates significantly from established economic principles and research standards, aiming to evaluate

3    the effects of Lenovo's pricing representations." (Mot. at 6.) This claim is incorrect. The survey

4    employs a well-established methodology for calculating price premia in false advertising cases, known

5    as "contingent valuation." *See, e.g.*, *Miller v. Fuhu,* No. 2:14-cv-06119, 2015 U.S. Dist. LEXIS

6    162564, at *62 (C.D. Cal. Dec. 1, 2015) ("Numerous courts, including this one, have accepted both

7    [Choice-Based Conjoint Analysis] and [Contingent Valuation Method] as reliable methodologies for

8    calculating price premiums on a classwide basis in consumer class actions."); *In re Toyota Motor*

9    *Corp. Hybrid Brake Mktg.*, No. 8:10-mdl-2172, 2012 U.S. Dist. LEXIS 151559, at *18 (C.D. Cal. Sep.

10   20, 2012) (finding the contingent valuation generally accepted and part of peer-reviewed studies).

11   As Dr. Dimofte explains in his report, the purpose of the *Equivalent True Discount* survey is

12   "to compare the purchase probability that the [product] enjoyed as a result of Lenovo's use of the

13   alleged false reference price in a sale versus the purchase probability that it would have enjoyed had

14   Lenovo used the true reference price in a sale." (Dimofte Rep. ¶ 77.) This methodology aligns with

15   the approach used by the plaintiffs' expert in *Hilsley v. Ocean Spray Cranberries*, No. 3:17-cv-2335,

16   2018 U.S. Dist. LEXIS 202679 (S.D. Cal. Nov. 29, 2018). In that case, the plaintiffs' expert found

17   "higher levels of purchase likelihood for Ocean Spray Cranberry juice products that use the claim of

18   no artificial flavors on the label versus those products that include a disclosure of artificial flavors on

19   the package label." *Id.* at *38. Using consumer survey data, the expert then calculated a price

20   premium attributable to the "no artificial flavors" claim. *Id.* In rejecting defendants' challenge to the

21   methodology, the court noted that "contingent valuation analysis is a reliable survey based

22   methodology to determine price premium damages." *Id.* at *40 (collecting cases).

23   Similarly, in *Vizcarra v. Unilever United States Inc.*, the defendants argued—much like

24   Lenovo does here—that the proposed contingent valuation method was "'a new type of damages

25   analysis that references no standard or conventional methodology'" and was "'not capable of isolating

26   and measuring any price premium that consumers might pay for the [challenged statements]." No.

27   4:20-cv-2777-YGR, 2023 U.S. Dist. LEXIS 38208, at *46 (N.D. Cal. Feb. 24, 2023). This Court

28   rejected those arguments, affirming that "contingent valuation is an acceptable methodology for

PLAINTIFFS' OPPOSITION TO LENOVO'S MOTION TO EXCLUDE DIMOFTE OPINIONS

1    calculating class-wide damages in false advertising or mislabeling cases." *Id.* at *51.

2        Here, Dr. Dimofte has gone further than the plaintiff's expert in *Vizcarra*, where this Court

3    accepted a proposed damages model based on contingent valuation.  Dr. Dimofte has fully designed

4    and illustrated the *Equivalent True Discount* survey, demonstrating that his methodological approach

5    "is capable of measuring and quantifying damages which can be used in a damages model that can be

6    further calibrated after class certification."  (Dimofte Rep. ¶ 95.)  Thus, just as this Court rejected the

7    defendants' arguments in *Vizcarra*, Lenovo's similar arguments should also be rejected.[6]

8            (2)    *Lenovo's remaining criticisms go to the weight, not the admissibility of Dr.*

9                   *Dimofte's conclusions.*

10       Lenovo remaining objections to the *Equivalent True Discount* survey target the survey's

11   methodology and thus go to its weight, not its admissibility.  "The Ninth Circuit has long abided by

12   the general rule that 'challenges to survey methodology go to the weight given the survey, not its

13   admissibility.'" *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS

14   34597, at *9 (N.D. Cal. Jan. 25, 2022) (quoting *Wendt v. Host Int'l*, 125 F.3d 806, 814 (9th Cir. 1997)).

