**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
Natasha Dandavati (SBN 285276)
natasha.dandavati@edge.law
981 Mission Street 20
San Francisco, CA 94103
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
laura.goolsby@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
nate.kiyam@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br>*Assigned to the Hon. Jeffrey S. White*<br><br>**PLAINTIFFS' OPPOSITION TO LENOVO'S MOTION TO EXCLUDE CHRISTIAN TREGILLIS'S OPINIONS (DKT. 225)**<br><br>Date:         February 7, 2025<br>Time:         9:00 a.m.<br>Crtrm:        5<br><br>Action Filed:  August 31, 2021<br>Trial Date:    None Set |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL SUMMARY .................................................................................................. 1

    A. Plaintiffs' theory of liability and proposed damages class....................................... 1

    B. Tregillis's methodology for calculating damages on a classwide basis. ................. 2

    C. Tregillis's exemplar analysis is preliminary and relies on the exemplar results from Dr. Dimofte's illustrative surveys and imperfect data produced by Lenovo. ............................................................................................. 3

III. ARGUMENT ................................................................................................................... 3

    A. A limited *Daubert* analysis is the correct legal standard to apply at class certification. ............................................................................................................. 3

    B. Tregillis's damages calculations are closely tethered to Plaintiffs' theory of liability. .................................................................................................................... 4

        *(1) Measuring damages using the "but for" price aligns with Plaintiffs' theory of liability and is supported by case law.* ......................... 5

        *(2) Using the 90-day mode to calculate the true regular prices of the Class Products aligns with Plaintiffs' theory of liability.* ............................ 6

        *(3) Lenovo misconstrues Tregillis's use of the 90-day mode.* ........................... 6

        *(4) Tregillis's use of the 90-day mode price is not a legal conclusion.* ............ 7

    C. Tregillis's damages calculations are reliable and satisfy Rule 702. ........................ 9

        *(1) Tregillis is exceptionally qualified and has successfully performed similar damages calculations in other cases.* ........................... 9

        *(2) Tregillis damages calculations are reliable and consistent with Plaintiffs' theory of liability.* ..................................................................... 11

    D. Lenovo's objections to the reliability of Tregillis's calculations are meritless. ............................................................................................................... 11

IV. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

CASES

*Advanced Thermal Scis. v. Applied Materials*, No. 07-cv-01384, 2009 U.S. Dist. LEXIS
  140818 (C.D. Cal. Oct. 28, 2009) ................................................................................................11

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021) .......................................................11

*Beatbox Music Pty v. Labrador Entm't*, No. CV 17-6108, 2023 U.S. Dist. LEXIS 97659
  (C.D. Cal. Apr. 13, 2023) ...........................................................................................................13

*Chowning v. Kohl's Dep't Stores*, 2016 WL 1072129, 2016 U.S. Dist. LEXIS 37261
  (C.D. Cal. Mar. 15, 2016) XX ......................................................................................................7

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................... 5, 11, 12

*Crystal Springs Upland Sch. v. Fieldturf USA*, 219 F. Supp. 3d 962 (N.D. Cal. 2016) .............5

*Dahlin v. Under Armour, Inc.*, No. CV 20-3706, 2020 U.S. Dist. LEXIS 216487 (C.D.
  Cal. July 31, 2020) ........................................................................................................................6

*Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) ............................................. 1, 4, 7, 10, 13

*Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056, 2017 U.S. Dist. LEXIS 140156 (S.D.
  Cal. Aug. 29, 2017) .......................................................................................................................5

*Eberle v. City of Anaheim*, 901 F.2d 814 (9th Cir. 1995) ............................................................6

*Fisher v. Eddie Bauer LLC*, No. 19-cv-857, 2019 U.S. Dist. LEXIS 232488 (S.D. Cal.
  Oct. 18, 2019) ..............................................................................................................................10

*Grupo Televisa v. Telemundo Commc'ns Grp.*, 2005 WL 5955701 (S.D. Fla. Aug. 17,
  2005) ............................................................................................................................................10

*Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998 (9th Cir. 2004)XX ...............7

*Hansen v. Newegg.com Ams., Inc.*, 25 Cal. App. 5th 714 (2018). ..............................................5

*Hellman v. Polaris Indus., Inc.*, No. 2:23-cv-07187-FLA (KESx), 2024 U.S. Dist.
  LEXIS 158697 (C.D. Cal. July 16, 2024) X ...............................................................................15

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ......................................................... 5, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015) ..................5

*In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280 (N.D. Cal. 2018) ........................................13

*John v. AM Retail Grp., Inc.*, No. 17-cv-727, 2018 U.S. Dist. LEXIS 45820 (S.D. Cal. Mar. 19, 2018)...................................................................................................................6

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ............................................................4

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 U.S. Dist. LEXIS 186249, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ................................................................................12

*Knapp v. Art.com*, No. 16-cv-00768-WHO, 2016 U.S. Dist. LEXIS 78128 (N.D. Cal. June 15, 2016) ........................................................................................................... 8, 9

*Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020) .......................................8

*Lytle v. Nutramax Labs.*, 114 F.4th 1011 (9th Cir. 2024); ............................................... *passim*

*Monster Energy Co. v. Vital Pharms.*, No. 18-cv-1882, 2022 U.S. Dist. LEXIS 214145 (C.D. Cal. Aug. 2, 2022) ........................................................................................ 11, 14

*Moore v. GlaxoSmithKline*, 713 F. Supp. 3d 660 (N.D. Cal. 2024) ................................. 5, 6, 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ...............................................................................................................................15

*Omega Patents v. CalAmp Corp.*, 13 F.4th 1379 (Fed. Cir. 2021) ...........................................10

*Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2024 U.S. Dist. LEXIS 177689 (N.D. Cal. Sep. 30, 2024) .......................................................................................................15

*People v. Superior Court (J.C. Penney Corp., Inc.)*, 34 Cal. App. 5th 376, 415 n.24 (2019) ..............................................................................................................................8

*Pulaski & Middleman v. Google*, 802 F.3d 979 (9th Cir. 2015) ........................................ 5, 15

*Rael v. N.Y. & Co.*, No. 16-cv-369, 2017 U.S. Dist. LEXIS 110774 (S.D. Cal. July 17, 2017).................................................................................................................................6

*Rearden LLC v. Walt Disney Co.*, No. 17-cv-4006-JST, 2023 U.S. Dist. LEXIS 184643 (N.D. Cal. Oct. 13, 2023).................................................................................10

*S.M. v. J.K.*, 262 F.3d 914 (9th Cir. 2001)................................................................................13

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) .................................................3

*Sharpe v. Puritan's Pride*, 466 F. Supp. 3d 1066 (N.D. Cal. 2020) .........................................7

*Sinatro v. Barilla Am.*, No. 22-cv-03460-DMR, 2024 U.S. Dist. LEXIS 94628 (N.D.

Cal. May 28, 2024) ................................................................................................................4

*Sloan v. Gen. Motors LLC*, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ...........................................13

*Sugar Ass'n v. McNeil-PPC*, 2007 WL 5674021 (C.D. Cal. Dec. 10, 2007) .........................................10

*Youngsuk Kim v. Benihana, Inc*., No. 22-55529, 2023 U.S. App. LEXIS 13085 (9th Cir.

May 26, 2023) ....................................................................................................................14

*Zakaria v. Gerber Prods. Co*., 755 F. App'x 623 (9th Cir. 2018) .........................................................14

**STATUTES**

Bus. & Prof. Code § 17500 ...................................................................................................................9

Bus. & Prof. Code § 17501 ............................................................................................................. 8, 9

Civ.  Code § 1770 ........................................................................................................................ 1, 8, 9

Fed. R. Evid. 702 ................................................................................................................. 1, 7, 9, 10

## I.     INTRODUCTION

Before the Court is the Motion to Exclude Christian Tregillis's ("Tregillis") Opinions ("Motion") filed by Defendant Lenovo (United States) Inc. ("Lenovo") in this matter. The Motion should be denied for the following reasons. First, Lenovo applies the wrong legal standard for evaluating a motion to strike expert testimony on damages at the class certification stage. Where a damages model has not been fully executed, as here, the Court need not conduct a full *Daubert* analysis. Second, Lenovo's arguments misconstrue Tregillis's analysis, erroneously asserting that he uses the 90-day mode price to calculate prevailing market price. In fact, Tregillis's uses the 90-day mode price to adhere to Plaintiffs' theory of liability under California's Consumer Legal Remedies Act (CLRA) and their proposed damages class definition. Third, Lenovo raises a laundry list of objections to Tregillis's calculations in summary fashion, all of which lack merit. As detailed below, Tregillis is highly qualified to opine on methodologies for calculating classwide damages. His qualifications meet the standards of Rule 702 and *Daubert*, and his opinions are both relevant and reliable. Lenovo's motion to exclude Tregillis's opinions should be denied in its entirety.

## II.     FACTUAL SUMMARY

### A.     Plaintiffs' theory of liability and proposed damages class.

Plaintiffs' theory of liability for claiming damages under the CLRA is that Lenovo advertised false and misleading price reductions on its website. *See* Civ. Code § 1770(a)(13) (prohibiting the advertisement of false and misleading price reductions). Plaintiffs allege Lenovo's price reductions are false and misleading because they are based on false regular prices. (*See e.g.*, First Amended Class Action Complaint ("FAC"), Dkt. No. 19 ¶¶ 1, 11, 23.) The regular prices are false because they do not represent the prices at which Lenovo regularly sold its products for a reasonably substantial period of time. (FAC ¶¶ 34, 85, 98.)

Under Plaintiffs' theory of liability, Lenovo's false regular prices and the false discounts based on those prices "artificially increase[] demand for Lenovo's products and induce[] customers to pay more for Lenovo-branded products based on a false impression of their value." (*Id.* ¶ 1.) Plaintiffs thus allege they would not have purchased their Lenovo laptops or would have paid less for them had they known that the true regular price of their laptops was substantially less than the advertised regular

price. (FAC ¶¶ 86, 99.)

Plaintiffs seek to certify a damages class that is consistent with their theory of liability and defined as:[1]

> All individuals who purchased two or fewer Class Products in a single transaction from Lenovo through the website lenovo.com/us/en primarily for personal or family purposes while in the State of California on any Class Day between June 2, 2018 and April 12, 2022 (inclusive).

(*See* Pls.' Mot. for Class Cert., Dkt. No. 200 at 1-3.) Under Plaintiffs' theory of liability, Lenovo's regular prices were false and misleading when Lenovo offered a product for less than the regular price for the majority of the days during the preceding 90 days. (*See id.* at 5 n.10, defining "Class Day".)

