SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
ccardon@sheppardmullin.com
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
baigboboh@sheppardmullin.com
ALYSSA SONES, Cal. Bar No. 318359
asones@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
ABBY H. MEYER, Cal. Bar No. 294947
ameyer@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:    714.513.5100
Facsimile:    714.513.5130

*Attorneys for Defendant*
LENOVO (UNITED STATES) INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br><br>[*Assigned to the Hon. Jeffrey S. White*]<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION UNDER FEDERAL RULES OF EVIDENCE 702 AND 403 TO EXCLUDE CHRISTIAN TREGILLIS' OPINIONS REGARDING CLASS-WIDE DAMAGES AND LIABILITY**<br><br>Hearing Date:  February 14, 2025<br>Hearing Time:  9:00 a.m.<br><br>Complaint Filed:  August 31, 2021<br>FAC Filed:  January 25, 2022<br>Trial Date:  None Set |

SMRH:4919-7894-2723.2

# TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................................1

II. Legal Standard...................................................................................................................1

    A. *Daubert* At Class Certification................................................................................1

    B. Evidence on a *Daubert* Motion ...............................................................................2

III. Tregillis's Opinions and Testimony Should Be Excluded .................................................2

    A. Tregillis's Damages Model Departs From Plaintiffs' Pled Theory of Liability ....................................................................................................................2

        1. Plaintiffs' claim that Tregillis's "but for" price aligns with their theory of liability does not resolve its irrelevance .........................................2

        2. Plaintiffs fail to provide any evidence or authority for using a 90-day lookback as a basis for determining liability and calculating damages...................................................................................................4

            a. Plaintiffs do not allege a theory of liability based on a 90-day period........................................................................................4

            b. Plaintiffs' 90-day theory of deception is not derived from any economic or scientific principles..................................5

            c. No case law establishes that a 90-day time period may be used as a proxy for deception beyond Bus. & Prof. Code § 17501 ................................................................................................5

    B. Tregillis's Damages Model Is Unreliable Under *Daubert* And Rule 702..................7

        1. Plaintiffs focus on Tregillis's qualifications, but he has never run the model he proposes. ...................................................................................7

        2. Tregillis improperly relied on questionable inputs without properly evaluating their fitness for his damages methodology .................................8

        3. Plaintiffs' remaining arguments fail for lack of evidentiary support. ..........10

IV. Conclusion........................................................................................................................11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Thermal Scis. v. Applied Materials*
  2009 WL 10673194 (C.D. Cal. Oct. 28, 2009) ........................................................................ 5

*Bailey v. Rite Aid Corp.*
  338 F.R.D. 390 (N.D. Cal. 2021) ..................................................................................... 9, 10

*Beard v. Banks*
  548 U.S. 521 (2006) ....................................................................................................... 2, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
  308 F.R.D. 606 (N.D. Cal. 2015) ......................................................................................... 3

*Chowning v. Kohl's Dep't Stores*
  2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ...................................................................... 5

*City of Pomona v. SQM N. Am. Corp.*
  750 F.3d 1036 (9th Cir. 2014) .............................................................................................. 2

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013) .............................................................................................................. 11

*Dahlin v. Under Armour, Inc.*
  2020 WL 6647733 (C.D. Cal. July 31, 2020) ...................................................................... 6

*Dennis v. Ralph Lauren Corp.*
  2017 WL 3732103 (S.D. Cal. Aug. 29, 2017) ...................................................................... 6

*Fisher v. Eddie Bauer LLC*
  2019 WL 9467922 (S.D. Cal. Oct. 18, 2019) .................................................................. 6, 7

*Fredianelli v. Jenkins*
  931 F. Supp. 2d 1001 (N.D. Cal. 2013) ............................................................................... 2

*Grace v. Apple, Inc.*
  2019 WL 3944988 (N.D. Cal. Aug. 21, 2019) ..................................................................... 5

*Hansen v. Newegg.com Americas, Inc.*
  25 Cal. App. 5th 714 (2018) ................................................................................................ 3

*Hinojos v. Kohl's Corp.*
  718 F.3d 1098 (9th Cir. 2013) .............................................................................................. 3

*John v. AM Retail Grp., Inc.*
  2018 WL 1400718 (S.D. Cal. Mar. 20, 2018) ...................................................................... 6

*Kaupelis v. Harbor Freight Tools USA, Inc.*
  2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ..................................................................... 4