15       Moreover, Lenovo's criticisms lack merit.  Lenovo contends that the survey "ignores the

16   complex interplay of factors that influence consumer behavior," and "fails to consider the

17   comprehensive context in which consumers evaluate and make purchasing decisions, thereby inflating

18   the significance of the discount in isolation." (Mot. at 15-16.)  This argument essentially asserts that

19   Lenovo's false reference prices are not material to all consumers—a contention that is properly a

20   merits issue related to materiality, not a basis for excluding the survey.  For example, in *Testone v.

21   Barlean's Organic Oils, LLC*, the court described defendant's expert's survey, as "effectively

22   amount[ing] to an argument that consumers purchase Defendant's Products for a variety of reasons."

23   No. 3:19-cv-169, 2021 U.S. Dist. LEXIS 185896, *12 (S.D. Cal. Sep. 28, 2021).  The court stated that

24   that argument was "'a merits dispute as to materiality, and is therefore a dispute that can be resolved

25   classwide.'" *Id.* at *12-13 (quoting *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1117 (N.D.

26   Cal. 2018).

27

28   ───────────────────────
[6] Lenovo does not provide any case law or legal authority on which this Court should reach a different conclusion.  (*See* Mot. at 15-17.)

Lenovo also contends that the *Equivalent True Discount* survey does not demonstrate how actual consumer behavior is affected by the reference prices in real-world shopping environments and artificially constrains the possible outcomes.  (Mot. at 16.)  These criticisms mirror Lenovo's argument that the *Consumer Perceptions Survey* is unreliable because it fails to replicate behavior in the real world.  (*See supra* Part IV.C.1.)  Both arguments fail for similar reasons.

Lenovo's criticism that the survey relies on self-reported behavior in hypothetical situations is undermined by the general acceptance of scenario-based, marketing research, as evidenced by the same type of survey performed by Lenovo's expert.  (*See* Simonson Rep., Dkt. No. 222-1 at ¶¶ 17, 39-42.)  As discussed above, courts consistently reject challenges to surveys based on their failure to replicate real-world conditions.  (*See supra* Part IV.C.1, discussing cases.)

Lastly, Lenovo's claims that the *Equivalent True Discount* survey is arbitrary, overestimates the impact of discounts on product appeal, and does not isolate the effect of reference prices are without merit.  (Mot. at 15-16.)  The survey's methodology, which tests single attributes to isolate the price premium paid by consumers due to false advertising, is well-established and has been upheld by courts.  *See*, *Vizcarra*, 2023 U.S. Dist. LEXIS 38208, at *50-51 (rejecting challenge to survey that tested only one attribute of the product because proposed model would minimize risk of bias).

(3)    *Lenovo's concerns about Plaintiffs' class-wide damages methodology are not appropriate for a Daubert motion.*

Lenovo advances several arguments that are, in essence, predominance arguments under Rule 23 and *Comcast*, thinly veiled as a *Daubert* challenge.  For instance, Lenovo claims the survey is unreliable because it: (1) would require separate and independent surveys; (2) does not accurately reflect consumer behavior; (3) provides no evidence of how individual behavior may vary; (4) restricts respondents to considering a single product, price, and discount; (5) prevents assessment of how purchase likelihood may vary across pricing scenarios; and (6) fails to capture the complexity of consumer decision-making and individual responses to diverse pricing strategies.  (Mot. at 15-16.)

Courts decline to address *Daubert* motions when a party uses such a motion to argue that a damages methodology does not satisfy *Comcast*.  As the court explained in *Hilsley*, "what matters is not whether a methodology is admissible under *Daubert* but whether it is sufficiently linked to the

1  theory of damages and is capable of identifying damages on a class-wide basis."  2018 U.S. Dist.

2  LEXIS 202679, at *40-41; *see also Hadley*, 324 F. Supp. 3d at 1106 ("[W]hether [the] proposed

3  conjoint analysis is sufficiently reliable from a methodological standpoint—and therefore admissible

4  under *Daubert*—is a different issue from whether the conjoint analysis satisfies *Comcast*."); *In re 5-*

5  *Hour Energy Mktg. & Sales Practices Litig.*, 2017 U.S. Dist. LEXIS 220969, at *11 (C.D. Cal. June 7,

6  2017) (declining to address the reliability of expert's damages methodologies in a *Daubert* motion,

7  and instead accepting the expert's report and testimony for the limited purpose of deciding the

8  predominance); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015) ("[C]riticism

9  that the methodology does not satisfy the requirement articulated in [*Comcast*]— i.e., that damages be

10  capable of measurement on a classwide basis—does not affect the *admissibility*.")