### B. Tregillis's methodology for calculating damages on a classwide basis.

Plaintiffs propose a damages model based on the "the excess the plaintiff paid to Lenovo over the amount the plaintiff would have chosen to pay but for the misrepresentation about the savings the plaintiff was purportedly receiving." (Decl. of Christian Tregillis in Support of Pls.' Mot. for Class Cert. ("Tregillis Decl."), Dkt. 200-5 ¶ 24.) Plaintiffs' damages model broadly consists of two steps. In the first step, Plaintiffs' consumer behavior and survey expert, Dr. Dimofte, calculates the price premium using either a contingent valuation approach or a conjoint analysis. (*See* Expert Report of Claudiu V. Dimofte, Ph.D. ("Dimofte Rep."), Dkt. No. 200-6 ¶¶ 69-113 (contingent valuation approach) and ¶¶ 114-34 (conjoint analysis)). Dr. Dimofte compares the purchase probability that a product "enjoyed as a result of Lenovo's use of the alleged false reference price in a sale versus the purchase probability that it would have enjoyed had Lenovo used the true reference price in a sale." (Dimofte Rep. ¶ 77.)

In the second step, Tregillis uses the price premium calculated by Dr. Dimofte to calculate the portion of the price paid attributable to the false reference price and false discount—the "Damages Factor." (Tregillis Decl. ¶¶ 35-37.) The Damages Factor consists of a schedule that can be applied to calculate the portion of the price paid in excess of what the consumer would otherwise have been

---

[1] Plaintiffs also seek to certify a Web Price Damages Subclass defined as: All members of the Damages Class who made their purchase between June 2, 2018 and August 24, 2021 (inclusive). (Mot. for Class Cert. at 2.)

willing to pay but for the use of a false advertised reference price and price reduction. (*Id.* ¶ 48.) Tregillis applies the Damages Factor to purchases made on "Class Days." (*Id.* ¶ 37.) Consistent with Plaintiffs' theory of liability, Tregillis identifies Class Days as days where a product was offered at a discount from the reference price on the majority of the preceding 90 days it was available for sale. (*Id.* ¶ 37.) If a day is determined to not be a Class Day (i.e., the product has been sold at the reference price for half or more of the days on which it was sold in the previous 90 days), then Tregillis does not apply a damages factor. (*Id.* ¶ 38.) To determine the true reference price under Plaintiffs' theory of liability, Tregillis identifies the most common price during the preceding ninety days (i.e., the "90-day mode price"). (*Id.* ¶ 39.)

### C. Tregillis's exemplar analysis is preliminary and relies on the exemplar results from Dr. Dimofte's illustrative surveys and imperfect data produced by Lenovo.

Tregillis's declaration describes a methodology that can be used to calculate damages across a range of class products and class members after class certification. (*Id*. ¶ 25.) Based on the exemplar data and results in Dr. Dimofte's report, Tregillis performed two exemplar analyses to demonstrate the second step of Plaintiffs' damages methodology. (Tregillis Decl. ¶¶ 19-21, 32, 35.) Due to ambiguities and imperfections in the data Lenovo provided, and the preliminary nature of Dr. Dimofte's survey results, Tregillis plans to update his calculations upon receipt of better data. (*Id.* ¶ 34.)

## III. ARGUMENT

### A. A limited *Daubert* analysis is the correct legal standard to apply at class certification.

Lenovo premises its arguments on the wrong legal standard: inadmissibility. As the Ninth Circuit recently explained, "there is no requirement that the evidence relied upon by Plaintiffs to support class certification be presented in an admissible form at the class certification stage." *Lytle v. Nutramax Labs.*, 114 F.4th 1011, 1024-25 (9th Cir. 2024); *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 n.2 (9th Cir. 2018) ("Numerous district courts in this Circuit have long concluded that it is appropriate to consider evidence at the class certification stage that may ultimately be inadmissible."). Instead, "'an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage.'" *Lytle*, 114 F.4th at 1025 (quoting *Sali*, 909 F.3d at 1006). "[T]he rejection of expert testimony is the exception rather than the rule." *Sinatro*

*v. Barilla Am.*, No. 22-cv-3460-DMR, 2024 U.S. Dist. LEXIS 94628, at *7-8 (N.D. Cal. May 28, 2024) (citing FRE 702, Advisory Committee Notes, 2000 Amendments).

With respect to damages specifically, "[w]here an expert offers opinions to show that damages can be measured on a classwide basis but 'has not yet collected all of the necessary data to perform his calculations,' courts perform only a limited *Daubert* analysis focused on the expert's methodology, leaving a 'full-blown *Daubert* assessment' of the expert's results for a later time. *Id.* (quoting *Lytle*, 114 F.4th at 1031); *see also Lytle*, 114 F.4th at 1031 ("[W]here an expert's model has yet to be fully developed, a district court is limited at class certification to making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit."); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121 (9th Cir. 2017) ("At [the class certification] stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability, and have proposed as much here.").

Here, a limited *Daubert* analysis is applicable because Plaintiffs' experts have not fully executed their surveys and damages methodologies and discovery is ongoing.[2] *Lytle*, 114 F.4th at 1031. Thus, the question before the Court is whether there is a likelihood that Tregillis's damages calculations will eventually bear fruit—i.e., whether Plaintiffs' damages model and Tregillis's damages calculations are tethered to Plaintiffs' theory of liability and can be performed without excessive difficulty. *See Lytle*, 114 F.4th at 1031 (holding "the district court's limited Daubert analysis was sufficient for the immediate purposes" of "making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit"); *Just Film*, 847 F.3d at 1121.