*Knapp v. Art.com, Inc.*, 2016 WL 3268995 (N.D. Cal. June 15, 2016) .......................................... 6

*Lytle v. Nutramax Labs., Inc.*
    114 F.4th 1011 (9th Cir. 2024) ................................................................................ 1, 2, 4

*Monster Energy Co. v. Vital Pharms.*
    2022 WL 17218077 (C.D. Cal. Aug. 2, 2022) ................................................................ 8

*Moore v. GlaxoSmithKline Consumer Healthcare Hldgs. (US) LLC*
    713 F. Supp. 3d 660 (N.D. Cal. Jan. 30, 2024) (White, J.) ............................................ 1

*Orshan v. Apple Inc.*
    2024 U.S. Dist. LEXIS 177689 (N.D. Cal. Sept. 30, 2024) .......................................... 2

*Orshan v. Apple Inc.*
    2024 WL 4353034 (N.D. Cal. Sep. 30, 2024) .............................................................. 11

*People v. Superior Court (J.C. Penney Corp., Inc.)*
    34 Cal. App. 5th 376 (2019) ........................................................................................... 7

*Pulaski & Middleman, LLC v. Google, Inc.*
    802 F.3d 979 (9th Cir. 2015) ....................................................................................... 11

*Rael v. New York & Co., Inc.*
    2017 WL 3021019 (S.D. Cal. July 17, 2017) ................................................................ 6

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997) ....................................................................................... 8

*Youngsuk Kim v. Benihana, Inc.*
    No. 22-55529, 2023 WL 3674673 (9th Cir. May 26, 2023) .......................................... 8

*Zakaria v. Gerber Prod. Co.*
    755 F. App'x 623 (9th Cir. 2018) ............................................................................ 9, 10

**Statutes**

Bus. & Prof. Code § 17501 ................................................................................................ 5, 6, 7

**Other Authorities**

Federal Rules of Evidence 9(b) ................................................................................................ 6

Federal Rules of Evidence 23 ................................................................................................ 11

Federal Rules Of Evidence 403 ................................................................................................ 1

Federal Rules Of Evidence 702 ....................................................................................... 1, 2, 7

## I. Introduction

Rather than submit evidence or testimony from their expert Christian Tregillis supporting his damages model in the wake of Lenovo's substantive challenges mounted by multiple economic and consumer experts, Plaintiffs asserted a handful of legal arguments. Their arguments primarily rely on an incorrect underlying view that the Court need not engage in a rigorous *Daubert* review of their experts' damages methodology at the instant class certification stage. As the Court is aware, this assumption is incorrect. While the *Daubert* review is more limited than at trial, it is still meaningful and clearly requires exclusion of all testimony and evidence presented through Tregillis.

As more fully set out in the Motion Under Federal Rules Of Evidence 702 And 403 To Exclude Christian Tregillis' Opinions Regarding Class-Wide Damages And Liability (the "Motion"), Tregillis' testimony and methodologies are unreliable and do not sound in scientific methods accepted by even a minority of experts in his field. Moreover, in addition to the flaws in Tregillis' own report, his opinions are inadmissible if and to the extent that Plaintiffs' consumer survey expert Claudiu Dimofte's opinions must be excluded. Accordingly, Lenovo respectfully asks this Court to exclude Tregillis' opinions and testimony offered in support of Plaintiffs' Motion for Class Certification (the "Certification Motion").

## II. Legal Standard

### A. *Daubert* At Class Certification

This Court is well-apprised of the level of rigor required in deciding a *Daubert* motion seeking to exclude an expert at the class certification stage. *See, e.g.*, *Moore v. GlaxoSmithKline Consumer Healthcare Hldgs. (US) LLC*, 713 F. Supp. 3d 660, 667 (N.D. Cal. Jan. 30, 2024) (White, J.) (excluding two of four class certification experts under *Daubert*). Far from changing the applicable standard, the Ninth Circuit's decision in *Lytle* confirmed that class action plaintiffs can only "rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof **so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial**." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) (emphasis added).