11  Here, Lenovo's objections that Dr. Dimofte's proposed damages methodologies raise

12  individual issues which pertain to predominance under Rule 23, and are not relevant to whether the

13  proposed methodologies are admissible under *Daubert*.

14                    (4)    *Lenovo's criticisms' of the survey's illustrative results are misplaced.*

15  Lenovo's criticisms of the survey's implementation and results, such Dr. Dimofte's selection

16  of discount values and his calculation of the true discount, are misplaced.  (Mot. at 15-17.)  At class

17  certification, "it is not required that a plaintiff's expert must execute their damages model prior to class

18  certification provided it is shown that the model provides a reliable and adequate method for

19  calculating damages."  *Lytle*, 114 F.4th at 1034.  The *Equivalent True Discount* survey designed by

20  Dr. Dimofte does exactly that.  (Dimofte Rep. ¶ 69 ("[T]hese studies are intended to show that

21  economic damages can be reliably measured and quantified.").)  Thus, the "attendant possibility of

22  errors" and "speculative possibility that [Dr. Dimofte] might slip up in executing his [survey], standing

23  alone, is insufficient to defeat class certification."  *See Lytle*, 114 F.4th at 1033.

24      E.    **Dr. Dimofte's proposed conjoint analysis is reliable and will be further developed**
25            **before being used to calculate price premiums**

26            (1)    *The fact that the conjoint analysis does not isolate reference price does not*
                     *render Professor Dimofte's methodology unreliable*
27

28  Lenovo contends that Dr. Dimofte's proposed conjoint analysis is unreliable because it

allegedly fails to isolate critical product attributes, such as the reference price and the offer price (Mot. at 17-18.)  However, courts in the Ninth Circuit have held that the failure of a conjoint analysis to isolate an exact attribute does not inherently render the methodology or conclusions unreliable.  For example, in *ConAgra Foods*, the court explained that "the fact that conjoint analysis has not been used to isolate the exact attribute for which Howlett uses it here does not automatically render her methodology and conclusions unreliable."  90 F. Supp. 3d at 954. The court emphasized that reliability depends on the expert's experience with conjoint analysis and the details of her proposed methodology, concluding that the expert's explanation of her methodology and her experience were sufficient to satisfy *Daubert* and Rule 702.  *Id.*  Here, Dr. Dimofte has more than two decades of academic and consulting research and has been involved in hundreds of research projects, including performing and supervising hundreds of surveys at all stages.  (Dimofte Rep. ¶¶ 8-9.)  He has performed several conjoint analyses, teaches conjoint analysis in his graduate marketing classes, and has contributed to conjoint analysis in peer-reviewed articles.  (Dimofte Tr. at 87:3-18.)  As such, Dr. Dimofte has more than sufficient experience to design and conduct the proposed conjoint analysis.

> (2)  *Dr. Dimofte's proposed conjoint analysis will be further developed and satisfies the threshold for admissibility*

Class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof."  *Lytle*, 114 F.4th at 1024.  Here, Dr. Dimofte designed a conjoint analysis that calculates the price premium and the effect on consumers' willingness-to-pay associated with the alleged false price reductions, which can be incorporated into a damages model to calculate damages on a class-wide basis.  (Dimofte Rep. ¶¶ 28-29; *see also id.* ¶¶ 114-134.)  This is sufficient to satisfy the standard under *Lytle*.  While "[t]he fact that a model is underdeveloped *may* weigh against a finding that it will provide a reliable form of proof," *Lytle*, 114 F.4th at 1032 (emphasis added), that is not a valid basis for exclusion under *Daubert*.  The conjoint analysis Dr. Dimofte designed and proposes to use is "widely-accepted as a reliable economic tool for isolating price premia." *Hadley*, 324 F. Supp. 3d at 1110.

## V.     CONCLUSION

Plaintiffs respectfully request the Court deny the motion to exclude Dr. Dimofte in its entirety.

1    Dated:  November 25, 2024

2

EDGE, A PROFESSIONAL LAW
CORPORATION

3                                    By:    /s/ Daniel A. Rozenblatt
                                           Daniel A. Rozenblatt
4                                          Natasha Dandavati

5                                          CAPSTONE LAW APC
                                           Tarek H. Zohdy
6                                          Cody R. Padgett
                                           Laura E. Goolsby
7

8                                          *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28