**B.      Tregillis's damages calculations are closely tethered to Plaintiffs' theory of liability.**

The first step in assessing whether to exclude Tregillis's damages calculations is determining

---

[2] Plaintiffs have encountered numerous delays in attempting to obtain class discovery. Indeed, only in November 2024 (five months after Plaintiffs moved for class certification) did Lenovo make its first significant production of class-related documents, comprised of more than 300,000 documents. Prior to November 2024, Lenovo had only produced 39 documents absent a court order. (*See* Decl. of Natasha Dandavati in Support of Opp. to Mot. to Exclude Dimofte Opinions, Dkt. No. 233-1 ¶ 3; s*ee also* Dkt. No. 75 (finding that Lenovo was partly at fault for delays in discovery).) Accordingly, Tregillis plans to update his calculations on the receipt of better data "[g]iven the ambiguities and imperfections in the Lenovo data." (Tregillis Rep. ¶ 34.)

whether Plaintiffs' damages model is tethered to their theory of liability. "[W]here an expert's damages model is untethered from plaintiff's theory of liability such that it has no possibility of demonstrating the amount of damages in a particular case, *Comcast* holds that a plaintiff may not rely upon it to show that damages are 'capable of measurement on a classwide basis.'" *Lytle*, 114 F.4th at 1027 (9th Cir. 2024) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). Here, Plaintiffs' damages model and Tregillis's damages calculations are closely tethered to Plaintiffs' theory of liability, and thus comply with *Comcast* and *Lytle*.[3]

> (1) <u>Measuring damages using the "but for" price aligns with Plaintiffs' theory of liability and is supported by case law.</u>

As discussed in Part II.A above, Plaintiffs' theory of liability for their damages claim under the CLRA is that Lenovo advertises false and misleading price reductions based on false regular prices, and that induces consumers to pay more for Lenovo's products based on a false impression of their value. This theory of liability is expressly recognized in the Ninth Circuit:

> [A] product's "regular" or "original" price matters [to some consumers]; it provides important information about the product's worth and the prestige that ownership of that product conveys. Misinformation about a product's "normal" price is, therefore, significant to many consumers in the same way as a false product label would be.

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013) (internal citations omitted); *accord Hansen v. Newegg.com Ams., Inc.*, 25 Cal. App. 5th 714, 729 (2018).

In calculating damages under the CLRA, a widely accepted measurement is "based on the difference between the price the consumer paid and the price a consumer would have been willing to pay for the product had it been labeled accurately." *Moore v. GlaxoSmithKline*, 713 F. Supp. 3d 660, 678 (N.D. Cal. 2024) (White, J.) (citing *Pulaski & Middleman v. Google*, 802 F.3d 979, 988-89 (9th Cir. 2015)). The difference between the price a consumer actually paid and the price they would have paid in a "'but for' world" is a "common damages calculation method." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 624 n.33 (N.D. Cal. 2015). For example, in *Lytle*, the Ninth

---

[3] Lenovo has waived the argument that Plaintiffs' damages model is untethered to Plaintiffs' theory of liability, having failed to make the argument in its opening brief. *See Crystal Springs Upland Sch. v. Fieldturf USA*, 219 F. Supp. 3d 962, 967 n.2 (N.D. Cal. 2016) (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1995) ("New arguments are not permitted in reply.").

Circuit accepted the plaintiffs' theory of liability that "they paid more than they otherwise would have as a result of the misleading statements." *Lytle*, 114 F.4th at 1036-37 (quoting *Hinojos*, 718 F.3d at 1108). This is precisely the same damages measurement used by Tregillis—namely, "the excess the plaintiff paid to Lenovo over the amount the plaintiff would have chosen to pay but for the misrepresentation about the savings the plaintiff was purportedly receiving." (Tregillis Decl. ¶ 24.)

(2) <u>Using the 90-day mode to calculate the true regular prices of the Class Products aligns with Plaintiffs' theory of liability.</u>

Plaintiffs' theory of liability is that Lenovo's advertised regular prices were false and misleading because the same products were offered at lower prices for the majority of the preceding 90 days.[4] (*See supra* Part II(A).) Simply put, unless the advertised regular prices reflected the actual price at which Lenovo regularly sold its products, they were not the "regular" prices. Here, because CRLA damages are "based on the difference between the price the consumer paid and the price a consumer would have been willing to pay for the product had it been labeled accurately," *Moore*, 713 F. Supp. at 678, the first step in measuring damages is to determine what an accurate label would have been—i.e., what the true regular price of the product was on the date that it was purchased. Thus, the first step of Tregillis's damages calculations aligns perfectly with Plaintiffs' theory of liability because it uses the most common price on Lenovo's website during the preceding ninety days (i.e., the "90-day mode price") to determine the true regular prices of the Class Products.[5] (Tregillis Decl. ¶ 39.)

(3) <u>Lenovo misconstrues Tregillis's use of the 90-day mode.</u>

In claiming that Tregillis's use of a 90-day mode price is "legally irrelevant," Lenovo misconstrues Tregillis's analysis. (*See* Mot. at 8-10.) Lenovo erroneously claims Tregillis's "use of

---

[4] Although Lenovo may argue that Plaintiffs' theory of liability is unfounded, numerous courts have found that plaintiffs adequately allege violation of the CLRA based on pricing over a 90-day period. *See Rael v. N.Y. & Co.*, No. 16-cv-369, 2017 U.S. Dist. LEXIS 110774, at *5-10 (S.D. Cal. July 17, 2017); *Fisher v. Eddie Bauer LLC*, No. 19-cv-857, 2019 U.S. Dist. LEXIS 232488, at *18 (S.D. Cal. Oct. 18, 2019); *Dahlin v. Under Armour, Inc.*, No. CV 20-3706, 2020 U.S. Dist. LEXIS 216487, at *11 (C.D. Cal. July 31, 2020); *John v. AM Retail Grp., Inc.*, No. 17-cv-727, 2018 U.S. Dist. LEXIS 45820, at *2, 14 (S.D. Cal. Mar. 19, 2018); *Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056, 2017 U.S. Dist. LEXIS 140156, at *22 (S.D. Cal. Aug. 29, 2017).