While the *Daubert* review standard at class certification has been described as "limited" in comparison to a pretrial *Daubert* review, it must still be rigorous. "[W]here an expert's model has yet to be fully developed, a district court is limited at class certification to making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit. **This still requires determining whether the expert's methodology is reliable**," including by "ask[ing] whether the model will likely be able to generate common answers at trial" *Id.* at 1031 (emphasis added). "The fact that a model is underdeveloped may weigh against a finding that it will provide a reliable form of proof. Merely gesturing at a model or describing a general method will not suffice to meet this standard." *Id.* at 1032 (a model is underdeveloped where, for example, it fails to "chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case"); *accord Orshan v. Apple Inc.*, 2024 U.S. Dist. LEXIS 177689, *6-20 (N.D. Cal. Sept. 30, 2024) (excluding one damages model and rigorously assessing the remaining two proposed damages models).

### B. Evidence on a *Daubert* Motion

A motion to exclude testimony under Rule 702 and/or *Daubert* is evidentiary in nature. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (reviewing court's evidentiary ruling under Rule 702 following evidentiary hearing on motion). Where the party opposing an evidentiary motion fails to submit any evidence rebutting evidence proffered in the motion, the fact is considered undisputed. *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1010 (N.D. Cal. 2013). A fact disputed by a party without a citation to supporting evidence will be deemed admitted. *Beard v. Banks*, 548 U.S. 521, 527 (2006). Plaintiffs submitted no evidence in connection with their opposition to the Motion. Accordingly, all evidence proffered in support of the Motion is undisputed, including the expert reports of Professors Lorin Hitt and Itamar Simonson.

### III. Tregillis's Opinions and Testimony Should Be Excluded

#### A. Tregillis's Damages Model Departs From Plaintiffs' Pled Theory of Liability

##### 1. Plaintiffs' claim that Tregillis's "but for" price aligns with their theory of liability does not resolve its irrelevance

Plaintiffs argue that courts have approved "but for worlds" in (dissimilar) cases, but they ignore that Tregillis has not proposed a realistic "but for world" reflecting the online market in which Defendant's products are sold. (*See* Declaration of Lorin M. Hitt, Ph.D. in Support of Replies on Motions to Exclude ("Hitt Reply Dec.") ¶¶ 8-9.) For instance, Plaintiffs did not respond with an explanation for how Tregillis will manage supply-side dynamics in a non-exclusive product market. Tregillis's model uses the price a consumer would have been willing to pay, or would have chosen to pay, or would have paid, each of which covers different economic concepts. (Hitt Reply Dec. ¶¶ 34-39.) These factors impact how the numerous market players would react to the price adjustments Tregillis proposes, which notably include the extreme measure of selling products for no profit at all. (*See* Dkt. 222-3 ("Hitt R."), ¶¶ 42-47; Dkt. 222-12 ("Tregillis Tr.") at 123:7-124:7.) Tregillis's "but for world" fails to address the potential actions and counteractions of the other players in the market selling the same and similar products. Plaintiffs also failed to offer evidence explaining how Tregillis's damages model tracks best practices or prior peer reviewed modalities in economics. Plaintiffs cannot overcome a *Daubert* motion by saying their theory of liability is that consumers paid more than they otherwise would have been willing to pay—this argument fails to validate the reliability of their expert's damages model in light of the contradictory economic scientific evidence from Defendant's experts.

Plaintiffs' cases do not resolve these fundamental deficiencies with Tregillis's model. For example, *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 729 (2018) is inapposite, as it addresses a consumer's standing on an appeal from a demurrer to a complaint. In *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106-07 (9th Cir. 2013), the finding that standing can rest on an economic injury grounded in what consumers are subjectively willing to pay is a far cry from a *Daubert* review or other test of a damages model's adequacy. Neither decision addresses whether an expert's damages model can reliably calculate classwide damages. In *Cathode Ray*, the experts' "but for world" compared actual pricing throughout the market during a conspiracy period to pricing before and/or after that period. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 624 n.33 (N.D. Cal. 2015) (expert "conducted a regression analysis of the relationship between CRT prices, market demand and supply variables, and the presence of the

conspiracy").[1]  Tregillis did not propose such a model.  Similarly, while *Lytle* acknowledges that a price premium theory of liability could work in a general sense, it is a step too far to argue that theory works here on the model proposed by Tregillis.  114 F.4th at 1019.

### 2. Plaintiffs fail to provide any evidence or authority for using a 90-day lookback as a basis for determining liability and calculating damages

Plaintiffs argue that Defendant misconstrues Tregillis's use of a 90-day period in his damages model; however, Plaintiffs fail to establish with either evidence or legal authority that the mode price in the 90 days before a purchase is reliable or appropriate.