[5] Tregillis refers to the true regular price as the "true reference price."

1  mode price as a means to calculate *prevailing market price* under California's false advertising laws
2  has been unequivocally rejected." (*Id.* at 9.) But Tregillis does not use the mode price to calculate the
3  prevailing *market price*. Rather, Tregillis uses the mode price to calculate the prevailing *price on*
4  *Lenovo's website*—i.e., the true regular price. (*See* Dkt. No. 222-12 at 10, "Q. ...So when you say 'the
5  prevailing price' you mean the prevailing price on Lenovo.com. Is that correct? A. Yes."; *see also*
6  Tregillis Decl. ¶¶ 43-44 (using prevailing price *on Lenovo's website* as proxy for the regular price).)

7  Because Lenovo misapprehends Tregillis's use of the 90-day mode price, Lenovo's attempt to
8  analogize the court's findings in *Chowning v. Kohl's Dep't Stores*, 2016 WL 1072129, 2016 U.S. Dist.
9  LEXIS 37261 (C.D. Cal. Mar. 15, 2016) is misplaced. (*See* Mot. at 9 (contending "Tregillis assumes
10 precisely the same thing [as the expert in *Chowning*]").) In *Chowning*, the plaintiff's expert
11 "calculated four potential measures of *retail value*." *Chowning*, 2016 U.S. Dist. LEXIS 37261, at *32
12 (emphasis added). In rejecting the fourth proposed model, the court found that plaintiff's expert did
13 "not provide any reliable basis for concluding that the mode price, as opposed to the average price, is
14 an accurate measure of *retail value*." *Id.* at *34-35 (emphasis added). But Tregillis does not give any
15 opinions regarding the retail value of the Class Products. Rather, Tregillis uses the 90-day mode price
16 to determine the prevailing price (i.e., the regular price) on Lenovo's website.[6]

17                (4)    <u>Tregillis's use of the 90-day mode price is not a legal conclusion.</u>
18 In arguing that Tregillis's use of the 90-day mode price constitutes an improper legal
19 conclusion, Lenovo again misconstrues Tregillis's analysis. As a preliminary matter, Tregillis does
20 not make any legal conclusions or give any opinions on an ultimate issue of law. *See Hangarter v.*
21 *Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot
22 give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."). The only

---

[6] *Chowning* is further inapposite because it addressed four proposed *restitution models* on a motion for summary judgment. 2016 U.S. Dist. LEXIS 37261, at *19-38. Here, Tregillis provides a *damages* model, which is "subject to entirely different standards." *Sharpe v. Puritan's Pride*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020). Unlike restitution, "[n]o specific damages measure is prescribed in the CLRA, and the door is open to any reasonable measure." *Id.* Furthermore, the court in *Chowning* did not exclude the expert's restitution models under FRE 702 and *Daubert*; rather, the court, applying the summary judgment standard, concluded the plaintiff "failed to demonstrate a viable measure of restitution." *Id.* at *38; *see also Lytle*, 114 F.4th at 1029–30 (distinguishing between application of Rule 702 in a class certification proceeding and its application on a motion for summary judgment).

such legal conclusion that would be relevant to Plaintiffs' damages claims would be that the price reductions at issue were false and misleading in violation of the CLRA. *See* Civ. Code § 1770(a)(13) (prohibiting false and misleading price reductions). But Tregillis gives no such opinion. On the contrary, Tregillis makes clear that in his damages analysis, he assumes liability. (*See* Tregillis Decl. ¶ 25 ("As a foundation to any damages analysis, including the damages framework and methodology describe in this declaration, I have assumed liability."); *see also id.* ¶ 4 ("For purposes of my analysis, I do not hold myself out to be an expert in the law, nor do I offer a summary opinion on liability, nor that the putative class should be certified.").) This "is an appropriate starting point for a damages model (especially one in support of class certification)." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 575 (N.D. Cal. 2020).

Lenovo argues that Tregillis misapplies section 17501 of the California Business and Professions Code in calculating the "true reference price." But this argument again misconstrues the "true reference price" as a calculation of the "prevailing market price" under section 17501. *See* Bus. & Prof. Code § 17501 (prohibiting advertisement of a former price unless it was "the prevailing market price . . . within three months next immediately preceding the publication of the advertisement"). Tregillis does not use the 90-day mode price as a means for calculating the prevailing market price, but to determine the regular price on Lenovo's website.[7] *See supra* Part III(B)(2) (quoting *Moore*, 713 F. Supp. at 678).

In *Knapp v. Art.com*, this Court explained the distinction between the prevailing market price under section 17501 and the regular price on a retailer's website:

> As I understand the interaction between section 17501 and section 17500, this is a section 17500 theory, not a section 17501 theory. That is, Knapp's principal theory of liability

---

[7] Even if Tregillis had used the 90-day mode price to calculate the prevailing market price under section 17501 (he did not), Lenovo's criticism that Tregillis misapplies the "strict 'three month' standard" would be misplaced. (Mot. at 11 n.1.) In *People v. Superior Court (J.C. Penney Corp., Inc.)*, the California Court of Appeal did not describe the standard as "strict" but rather described use of a 90-day period as a "minor defect[,] immaterial to whether the complaints state clear claims under section 17501." 34 Cal. App. 5th 376, 415 n.24 (2019). Moreover, the Court of Appeal took no issue with using of the "mode" price to calculate the prevailing price. *See id.* at 414 ("[T]he most straightforward application of the concept of the mode to the facts alleged here is to identify the three-month prevailing price for an item as the price offered in the majority of the 'daily offerings' for the period, if there is one, and otherwise as the most frequently occurring price in those offerings.").

appears to be that Art.com does not ordinarily sell its products at the advertised regular prices (in violation of section 17500), not that the advertised regular prices are out of step with prevailing market prices (in violation of section 17501).