#### a. Plaintiffs do not allege a theory of liability based on a 90-day period

Plaintiffs' reliance on a 90-day lookback to determine whether a reference price is not their alleged theory of deception (nor do they argue this theory of deception in the Certification Motion).  Where Plaintiffs address historical pricing in the FAC, they consider variable time frames.  For example, Plaintiffs allege that Defendant, "rarely, if ever, sold the laptop [bought by Axelrod] for anywhere near the advertised regular price," and point to the alleged advertised price of that product on or around the 15th of the month for the 14 months preceding Axelrod's purchase.  (Dkt. 19, ¶ 36.)  Similarly, Plaintiffs allege false pricing on ten other products through a graphical four-month lookback (*id.* ¶ 41), and for eleven other products by looking at the average discount compared to number of days at regular price over roughly 100 days which may not have been consecutive (*id.* ¶¶ 42-43).  Plaintiffs do not contradict this and instead confirm that their theory of liability is the purported "illusion of savings" from advertised discounts on Lenovo's website.  (FAC ¶ 23; *see* Opp. at 1:17-23.)  There is no time-related deception alleged.

In terms of the class certification briefing, the Certification Motion relies on the 90-day lookback to define what is a "Class Day," which in turn decides whether a purchaser is a member of the Injunctive Relief Class, Damages Class, both, or neither.  (*See* Cert. Mot. at 5:6-14, n.10;

---

[1] Plaintiffs also rely on *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *4 (C.D. Cal. Sept. 23, 2020) to argue that it does not matter that Tregillis's methodology is "simple arithmetic".  This case is also distinguishable.  The court examined supply-side considerations and found that the at-issue chainsaw was so dangerous that no market for the product was likely to emerge, and therefore no supply-side analysis was possible.  *Id.* at *6.  The market for consumer electronics is manifest.

*see* Opp. at 2:2-9.)  Tregillis also adopted the 90-day period to also determine who may be a class member.  Accordingly, while Plaintiffs argue that Tregillis "assumes liability," this does not withstand scrutiny.  Tregillis's Class Day methodology is an integral requirement to determining class membership and therefore purported liability, regardless of whether are damages.  (*Id.*) Secondarily, as confirmed in the Opposition, Tregillis "uses the mode price [over the 90 days before a purchase] to calculate the prevailing *price on Lenovo's website*—i.e., the true regular price" for purposes of reaching individual damages figures for each purchase.  (Opp. at 7:3-4.)

        b.        Plaintiffs' 90-day theory of deception is not derived from any economic or scientific principles

Plaintiffs have not identified any economic basis for their selection of the 90-day lookback period.  (Hitt Reply Dec. ¶¶ 40-42.)  Unable to provide such a basis, Tregillis points back to Plaintiffs' counsel's and his own interpretation of the law.  (*See* Tregillis Tr. at 54:1-19.)  Instead, the Opposition seeks to support the use of the 90-day time period by distinguishing *Chowning* by claiming that *Chowning* applies only to restitution, not damages.  However, courts have cited the *Chowning* analysis for price premium damages models under *Tobacco II* in addition to restitution.  *See Grace v. Apple, Inc.*, 2019 WL 3944988, at *12-13 (N.D. Cal. Aug. 21, 2019), citing *Chowning v. Kohl's Dep't Stores*, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016).  It is therefore undisputed that Plaintiffs use of the 90-day period is an unsupported assumption and the selection of this period does not reliably allow them or Tregillis to determine liability or damages.

Plaintiffs' reliance on *Advanced Thermal Scis. v. Applied Materials*, 2009 WL 10673194, at *5-6 (C.D. Cal. Oct. 28, 2009) is unavailing on this issue.  There, the defendant questioned whether the plaintiff's ultimate theories of liability would be persuasive to a jury.  *Id.*  Here, Defendant has asked the Court to exclude Tregillis' opinions because they lack any scientific rigor and are unreliable, such that he has not proposed a reliable way to calculate classwide damages.  *Cf. id.* ("AMI does not dispute Tregillis' basic computation of ATS research and developments costs. [citation]  ATS's arguments amount to factual disputes or legal misconceptions which do not undermine the reliability of Tregillis's work.").

        c.        No case law establishes that a 90-day time period may be used as a proxy for deception beyond Bus. & Prof. Code § 17501

Plaintiffs have no legal basis for their selection of the 90-day lookback period. Instead, Plaintiffs seek to persuade the Court to create new law and adopt and apply the 90-day lookback period that arises out of a flawed reading of Cal. Bus. & Prof. Code § 17501 (even though they disclaim that their 90-day period comes from this statute, *see* Opp. at 9:4-7).