No. 16-cv-00768-WHO, 2016 U.S. Dist. LEXIS 78128, at *10-11 (N.D. Cal. June 15, 2016).  As in *Knapp*, Plaintiffs' theory of liability under the CLRA is that Lenovo does not ordinarily sell its products at the advertised regular prices (in violation of the CLRA), not that Lenovo's advertised regular prices are out of step with prevailing market prices (in violation of section 17501).[8]

### C. Tregillis's damages calculations are reliable and satisfy Rule 702.

#### (1) Tregillis is exceptionally qualified and has successfully performed similar damages calculations in other cases.

In assessing whether Rule 702 is satisfied at class certification, a district court may rely on an expert's unchallenged credentials and the fact that the expert successfully performed similar analyses in other cases.  *Lytle*, 114 F.4th at 1031.  Here, Lenovo does not challenge Tregillis's credentials or the fact that he has "analyzed damages and monetary remedies related to alleged false advertising, using surveys in a manner similar to the methodology" in other false advertising cases.  (Tregillis Decl. ¶ 22.)  Indeed, Tregillis is exceptionally qualified to opine on a methodology for calculating damages on a classwide basis.  Tregillis is a partner at Hemming Morse, LLC, a forensic and financial consulting firm.  (Tregillis Decl. ¶ 2.)  He is a Certified Public Accountant, licensed in California and Nevada, and accredited in Business Valuation and Financial Forensics.  (*Id.*)  Tregillis formerly led the Economic Damages Task Force of the American Institute of Certified Public Accountants ("AICPA"), and the Economic Damages section of the California Society of Certified Public Accountants ("CalCPA"), organizations for which he both taught and authored articles and practice aids.  (*Id.*)  In his 30-year career, Tregillis has testified as an expert in over 170 matters, including more than 60 trials

---

[8] Although *Knapp* distinguished between sections 17500 and 17501 of the FAL, the analysis of liability under section 17500 of the FAL and section 1770 of the CLRA are substantially the same.  *Compare* Bus. & Prof. Code § 17500 (broadly prohibiting "untrue or misleading" advertising) *with* Civ. Code § 1770(a)(13) (prohibiting "false or misleading" price reductions); *see also Prescott v. Abbott Labs.*, No. 23-cv-04348-PCP, 2024 U.S. Dist. LEXIS 100160, at *8 (N.D. Cal. June 5, 2024) (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)) ("The UCL [section 17200], FAL [section 17500], and CLRA [section 1770] "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.")

1   and arbitrations.  (Tregillis Decl., Ex. A at 1.)  In addition to testifying extensively on classwide

2   damages in false advertising cases generally, he has also worked on five matters specifically related to

3   advertised reference prices in the sale of products to consumers.  (*Id.* ¶ 2, Ex. A at 2–8, and Ex. B.)

4         Lenovo attempts to discredit Tregillis's qualifications by citing two unrelated cases from over

5   fifteen years ago where portions of his testimony were excluded.[9]  (Mot. at 12.)  However, as this

6   Court explained in *Rearden LLC v. Walt Disney Co.*, "[b]ecause there is no suggestion that the

7   opinions excluded in the prior cases are the same as the opinion [the expert] gives here, this point is

8   irrelevant."  No. 17-cv-4006-JST, 2023 U.S. Dist. LEXIS 184643, at *10 (N.D. Cal. Oct. 13, 2023).

9   As in *Rearden*, the portions of Tregillis's opinions that were excluded in the two cases cited by

10  Lenovo are not the same, nor have any relevance to his opinions here.

11        In *Grupo Televisa v. Telemundo Commc'ns Grp.*, Tregillis was tasked with determining the

12  profit that would have resulted from an actor acting in four telenovelas over thirty-eight months.  2005

13  WL 5955701, at *3 (S.D. Fla. Aug. 17, 2005).  Tregillis based his calculation on the popularity of the

14  actor, as determined by viewer rating on a telenovela website, and the Court concluded that was not an

15  appropriate method for analyzing lost profits within Mexico and sales of programming to the United

16  States.  *Id.* at *4.  Here, Tregillis's proposed methodology for calculating damages is not based on

17  actor popularity or viewer ratings; nor is it based on product popularity or ratings. As such, the

18  opinions Tregillis gave in *Grupo Televisa* have no relevance to the opinions he gives here.  In *Sugar

19  Ass'n v. McNeil-PPC*, the court excluded a portion of Tregillis' testimony, and took issue with

20  Tregillis's assumptions regarding the percentage of people who purchased Splenda due to consumer

21  confusion and the brand-switching percentages in the tabletop sector.  2007 WL 5674021, at *1 (C.D.

22  Cal. Dec. 10, 2007).  Neither of those assumptions are made in the damages calculations Tregillis

23  proposes here.

---

[9] The other case Lenovo cites in an attempt to discredit Tregillis did not involve a *Daubert* motion. (*See* Mot. at 12.)  In *Omega Patents v. CalAmp Corp.*, at issue was not whether Tregillis's testimony was admissible, but rather, whether his testimony, without more, was sufficient to support the verdict. 13 F.4th at 1379-81 (Fed. Cir. 2021) (faulting Omega for failing to "adequately account for substantial 'distinguishing facts' between the proffered licenses and a hypothetical negotiation over a single-patent license"); *see also id.* at 1379 n.10 (distinguishing between exclusion under Rule 702 and a separate challenge to the sufficiency of evidence).