Many UCL and CLRA cases cited by Plaintiffs are inapposite because those plaintiffs expressly relied on § 17501 as the source of a 90-day deception requirement—whereas here, Plaintiffs expressly deny basing their deception theory on § 17501. *See Dahlin v. Under Armour, Inc.*, 2020 WL 6647733 at *2 (C.D. Cal. July 31, 2020) (complaint alleged false or misleading advertising based on "violation of the 90 day time period afforded … under California law"); *Dennis v. Ralph Lauren Corp.*, 2017 WL 3732103, at *4-5 (S.D. Cal. Aug. 29, 2017) (same based on violation of § 17501 and court found sufficient allegations of "prevailing market price," the term used by § 17501); *Rael v. New York & Co., Inc.*, 2017 WL 3021019 at *1 (S.D. Cal. July 17, 2017) (complaint specifically alleged deception because product was not sold in defendant's stores "at the regular price … in the 90 days preceding her purchase"); *John v. AM Retail Grp., Inc.*, 2018 WL 1400718, at *2, 14 (S.D. Cal. Mar. 20, 2018) (same because product was "not offered" at full price "within ninety days before Plaintiff's purchase"). While Plaintiffs cite *Knapp* for the assertion that their 90-day "theory of liability" is distinct from a consideration of prevailing market price under § 17501, *Knapp* in fact results in the opposite inference: the 90-day time period was brought into the case because the *Knapp* plaintiff explicitly premised liability on the § 17501 violation. *Knapp v. Art.com, Inc.*, 2016 WL 3268995 at *6-7 (N.D. Cal. June 15, 2016).

Finally, *Fisher v. Eddie Bauer LLC*, 2019 WL 9467922 at **1-2, 7 (S.D. Cal. Oct. 18, 2019) (cited by Plaintiffs) clarifies that even where a complaint specifically alleges that a reference price is deceptive because the product was discounted for 90 days, such a theory alone is not sufficient to prove that consumers were deceived absent supporting evidence. The court found that a 90-day discount was "ever so slightly" sufficient to get the plaintiff past the Rule 9(b) pleading standard, but noted that it "might be reasonable for retail stores to genuinely discount products for several months at a time" without violating the FAL, UCL, or CLRA. *Id.* at *7. Accordingly, the court ruled that evidence would be required at trial to demonstrate how a 90-day

sale was in fact deceptive. *Id.* Here, Tregillis attempts to use the 90-day lookback period without providing any opinion or other evidence that this is appropriate or sound. Plaintiffs thus fail to submit the evidence contemplated in *Fisher* establishing why the 90-day timeframe properly proxies what would be deceptive to a reasonable consumer typical of the class, or even a plan as to how they can establish this fundamental fact at trial. (Hitt Reply Dec. ¶¶ 43-44.) *Fisher* shows why the Court should not accept the baseless 90-day period adopted by Tregillis to determine liability and calculate damages. *Accord People v. Superior Court (J.C. Penney Corp., Inc.)*, 34 Cal. App. 5th 376, 415 n.24 (2019) (90-day time period used as a proxy for three months under § 17501).

### B.  Tregillis's Damages Model Is Unreliable Under *Daubert* And Rule 702

Lenovo does not challenge Tregillis's mere failure to actually finish calculating damages in this case. Rather, Lenovo challenges the reliability of Tregillis's methodology proposed for calculating damages and the inadequate manner in which he has evaluated the complex inputs he intends to use for his damages model. These fundamental flaws render Tregillis's damages methodology unreliable. (Hitt Reply Dec. ¶¶ 45-47.) For these reasons, Tregillis's opinions and report must be excluded.

#### 1. Plaintiffs focus on Tregillis's qualifications, but he has never run the model he proposes.

Lenovo did not challenge Tregillis's basic qualifications in a vacuum. However, his credentials do not support the methodologies he proposes to use here as he has never utilized the same, nor can he point to any other qualified economist who has utilized his proposed methodologies. Plaintiffs point to Tregillis's prior testimony as a basis for his qualifications and argue that the instances in which his opinions were excluded by other courts were slightly different than what he proposes to do here. But neither Plaintiffs' Opposition nor Tregillis's report or deposition testimony point to an instance where he did the type of work he proposes to do here, much less deemed admissible. In light of his evident inexperience, coupled with the lack of detail he has provided for how he would perform his damages model, there are serious questions about whether Tregillis can in fact conduct his generically proposed calculations.