          (2)    <u>Tregillis damages calculations are reliable and consistent with Plaintiffs' theory of liability.</u>

Tregillis's damages calculations comprise the second step of Plaintiffs' proposed damages model. In the first step, Plaintiffs' consumer behavior and survey expert, Dr. Dimofte, calculates the price premium resulting from the false price reductions using either contingent valuation approach or a conjoint analysis. (*See* Dimofte Rep. ¶¶ 69-113 (contingent valuation approach) and ¶¶ 114-34 (conjoint analysis)). In the second step, Tregillis uses the price premium calculated by Dr. Dimofte to calculate the portion of the price paid by each class members attributable to the false regular price and false discount—the "Damages Factor." (Tregillis Decl. ¶¶ 35-37.)

A damages model that relies on the price premium calculated by another expert is a reliable method of calculating classwide damages. For example, in *Bailey v. Rite Aid Corp.*, this Court accepted a damages model "comprised of two components." 338 F.R.D. 390, 408 (N.D. Cal. 2021). The first component consisted of a choice-based conjoint analysis designed by the plaintiff's survey expert which purported to measure the price premium attributable to the challenged statements. *Id.* at 408-09. The second component consisted of calculating damages by taking the price premium determined by in the first component and multiplying it by the number of products sold during the relevant time period. *Id.* at 409. This Court concluded that the proposed damages model (consisting of two components) "comports with *Comcast*" and that "damages [were] capable of measurement on a class-wide basis." *Id.* at 411; *see also, e.g.*, *Monster Energy Co. v. Vital Pharms.*, No. 18-cv-1882, 2022 U.S. Dist. LEXIS 214145, at *58 (C.D. Cal. Aug. 2, 2022) (denying motion to exclude damages calculations that were based on the results of a consumer behavior survey performed by another expert).

Here, Tregillis's damages calculations will appropriately rely on Dr. Dimofte's survey results and will reliably measure the excess that consumers paid to Lenovo over the amount they would have chosen to pay had Lenovo advertised the true regular prices of its products.

    **D.**    **Lenovo's objections to the reliability of Tregillis's calculations are meritless.**

Lenovo raises a laundry list of objections to Tregillis's calculations which Lenovo claims undermine the reliability of his report. Lenovo's objections either misconstrue Plaintiffs' damages

1  methodology, go to the weight of Tregillis's testimony (not its admissibility), are unsupported by case
2  law, or simply misstate the facts.
3      First, Lenovo again misconstrues Tregillis's use of the 90-day mode, arguing that Tregillis
4  provides no economic or other sound motivation for using the 90-day mode to identify "Class Days"
5  and calculate the "true reference price." (Mot. at 12-13.) Lenovo ignores the fact that Tregillis's use
6  of the 90-day mode is premised on Plaintiffs' theory of liability, as required by *Comcast*. *See supra*
7  Part III(B). While Lenovo might disagree with Plaintiffs' theory of liability, "that is for the jury" to
8  decide. *See Advanced Thermal Scis. v. Applied Materials*, No. 07-cv-01384, 2009 U.S. Dist. LEXIS
9  140818, at *13 (C.D. Cal. Oct. 28, 2009).
10     Lenovo next objects that Tregillis's "Class Day" calculation is little more than simple
11 arithmetic that does not require any specialized knowledge. (Mot. at 12.) But use of a simple
12 arithmetic formula to calculate actual damages does not render his opinions unreliable or unhelpful.
13 *See Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 U.S. Dist. LEXIS 186249, 2020 WL 5901116,
14 at *4 (C.D. Cal. Sept. 23, 2020) (finding that use of "'simple arithmetic' if anything underscores how
15 [the calculation] is reliable for purposes for resolving class certification criteria").
16     Lenovo next erroneously asserts that neither Tregillis nor Dr. Dimofte provide any evidence
17 that Lenovo's false reference prices "caused any putative class member to make a different purchase
18 choice or to pay more for a product than they would have otherwise." (Mot. at 13.) This is simply
19 incorrect. Dr. Dimofte's preliminary findings indicate that Lenovo's false reference prices increase a
20 consumer's purchase likelihood. (Dimofte Rep. ¶¶ 94 and 111.)
21     Lenovo next asserts several complaints that do not concern the general reliability of Plaintiffs'
22 damages methodology itself, but concern Tregillis's application of the methodology to the facts of this
23 case. For example, Lenovo contends, *inter alia*, that many [class members] were not affected by the
24 reference prices and that Plaintiffs' "true reference price" methodology ignores that some units of the
25 relevant products were offered by Lenovo at the full posted reference price. (Mot. at 13.)
26 All of these contentions rely on testimony from Lenovo's expert, Lorin Hitt. (*See id.* (citing Export
27 Report of Lorin Hitt, Ph.D.).) But disagreement among experts is not sufficient to justify exclusion
28 under *Daubert*. *S.M. v. J.K.*, 262 F.3d 914, 921 (9th Cir. 2001). And attacks on the factual

assumptions and input data underpinning Tregillis's calculations bear on the weight, not the admissibility, and are therefore more appropriately addressed through cross-examination. *Beatbox Music Pty v. Labrador Entm't*, No. CV 17-6108, 2023 U.S. Dist. LEXIS 97659, at *15 (C.D. Cal. Apr. 13, 2023); *see also, e.g.*, *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *38 (N.D. Cal. Apr. 23, 2020) ("The fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."); *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 305 (N.D. Cal. 2018) (explaining that "experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony").