### 2. Tregillis improperly relied on questionable inputs without properly evaluating their fitness for his damages methodology

Plaintiffs argue that Tregillis can rely on the Dimofte report and opinions because other courts have allowed damages experts to rely on consumer perception and price surveys; however, Plaintiffs' cases are inapposite because in each the court had already found that the underlying expert testimony was reliable and admissible. *See Monster Energy Co. v. Vital Pharms.*, 2022 WL 17218077, at *18 (C.D. Cal. Aug. 2, 2022); *Youngsuk Kim v. Benihana, Inc.*, No. 22-55529, 2023 WL 3674673, at *1-2 (9th Cir. May 26, 2023) (unpub.). Where, however, an expert seeks to rely on inputs that are not reliable or cannot be evaluated, the expert acts improperly. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1141 (9th Cir. 1997) (finding it is permissible to rely on inputs provided by others if the expert can explain, "precisely how the conclusions were reached and point[] to some objective source to show that the conclusions are based on 'scientific method, as it is practiced by (at least) a recognized minority of scientists in the[] field.'"). Here, Tregillis is clear that he does not and cannot evaluate the reliability or soundness of Dimofte's survey results or undeveloped conjoint analysis. (Tregillis R., ¶ 56.) Further, in their Opposition to the Motion to Exclude Dimofte's Opinions, Plaintiffs for the first time recast Dimofte's work as a contingent valuation survey. (Dimofte Opp., Dkt. 233 at 10-12; *see also* Hitt. Supp. R. ¶¶ 11-12; Declaration of Itamar Simonson, Ph.D. in Support of Replies on Motions to Exclude, ¶¶ 3-6.) However, as argued in the contemporaneously filed Reply in Support of Excluding Dimofte, Dimofte did not offer an opinion about or conduct a contingent valuation survey. Consequently, there is no confirming opinion or testimony by Tregillis that he could use the results of Dimofte's contingent valuation survey as an input for Tregillis' damages methodology. Nor could he: this is an inappropriate mechanism to estimate willingness to pay. (*See generally* Reply iso Excluding Dimofte; Hitt Reply Dec. ¶¶ 13-16.)

Moreover, neither Tregillis nor Dimofte's reports use recognized scientific methods, but instead either create their own unique methodologies or fail to explain the methodologies. (Hitt Reply Dec. ¶¶ 30-33.) The scant details provided about Dimofte's intended conjoint analysis, for instance, include that it would combine the reference price and offer price into a single price

variable, making it impossible for the study to estimate the effect of the conduct on consumers' willingness to pay. (*Id.* ¶¶ 24-29.) Indeed, the software Dimofte plans to use to run the conjoint analysis requires differentiating between a price attribute and the attribute of interest, meaning Dimofte's survey could not be run on that software. (*Id.*) Plaintiffs thus ask the Court to presume that regardless of what method Dimofte uses, Tregillis can reliably use his results as an input for his damages methodology. Given this critical deficiency, Plaintiffs' proposal does not meet the *Daubert* standard.

Plaintiffs cite *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 408-11 (N.D. Cal. 2021) as support for Tregillis's plans to include inputs from Dimofte, but they ignore critical differences between that case and the circumstances here. In *Bailey*, at the class certification stage the survey expert had already designed a conjoint study. *Id.* at 408. As experts in the field of economics explain, the actual design of a conjoint study is critical to determining whether it can adequately measure a price premium. (Hitt Reply Dec., ¶¶ 24-33.) Simply planning to use a conjoint survey does not render a survey reliable. Instead, the conjoint survey needs to incorporate the appropriate attributes in order to reliably reflect what a price premium would be. *Bailey*, 338 F.R.D. at 408. As explained immediately above and in the concurrently filed Reply in Support of Excluding Dimofte, Dimofte has failed to actually design the survey and has failed to consider that the software with which he plans to run his survey cannot run the survey as designed. (Hitt Reply Dec., ¶¶ 27 ("Dimofte's conjoint discussed combines two different attributes (namely, posted reference price and offer price) into a single price attribute. This combination prevents Prof. Dimofte to quantify the effect (if any) of a posted reference price on respondents' behavior *separately* from the effect of the offer price itself.").)