Lenovo next faults Tregillis for failing to calculate monetary damages, even for purchasers of the two exemplar products he analyzes. (Mot. at 14.) But there is no requirement that he do so. In fact, the Ninth Circuit has "repeatedly found class treatment to be appropriate, in analogous contexts, based upon a showing that damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed." *Lytle*, 114 F.4th at 1025. Tregillis's failure to calculate monetary damages based on Dr. Dimofte's illustrative survey results has no bearing on whether his calculations are reliable.[10]

Lenovo next falsely asserts that Tregillis testified "he would be unable to test or design his methodology unless he had a sampling of laptops, desktops, workstations, and tablets allowing for "a 95% level of confidence that the sample data obtained are accurate to +/-5% of the population's values.'" (Mot. at 14 (quoting Declaration of Christian Tregillis in Support of Plaintiffs' Proposed Sampling Plan,).) This is simply incorrect. Tregillis never gave such testimony.

Lenovo next argues that Tregillis's damages calculations must be excluded because "the entire underpinning of Tregillis' damages methodology" is flawed (Mot. at 15 (citing Dr. Dimofte's Consumer Perception Survey and Equivalent True Discount Survey).) This argument is meritless because Dr. Dimofte's testimony regarding available methods for calculating classwide damages easily clears the admissibility hurdle at class certification. (Dimofte Opp. at IV(A).) Thus, Lenovo's

---

[10] As Dr. Dimofte explains in his report, the surveys he performed were "intended to be illustrative only. Thus, any findings based thereon are preliminary in nature and are intended only to indicate the type of conclusions that can be drawn from such a survey." (Dimofte Rep. ¶ 93 n.59.)

1  collateral attack on Tregillis's opinions fails.  *See Monster Energy Co.*, 2022 U.S. Dist. LEXIS

2  214145, at *58 (rejecting challenge to expert's damages calculations because the consumer behavior

3  survey on which his calculations relied was admissible); *see also Youngsuk Kim v. Benihana, Inc.*, No.

4  22-55529, 2023 U.S. App. LEXIS 13085, at *2-3 (9th Cir. May 26, 2023) (unpub.) ("[Damages

5  expert's] reliance on a report by another expert that the district court found to be both reliable and

6  admissible does not affect the [damages expert] report's admissibility.")

7        Lenovo next objects that Tregillis "states that he is willing to rely on Prof. Dimofte's generally

8  hypothesized conjoint analysis as an alternative, without seeing its design, what form the results would

9  take, and whether those results could realistically be used as inputs for his damages methodology."

10  (Mot. at 15-16.)  But that is not what Tregillis states.  Tregillis states that his "models and calculations

11  work equally well with outputs from a conjoint analysis as they do in the survey model Dr. Dimofte

12  has performed."  (Tregillis Decl. ¶ 56.)  As explained by Dr. Dimofte, both the equivalent true

13  discount methodology and the conjoint analysis proposed in his report "can be used to measure and

14  quantify the impact that false price reductions have on consumer choice."  (Dimofte Rep. ¶¶ 21–22.)

15  Requiring Tregillis to demonstrate his damages calculations based on a not-yet-executed conjoint

16  analysis is not required at class certification.  *See Lytle*, 114 F.4th at 1019 (holding that plaintiffs may

17  rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible

18  to common proof).

19        Lenovo next objects (without basis) that "the amount of work that would be required to test

20  these assumptions is cost- and time-prohibitive."  (Mot. at 16.)  But "difficulties with calculating class-

21  wide damages will not defeat class certification . . . if 'a valid method has been proposed for

22  calculating those damages.'"  *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018)

23  (unpub.) (quoting *Lambert*, 870 at 1170).

24        Lastly, Lenovo asserts that Tregillis's calculations are unreliable because they "disregard the

25  heterogenous effect that reference prices have on putative class members."  (Mot. at 16.)  But under

26  Plaintiffs' theory of liability, "damages are measured by what a reasonable consumer would be willing

27  to pay."  *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2024 U.S. Dist. LEXIS 177689, at *60 (N.D.

28

Cal. Sep. 30, 2024) (citing *Pulaski*, 802 F.3d at 989).[11] Thus, Tregillis's analysis does not purport to account for the effect reference prices have on each individual class member; rather Tregillis's damages analysis applies a single damages factor to class members' purchases depending on the reference price and discount offered. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) ("[T]he mere fact that there might be differences in damage calculations is not sufficient to defeat class certification."); *Hellman v. Polaris Indus., Inc.*, No. 2:23-cv-07187-FLA (KESx), 2024 U.S. Dist. LEXIS 158697, at *14 (C.D. Cal. July 16, 2024) (quoting *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 681 (9th Cir. 2022) (cleaned up) ("While reasonable minds may differ as to whether a plaintiff's damages model is probative as to all purchasers in the class . . . that is a question of persuasiveness for the jury once the evidence is sufficient to satisfy Rule 23.").

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Lenovo's motion to exclude the opinions of Tregillis.

Dated:  November 25, 2024

EDGE, A PROFESSIONAL LAW CORPORATION

By:    /s/ Daniel A. Rozenblatt
          Daniel A. Rozenblatt
          Natasha Dandavati

          CAPSTONE LAW APC
          Tarek H. Zohdy
          Cody R. Padgett
          Laura E. Goolsby

          *Attorneys for Plaintiff*

---

[11] In *Orshan*, the Court also noted that if damages resulting from false advertising were not uniform, "that would lead to the seemingly categorical conclusion that cases regarding misrepresentations about consumer products can never be maintained as class actions, [which] would be a dramatic result that flies in the face of the many consumer class actions that courts have certified." 2024 U.S. Dist. LEXIS 177689, at *60 n.11.