Second, in *Bailey*, the court found that the conjoint study was capable of reliably determining the price premium because it did not simply measure respondents' willingness to pay, instead, it "employ[ed] actual prices and quantities of past sales (based on actual sales data), which inherently reflect both demand and supply factors." *Bailey*, 338 F.R.D. at 410-11 (distinguishing the rejection of the conjoint in *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018) because it only evaluated consumers' subjective willingness to pay as an abstract concept and

ignored supply-side factors).  Unlike the expert in *Bailey*, and similar to *Zakaria*, Dimofte's conjoint survey cannot create the inputs for Tregillis's damages methodology because neither Dimofte nor Tregillis incorporates supply side factors into the analysis.  (Hitt R., ¶¶ 105-109; Hitt Reply Dec., ¶¶ 32, 38-39.)

### 3. Plaintiffs' remaining arguments fail for lack of evidentiary support.

Plaintiffs assert various other cursory arguments but each fail because Plaintiffs did not provide the evidentiary support required to rebut Defendant's experts' evidence challenging Tregillis.  *Beard*, *supra*, 548 U.S. at 527.  For example, there is no evidence in the record that ***the reference prices at issue***, as opposed to differently worded sale prices, cause consumers to make different purchase choices.  (*See* Motion at 13, citing Hitt R. ¶¶ 143-145; Hitt Reply Dec. ¶¶ 22-23.)  Similarly, Plaintiffs submit only one argument calling into question the credibility or interpretation of Tregillis's own prior declaration in this matter.  (Opp. at 13, citing Motion at 14.)  The declaration and context in which it was submitted speak for themselves.  (*See* Dkt. 73 at 2, 6-7 (in support of Plaintiffs' demand for "sample data [that] will be used by Plaintiffs to support … their forthcoming motion for class certification," Plaintiffs relied on Tregillis' testimony that "Lenovo's proposal that 12 products be sampled," far more than the 3 Tregillis actually used here, was "nowhere near sufficient" for his analysis to be reliable).)

Further, Plaintiffs do not meaningfully respond to Defendant's class heterogeneity argument.  (Opp. at 14:24-15:11.)  While Dimofte attempts to estimate one price premium for one product, he does not show or explain through any reliable or scientifically accepted economic means that a purported premium obtained for one product can be applied across all class products and time periods.  In fact, Tregillis plans to look at the damages factor (i.e., amount of damages) individually, day-by-day and product-by-product.  His testimony thus confirms that under Tregillis's proposal, one must look at each product and purchase individually to determine based on the factual circumstances what the damages would have been, which is consistent with Defendant's expert's opinion.  (Hitt. R. ¶¶ 165-168; Hitt Reply Dec. ¶¶ 17-21.)  Thus Tregillis must calculate damages individually and cannot calculate them on a classwide basis.

Based on the foregoing, Plaintiffs' assertion that the amount of effort required to calculate classwide damages is irrelevant misses the point that Tregillis's methodology does not calculate *classwide* damages at all. (Hitt Reply Dec. ¶¶ 48-50.) Tregillis proposes a multi-step process that considers multiple, product-specific factors, that must be carried out for every purchase.

*Orshan v. Apple Inc.*, 2024 WL 4353034, at *6 (N.D. Cal. Sep. 30, 2024) and *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) are inapposite here. In these cases, as in others cited by Plaintiffs, the courts considered whether the classwide damages methodology aligned with the plaintiff's theory of liability such that it was sufficiently reliable to satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). Lack of alignment between the theory of liability and the damages model is a sufficient basis to find that the damages model is not appropriate to satisfy Rule 23. Defendant contends that this alignment is missing here, but even if it were present, Tregillis's flawed methodology lacks the reliability requirements of *Daubert*. Accordingly, for these reasons and the further reasons stated in the Motion, Tregillis should be excluded.

## IV.   Conclusion

For the foregoing reasons, Defendant respectfully requests that this Court grant the Motion and exclude all Tregillis testimony and declarations in connection with its review and adjudication of the Certification Motion.

Dated: December 20, 2024         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   */s/ Abby H. Meyer*
P. CRAIG CARDON
ABBY H. MEYER
BENJAMIN O. AIGBOBOH
ALYSSA SONES
*Attorneys for Defendant*
LENOVO (UNITED STATES) INC.