SHEPPARD MULLIN RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal. Bar No. 168646
ccardon@sheppardmullin.com
BENJAMIN O. AIGBOBOH, Cal. Bar No. 268531
baigboboh@sheppardmullin.com
ALYSSA SONES, Cal. Bar No. 318359
asones@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:    310.228.3701

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
ABBY H. MEYER, Cal. Bar No. 294947
ameyer@sheppardmullin.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone:   714.513.5100
Facsimile:    714.513.5130

*Attorneys for Defendant*
LENOVO (UNITED STATES) INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br><br>[*Assigned to the Hon. Jeffrey S. White*]<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION UNDER FEDERAL RULES OF EVIDENCE 702 AND 403 TO EXCLUDE CLAUDIU V. DIMOFTE, PH.D.'S OPINIONS REGARDING CONSUMER BEHAVIOR (Dkt. 200-6)**<br><br>Hearing Date:      February 14, 2025<br>Hearing Time:     9:00 a.m.<br><br>Complaint Filed:  August 31, 2021<br>FAC Filed:            January 25, 2022<br>Trial Date:            None Set |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................6

II. LEGAL STANDARD .............................................................................................................7

    A. *Daubert* At Class Certification.......................................................................................7

    B. Evidence on a *Daubert* Motion .....................................................................................7

III. PROF. DIMOFTE'S OPINIONS AND SURVEYS SHOULD BE EXCLUDED ...............8

    A. The Consumer Perception Survey Should Be Excluded ...............................................8

        1. Dimofte's Opinions Are Unreliable To The Extent They Are Not Supported By The Consumer Perception Survey He Conducted..................8

        2. The Consumer Perception Survey Lacks Real-World Purchasing Conditions .........................................................................................................9

        3. The Consumer Perception Survey Design Is Rife With Focalism Bias..................................................................................................................10

    B. The Equivalent True Discount Survey Should Be Excluded .................................13

        1. Dimofte's Equivalent True Discount Survey Is Not A Contingent Valuation Model....................................................................................................13

        2. The Equivalent True Discount Survey Lacks Empirical Support, Scientific Validation, And Is Flawed By Design .........................................15

    C. The Theoretically Proposed Conjoint Survey Should Be Excluded ........................16

        1. Plaintiffs Cannot Withstand A *Daubert* Challenge By Gesturing To Their Underdeveloped Conjoint Survey .........................................................16

        2. The Proposed Conjoint Survey Lacks Necessary Details ...........................18

IV. CONCLUSION ..................................................................................................................19

**TABLE OF AUTHORITIES**

Page(s)

Cases

*In re Arris Cable Modem Consumer Litig.*
   327 F.R.D. 334 (N.D. Cal. 2018) ................................................................................................ 10

*In re Autozone, Inc.*
   2016 U.S. Dist. LEXIS 105746 (N.D. Cal. Aug. 10, 2016) ........................................................ 12

*Beard v. Banks*
   548 U.S. 521 (2006) ..................................................................................................................... 8

*Blue Bottle Coffee, LLC v. Chuan Liao*
   2023 U.S. Dist. LEXIS 234802 (N.D. Cal. Nov. 30, 2023) ......................................................... 9

*City of Pomona v. SQM N. Am. Corp.*
   750 F.3d 1036 (9th Cir. 2014) ...................................................................................................... 7

*In re Conagra Foods, Inc.*
   302 F.R.D. 537 (C.D. Cal. 2014) ............................................................................................... 16

*In re ConAgra Foods, Inc.*
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................................... 18

*Daubert v. Merrell Dow Pharms., Inc.*
   509 U.S. 579 (1993) ............................................................................. 6, 7, 9, 12, 13, 15, 16, 17, 18

*Fredianelli v. Jenkins*
   931 F. Supp. 2d 1001 (N.D. Cal. 2013) ...................................................................................... 8

*General Elec. Co. v. Joiner*
   522 U.S. 136 (1997) ..................................................................................................................... 9

*H&R Block E. Enterprises, Inc. v. Intuit, Inc.*
   2013 WL 12129646 (W.D. Mo. Mar. 11, 2013) ...................................................................... 12

*Hadley v. Kellogg Sales Co.*
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .................................................................................... 18

*Hilsley v. Ocean Spray Cranberries, Inc.*
   2018 U.S. Dist. LEXIS 202679 (N.D. Cal. Nov. 29, 2018) ................................................ 13, 14

*In re KIND LLC "Healthy & All Natural" Litig.*
   627 F. Supp. 3d 269 (S.D.N.Y. 2022) ....................................................................................... 12

*Lytle v. Nutramax Labs., Inc.*
   114 F.4th 1011 (9th Cir. 2024) ............................................................................................. 7, 16

*In re Macbook Keyboard Litig.*
 2022 U.S. Dist. LEXIS (N.D. Cal. Jan. 25, 2022) .................................................................. 15

*Miller v. Fuhu, Inc.*
 2015 U.S. Dist. LEXIS 162564 (C.D. Cal. Dec. 1, 2015) .......................................... 13, 14, 16

*Miller v. Travel Guard Grp., Inc.*
 2023 U.S. Dist. LEXIS 195418 (N.D. Cal. Sept. 14, 2023) ...................................................... 9

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*
 713 F.Supp.3d 660 (N.D. Cal. 2024) (J. White) ............................................................... 7, 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
 31 F.4th 651 (9th Cir. 2022) ............................................................................................. 9, 15

*Orgain, Inc. v. N. Innovations Holding Corp.*
 2022 U.S. Dist. LEXIS 109050 (C.D. Cal. Jan. 28, 2022) ........................................................ 9

*Orshan v. Apple Inc.*
 2024 U.S. Dist. LEXIS 177689 (N.D. Cal. Sept. 30, 2024) ...................................................... 7

*P&G Pharms., Inc. v. Hoffmann-La Roche, Inc.*
 2006 U.S. Dist. LEXIS 64363 (S.D.N.Y. Sept. 6, 2006) ........................................................ 12

*Scotts Co. v. United Indus. Corp.*
 315 F.3d 264 (4th Cir. 2002) .................................................................................................. 12

*Swartz v. Dave's Killer Bread, Inc.*
 2024 U.S. Dist. LEXIS 198028 (N.D. Cal. Sept. 20, 2024) .................................................... 10

*Testone v. Barlean's Organic Oils, LLC*
 2021 U.S. Dist. LEXIS 185896 (S.D. Cal. Sept. 28, 2021) .................................................... 16

*THOIP v. Walt Disney Co.*
 690 F.Supp.2d 218 (S.D.N.Y. 2010) ........................................................................................ 9

*Townsend v. Monster Bev. Corp.*
 303 F.Supp.3d 1010 (C.D. Cal. Mar. 20, 2018) ..................................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*
 577 U.S. 442 (2016) ............................................................................................................ 9, 15

*Usler v. Vital Farms, Inc.*
 2024 U.S. Dist. LEXIS 172095 (W.D. Tex., Sept. 23, 2024) ..................................... 17, 18, 19

*Valador, Inc. v. HTC Corp.*
 242 F. Supp. 3d 448 (E.D. Va. 2017) ..................................................................................... 12

*Vans v. Walmart*
 2023 U.S. Dist. LEXIS 190515 (C.D. Cal. Oct. 11, 2023) ....................................................... 9

*Vizcarra v. Unilever U.S. Inc.*
  2023 U.S. Dist. LEXIS 38208 (N.D. Cal. Feb. 24, 2023) .................................................. 13, 14

Other Authorities

Federal Rule of Evidence 702 ................................................................................................... 6, 7, 8, 13

Federal Rule of Evidence 702(c) ............................................................................................... 6

Federal Rule of Evidence 702(d) ............................................................................................... 6

Peter Diamond and Jerry A. Hausman, Contingent Valuation: Is Some Number Better
  Than No Number?, Vol. 8. No. 4, Journal of Economic Perspectives (Fall 1994), p. 46 ....... 14

I.  **INTRODUCTION**

Unable to respond to Defendant's *Daubert* challenge on the merits, Plaintiffs spend their Opposition (Dkt. 233) (1) trying to convince the Court that he lacks authority to pull back the curtain on Dimofte's processes and opinions, (2) setting up false strawmen and responding to those rather than addressing the merits of Defendant's *Daubert* challenge, and (3) arguing that methodological and systemic survey design concerns can be addressed later in the case for, at this stage, Dimofte has done enough.  Plaintiffs are incorrect in each respect:

- Dimofte's Consumer Perceptions Survey is fatally flawed due to focalism bias.  This is a critical concern because most of Dimofte's opinions based on this survey are not supported by any direct testing and analysis.  Instead, Dimofte takes an improper inferential leap based on the defective questions.  Dimofte also did not account for the marketplace and consumer knowledge when developing this survey.

- Dimofte's Equivalent True Discount Study lacks any scientific backing or peer review and is also fatally flawed.  Apparently recognizing this, Plaintiffs argue that the study is actually a "contingent valuation," but this does not withstand scrutiny.  Plaintiffs argue that the Court lacks the ability to evaluate Dimofte's study but this is legally incorrect.  Plaintiffs also argue that any concerns with how Dimofte has performed this study so far can be sorted out later in the case, ignoring that Dimofte cannot pass the threshold test of showing this study is reliable.  *See* F.R.E. 702(c), (d).

- Dimofte's Conjoint Study does not qualify as a study at all.  Dimofte has not developed this theory, and Plaintiffs did not respond to Defendant's criticisms that neither the survey type nor the software that would be used to run it can operate when the challenged feature (discount) and price are the same attribute.  Plaintiffs again argue that these concerns go to weight and again ignore F.R.E. 702.

For these and the further reasons stated below and in Defendant's opening Motion, the Court should reject Dimofte's report and testimony in their entirety.  His opinions are fundamentally unreliable and due to be excluded under *Daubert*.[1]

---

[1] Plaintiffs make unwarranted complaints about Defendant's production of documents. (Dkt. 233, n.1.)  Defendant could not produce documents until Plaintiffs identified ESI custodians and agreed upon ESI search terms.  Defendant asked Plaintiffs for their ESI search terms on September 8, 2023 and repeatedly thereafter.  Search terms were not finalized until August 21, 2024, and that same day Plaintiffs identified ESI custodians. (Dkt. 222-4, ¶¶ 10-11.)  Within two months of obtaining this critical information from Plaintiffs, Defendant produced over one million pages of documents. (Dkt. 233, n.1.)  This feat by Defendant proves its good faith and diligence.  Plaintiffs caused the delays they complain about.

## II. LEGAL STANDARD

### A. *Daubert* At Class Certification

This Court is well-apprised of the level of rigor required in deciding a *Daubert* motion. *See, e.g., Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F.Supp.3d 660 (N.D. Cal. 2024) (J. White) (granting in part and denying in part *Daubert* motions). The Ninth Circuit's decision in *Lytle* did not change the applicable standard, but instead confirmed "that class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof ***so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial***." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) (emphasis added). While unexecuted models may have a "limited" review, that review must still be rigorous consistent with the timing of the class certification briefing: "where an expert's model has yet to be fully developed, a district court is limited at class certification to making a predictive judgment about how likely it is the expert's analysis will eventually bear fruit. ***This still requires determining whether the expert's methodology is reliable, so that a limited Daubert analysis may be necessary, but the more full-blown Daubert assessment of the results of the application of the model would be premature***." *Id.*, at 1031 (emphasis added). Not just any modeling will pass muster, either. "In applying this test to an unexecuted damages model, the question a district court must ask is whether the model will likely be able to generate common answers at trial. The fact that a model is underdeveloped may weigh against a finding that it will provide a reliable form of proof. Merely gesturing at a model or describing a general method will not suffice to meet this standard. Rather, plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case." *Id.* at 1032; accord, *Orshan v. Apple Inc.*, 2024 U.S. Dist. LEXIS 177689, *6-20 (N.D. Cal. Sept. 30, 2024) (excluding one damages model and rigorously assessing the remaining two proposed models).

### B. Evidence on a *Daubert* Motion

A motion to exclude testimony under Rule 702 and/or *Daubert* is evidentiary in nature. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (reviewing court's

evidentiary ruling under Rule 702 following evidentiary hearing on motion). Where the party opposing an evidentiary motion fails to submit any evidence rebutting evidence proffered in the motion, the fact is considered undisputed. *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1010 (N.D. Cal. 2013). A fact disputed by a party without a citation to supporting evidence will be deemed admitted. *Beard v. Banks*, 548 U.S. 521, 527 (2006). Plaintiffs submitted no evidence in connection with their opposition to the Motion. Accordingly, all evidence proffered in support of the Motion is undisputed, including the expert reports of Professors Lorin Hitt and Itamar Simonson.

### III. PROF. DIMOFTE'S OPINIONS AND SURVEYS SHOULD BE EXCLUDED

#### A. The Consumer Perception Survey Should Be Excluded

##### 1. Dimofte's Opinions Are Unreliable To The Extent They Are Not Supported By The Consumer Perception Survey He Conducted

Dimofte derives the following conclusions from his Consumer Perceptions Survey:

67(a). when shopping for consumer electronics products online, reasonable consumers understand purported advertised savings to be ***meaningful price reductions off a listed baseline reference price (i.e., what the online retailer claims to be an item's price in the absence of a sale)***;

67(b). reasonable consumers interpret ***the advertised savings*** as price reductions whether the reference price is listed ***as Web price, strike-through price or Est. Value strike-through price***.

67(c). the discount associated with consumer electronics products sold online is an ***important and therefore material consideration*** in product purchase for reasonable consumers.

68. […] Therefore, an online retailer that artificially inflates its reference prices to create false perceptions of savings ***unduly increases the purchase likelihood for these products***.

(Dkt. 200-6, ¶¶ 67-68 (emphasis added).)

None of this emphasized language was tested by Dimofte – or if it was, the survey was fundamentally flawed and therefore the results are unreliable. Dimofte's Consumer Perceptions Survey showed a series of Lenovo product images and asked whether a discount was applied; if so, the amount of it; and then he asked whether discounts are important to the respondent. (Mtn., pp. 7-8, citing Dkt. 200-6, pp. 58-59.) The survey was not designed to, and did not ask, the critical

questions that would have supported Dimofte's above-emphasized opinions; i.e., the survey (1) did not ask whether respondents understood advertised savings to be meaningful price reductions; (2) did not ask respondents to define what is a "meaningful price reduction"; (3) did not ask respondents if they understood a baseline reference price to be an item's price in the absence of a sale, or whether it could mean something else; (3) did not ask respondents to interpret the terms Web price, Est Value, or the strike-through price references; and (4) did not ask respondents whether they were more likely to purchase items with inflated reference prices. Plaintiffs ignore these gaps. (Dkt. 233, pp. 7-8.) Because Dimofte's conclusions are not the result of any study or survey, they are unreliable and should be excluded. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 676 n.22 (9th Cir. 2022), citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). There is "too great an analytical gap between the data and the opinion proffered" for his testimony to be admissible. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### 2. The Consumer Perception Survey Lacks Real-World Purchasing Conditions

Plaintiffs cannot avoid that the failure to approximate real-world marketplace conditions can be grounds for exclusion under *Daubert*. *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 U.S. Dist. LEXIS 17376, *12 (N.D. Cal. Feb. 11, 2014); *THOIP v. Walt Disney Co.*, 690 F.Supp.2d 218, 241 (S.D.N.Y. 2010). In the cases Plaintiffs cite, the deficiencies in the survey were minor and went to the weight. *See, e.g., Vans v. Walmart*, 2023 U.S. Dist. LEXIS 190515, *9-10 (C.D. Cal. Oct. 11, 2023) (defendant did not explain why the product photo did not reflect real-world conditions); *Blue Bottle Coffee, LLC v. Chuan Liao*, 2023 U.S. Dist. LEXIS 234802, *28-29 (N.D. Cal. Nov. 30, 2023) (plaintiff did not establish that its criticisms about marketplace realities rendered the survey so unreliable as to be inadmissible); *Miller v. Travel Guard Grp., Inc.*, 2023 U.S. Dist. LEXIS 195418, *14-15 (N.D. Cal. Sept. 14, 2023) (same); *Orgain, Inc. v. N. Innovations Holding Corp.*, 2022 U.S. Dist. LEXIS 109050, *17 (C.D. Cal. Jan. 28, 2022) (disregarding marketplace conditions challenge because the proposed survey was satisfactory under other controlling authority). Here, Defendant has identified flaws that are more than minor technicalities, and has explained why this matters, thereby distinguishing Plaintiffs' caselaw. (Mtn., pp. 12-13.) As

explained in the Motion, with developments in shopping tools and technologies, coupled with changes in consumer behaviors, a consumer perceptions survey should take into account and emulate the real-world shopping environment in order to derive reliable opinions. (Dkt. 222-003, ¶ 28; Dkt. 222-001, ¶¶ 31-38; accord, Hitt Reply Decl., ¶ 9.) Because Dimofte failed to do this, his survey does not reflect how consumers would behave in the real-world and therefore cannot be extrapolated to an opinion about how putative class members purchased the at-issue products.

### 3. The Consumer Perception Survey Design Is Rife With Focalism Bias

Plaintiffs have failed to substantively respond to Defendant's focalism bias argument, and instead have set up inapplicable strawmen arguments. Defendant responds to each of these while also reframing the issue for the Court.

*First*, while concerns with focalism bias may sometimes go to weight, there are instances – like here – when the bias is so pronounced that it renders the survey unreliable and subject to exclusion. For instance, in *Townsend v. Monster Bev. Corp.*, 303 F.Supp.3d 1010, 1049 (C.D. Cal. Mar. 20, 2018), the court substantively reviewed the challenged survey and determined that it suffered so significantly from focalism bias that it was rendered "useless for the purpose of determining price premiums attributable to the challenged statements." While Plaintiffs located cases that treated focalism bias as a weight issue, the bias challenges were not described, and therefore there is no basis to find that those cases control here. (Dkt. 233, p. 10, citing *Swartz v. Dave's Killer Bread, Inc.*, 2024 U.S. Dist. LEXIS 198028, *25 (N.D. Cal. Sept. 20, 2024) and *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 372 (N.D. Cal. 2018).)

*Second,* the type of focalism bias that was problematic in *Townsend* is present here. As described by the court, this bias "occurs when respondents pay more attention to a product attribute or feature in the choice exercises than they ordinarily would in the actual purchase process, thus increasing the apparent relative subjective value they assign to the attribute in the conjoint study." *Id.* While Plaintiffs argue that Defendant's challenge has no support (Dkt. 233, p. 6), in fact Defendant's expert, Simonson, explained how focalism bias rendered Dimofte's survey unreliable:

> Consider the following illustration of a focalism bias: Although the lighting at a restaurant is unlikely to be among the most important considerations for most diners when choosing a restaurant, a survey question or a conjoint exercise that focuses on

> a restaurant's lighting may produce results suggesting that lighting is a very important consideration when choosing a restaurant that will allow a restaurant to charge much higher prices. By contrast, had the same respondents been asked about a restaurant based on many of its key features such as food quality, food type, service, prices, location, and so on, lighting would have likely been rated as a much less significant factor (assuming it were even mentioned). Thus, focalism leads to an overestimation of the impact (if any) and value (if any) of the focal feature, because it focuses on that feature while misrepresenting reality where consumers tend to form evaluations based on multiple other important considerations.

(Dkt. 222-1, ¶ 51; *see also* Mtn., p. 14 (citing same).) The focalism bias is particularly pronounced and fatal to the results here because of the survey structure. Unlike other surveys that suffer from focalism bias because they omit important attributes, Dimofte's survey design here compelled respondents to concentrate solely on the price and discount of the products (*id.*, ¶ 28), by, in a three-question sequence, showing survey respondents laptop images and then asking about their pricing (Dkt. 233, p. 7). Perhaps after the first question a survey respondent would not know to focus on pricing, but certainly after the second question the survey respondent would understand the task, and after the third question, pricing and price reductions would be top of mind. Yet in a scientifically valid survey, the purpose of the survey would have been disguised. (Dkt. 222-1, ¶ 28(b).) Then, after being "primed," or focused on pricing and discounts by these three questions, survey respondents were asked, "How important is a price reduction (i.e., dollars off) in determining your likelihood of purchasing a laptop like the one you just saw?" (Dkt. 233, p. 8.) Defendant's expert Simonson described this as "extreme" focalism bias. (Dkt. 222-1, ¶ 53.) This extreme bias guaranteed that the discounted price would appear to be the only considered factor and be rated as important, making the results meaningless and entirely unreliable. (Simonson Reply Decl., ¶ 2.) While Defendant has not challenged Dimofte's general qualifications, in the context of the defects of his Consumer Perceptions Study, it is noteworthy that Dimofte did not even have a clear understanding of what focalism bias is – and thus he apparently lacks the know-how to design for/around it. (Meyer Decl., Ex. A, 110:7-17; 115:20-117:17.)

This methodological problem with the Consumer Perceptions Survey is critical because in three of Dimofte's four conclusions, he opines on the materiality or importance of discounts to survey respondents. As discussed above, he leaps from the actually tested questions to much bigger

conclusions that are not supported by the survey, and these biased questions are the foundation for his improper leap. Therefore, Dimfote testimony and his Consumer Perception Survey should be excluded.

*Finally*, Plaintiffs challenge the cases offered by Defendant to frame this Court's gatekeeping role to exclude methodologically unsound surveys. (Dkt. 233, pp. 8-9.) Plaintiffs do not challenge that each case stands for the proposition that defectively designed surveys can be excluded under *Daubert*, but instead argue that the basis for these rejections "have no bearings on Dimofte's surveys." (*Id.*) But, again, Defendant offered these cases to show that exclusion of Dimofte's defective Consumer Perceptions Survey and related opinions are supported by law. (Mtn., pp. 13-14.) Despite Plaintiffs' efforts to distinguish these cases on the facts, they cannot distinguish them for this principle. *See In re KIND LLC "Healthy & All Natural" Litig.*, 627 F. Supp. 3d 269, 287-88 (S.D.N.Y. 2022) (collecting cases where surveys were found to be improper because they were suggestive); *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 280 (4th Cir. 2002) (discussing materiality of defective survey design); *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465 (E.D. Va. 2017) (granting *Daubert* motion due to defective survey design); *In re Autozone, Inc.*, 2016 U.S. Dist. LEXIS 105746, *57-58 (N.D. Cal. Aug. 10, 2016) (explaining how low response rate when combined with an inability to validate "that the survey was reliably designed and administered," suggests defective methodology); *P&G Pharms., Inc. v. Hoffmann-La Roche, Inc.*, 2006 U.S. Dist. LEXIS 64363, *86-87 (S.D.N.Y. Sept. 6, 2006) (ruling that the persistent design flaws were "fatal to the admissibility" of the consumer survey); *H&R Block E. Enterprises, Inc. v. Intuit, Inc.*, 2013 WL 12129646, at *4 (W.D. Mo. Mar. 11, 2013) (close-ended questions upon which the survey expert relied "are leading and/or create an improper demand effect, and therefore, the questions on the survey are improper under the law").

For all of the foregoing reasons, Dimofte's Consumer Perceptions Survey and his related opinions and testimony should be excluded under *Daubert*.

B.  **The Equivalent True Discount Survey Should Be Excluded**

Plaintiffs have failed to rebut Defendant's argument that Dimofte's Equivalent True Discount survey should be excluded. In an attempt to save it, they (1) mischaracterize what the survey is, and (2) fail to show that the survey is reliable.

1.  **Dimofte's Equivalent True Discount Survey Is Not A Contingent Valuation Model**

Plaintiffs argue that the Equivalent True Discount survey is a "contingent valuation" model. (Dkt. 233, pp. 11-12.) It is no such thing. Dimofte never describes it as such (*see generally*, Dkt. 200-6; Dkt. 222-11, 129:4-130:23; Meyer Decl., Ex. B), and neither do Plaintiffs in their class certification motion (*see* Dkt. 221-001). In support of their re-characterization, Plaintiffs point to a single paragraph in Dimofte's 123-page report that uses the term "compare." (Dkt. 233, p. 11, citing Dkt. 200-6, ¶ 77.) Simply renaming Dimofte's methodology is not sufficient to satisfy *Daubert* and Rule 702. Indeed, even though contingent valuation is well-known to the courts, the methodology is regularly excluded. *See* Dkt. 233, p. 11, citing *Miller v. Fuhu, Inc.*, 2015 U.S. Dist. LEXIS 162564, *67-68 (C.D. Cal. Dec. 1, 2015) (granting *Daubert* because expert did not sufficiently develop the proposed contingent valuation survey).

The facts also prove that Dimofte did not design a contingent valuation survey. Contingent valuation is "a survey based method of estimating the value that a consumer places on an item ***by varying its features*** and having them directly report ***what they are willing to pay for it***. […] The survey asks respondents to consider a hypothetical scenario and they are then asked to ***consider new information*** to help them make a purchase decision." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 U.S. Dist. LEXIS 202679, *36 (N.D. Cal. Nov. 29, 2018) (internal quotations omitted; emphasis added); accord, Top Food and Drug Cases, 2018 & Cases to Watch, 2019, Food & Drug Law Institute[2]; *Vizcarra v. Unilever U.S. Inc.*, 2023 U.S. Dist. LEXIS 38208, *45-46 (N.D. Cal. Feb. 24, 2023) (in a false labeling case where plaintiff proposed a contingent valuation survey, showing how the expert would ask questions about willingness to pay on a product that lacked the

---

[2]  Article available at https://www.fdli.org/2019/05/hilsley-v-ocean-spray-cranberries-inc/.

challenged representation, and then a series of follow-up questions to measure respondents' sensitivity to price); *Miller*, 2015 U.S. Dist. LEXIS 162564 at *62 (describing this method as one where the expert "isolate[s] the relative values that consumers place on specific product attributes."); Simonson Reply Decl., ¶¶ 3-4 (describing how, if this were a contingent valuation survey, respondents would have been asked, "What is the highest price you would pay for X (e.g., the laptop)?"; Hitt Reply Decl., ¶ 12). Unlike what was done in *Hilsley* and *Vizcarra*, Dimofte's survey features a Lenovo workstation, and "[e]ach survey respondent was randomly exposed **to one price point** for the workstation product being evaluated. After exposure, respondents **reported their purchase probability** (in percentage terms) for the item on a slide scale anchored at 0 and 100." (Dkt. 200-6, ¶ 75 (emphasis added); *see also id.*, ¶ 100; accord, Hitt Reply Decl., ¶¶ 22-23.) Thus, respondents did not participate in a product-to-product (or discount-to-discount) comparison, they did not specify what they would be willing to pay (or the highest price they would be willing to pay) for the workstation or what level of discount they would need in order to purchase the workstation, and they were not provided with more information that could be used to measure their sensitivity to price or discount levels.[3] Thus, Dimofte did not conduct a contingent valuation survey. Unmasking this sleight of hand further, Dimofte describes his study as one that he has not found in scholarly research (Dkt. 222-11, 129:4-130:23), yet contingent valuation is a well-known, albeit discredited, method. And finally, in their motion for class certification, Plaintiffs describe how the Equivalent True Discount study compares purchase probabilities, resulting in an output that expert Tregillis can use in his damages model (Dkt. 221-001, pp. 13-14), while contingent valuation asks about the price point at which the survey respondent would purchase the product. *See, e.g. Vizcarra*, 2023 U.S. Dist. LEXIS 38208, at **44-46.

---

[3] Even if the Equivalent True Discount survey was a contingent valuation, the contingent valuation methodology has been discredited by economists. Peter Diamond and Jerry A. Hausman, Contingent Valuation: Is Some Number Better Than No Number?, Vol. 8. No. 4, Journal of Economic Perspectives (Fall 1994), p. 46 ("contingent valuation surveys do not measure the preferences they attempt to measure"); accord, Simonson Reply Decl., ¶¶ 5-6; Hitt Reply Decl., ¶¶ 13-16.

### 2.   The Equivalent True Discount Survey Lacks Empirical Support, Scientific Validation, And Is Flawed By Design

Plaintiffs argue that a *Daubert* motion is not the place to challenge methodology and that Defendant's specific methodological challenges go to weight.  They are wrong.  "Under *Daubert*, the district court judge must ensure that all admitted expert testimony is both relevant and reliable.  Scientific evidence is reliable if the principles and methodology used by an expert are grounded in science."  *Moore*, *supra*, 713 F.Supp.3d at 669 (cleaned up).  "The focus of the district court's analysis must be solely on principles and methodology … not what the experts say, but what basis they have for saying it."  *Id.*  "In conducting this analysis, the district court may consider whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential error rate is acceptable."  *Id.* (cleaned up).

Plaintiffs do not respond to, and therefore concede, that Dimofte made up the Equivalent True Discount survey from whole cloth, that it lacks the backing of economic or empirical research, and that it has never been peer reviewed.  (Mtn., p. 15.)  Neither Plaintiffs nor Dimofte establish that the survey is founded on sound principles, and it lacks such indicia.  There is no basis to conclude that the survey is reliable, and therefore there is every reason to exclude it under *Daubert*.  Defendant shows the various ways that the study lacks reliability by identifying systemwide methodological flaws such as its failure to validate that it accounts for consumer decision-making processes; its failure to account for or show how or why inflated reference prices influence purchasing decisions; and Dimofte's failure to validate his assumption that the "real discount" is always at least 10 percent.  (*Id.*, pp. 15-16.)  The failure to validate the 10 percent assumption is particularly critical because the district court plays a "gatekeeping function under *Daubert*, to ensure that [the expert's] evidence [is] not 'statistically inadequate or based on implausible assumptions.'"  *Olean, supra*, 31 F.4th at 676 n.22, citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. at 453.  These systemic defects are different than the *Daubert* challenge in *In re Macbook*, which was limited to discrete, technical inadequacies of the survey.  *See* Dkt. 233, p. 12, *citing In re Macbook Keyboard*

*Litig.*, 2022 U.S. Dist. LEXIS, *9-10 (N.D. Cal. Jan. 25, 2022).[4] Plaintiffs have failed to rehabilitate the Equivalent True Discount survey and it and Dimofte's opinions about it should be excluded.

### C. The Theoretically Proposed Conjoint Survey Should Be Excluded

Dimofte's proposed conjoint survey and his opinions with respect to it should be excluded. Plaintiffs (1) incorrectly argue they have done enough to avoid *Daubert* by simply proposing a conjoint survey, and (2) attempt to dodge Defendant's substantive challenges to the proposed model by arguing they all go to weight. (Dkt. 233, p. 15.) Plaintiffs' arguments are not persuasive.

#### 1. Plaintiffs Cannot Withstand A *Daubert* Challenge By Gesturing To Their Underdeveloped Conjoint Survey

Plaintiffs cannot simply point to Dimofte's underdeveloped conjoint survey to withstand this *Daubert* challenge. *Lytle*, *supra*, 114 F.4th at 1032 ("gesturing at a model or describing a general method will not suffice … plaintiffs—or their expert—must chart out a path to obtain all necessary data and demonstrate that the proposed method will be viable as applied to the facts of a given case."); accord, *Miller*, *supra*, 2015 U.S. Dist. LEXIS 162564, at **63, 67-68 (denying motion for class certification; even though courts have accepted contingent valuation and choice-based conjoint as reliable methods, "given the relatively undeveloped state of plaintiff's proposed survey the Court is unable, at this stage, either (a) to determine whether plaintiff's proposed methodology is sufficiently reliable to pass muster under *Daubert*; or (b) to determine whether using a survey of the type described by plaintiff could sufficiently measure damages across the entire proposed class."); *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (granting *Daubert* motion challenging conjoint and hedonic regression models; "Although the methodologies he describes may very well be capable of calculating damages in this action, Weir has made no showing that this is the case. He does not identify any variables he intends to build into the models, nor does he

---

[4] Plaintiffs also cite *Testone v. Barlean's Organic Oils, LLC*, 2021 U.S. Dist. LEXIS 185896, *11-12 (S.D. Cal. Sept. 28, 2021), but that was a denial of a motion to strike a defense expert's survey addressing the materiality of challenged claims on relevancy grounds. Here, Defendant has brought a *Daubert* motion challenging the systemic defects in the survey which preclude a finding of reliability.

identify any data presently in his possession to which the models can be applied. The court is thus left with only Weir's assurance that he can build a model to calculate damages.")

Dimofte's proposed conjoint survey is an afterthought. Of his 123-page report, his conjoint opinion is 5 pages, and most of this merely describes the theory of a conjoint survey. (Dkt. 200-6, pp. 30-34.) In the "substantive" paragraphs, Dimofte generally describes the attributes that would or would not be included in the survey (*id.*, ¶¶ 122-124, 131), the sample size/target population (*id.*, ¶¶ 126, 130), and the technology that Dimofte suggests could be used to run the survey (*id.* ¶¶ 125, 133). Dimofte **does not** identify any questions that he would ask (*id.*, ¶¶ 128, 132); **does not** chart a path showing how the information he still needs can be collected (*id.*, ¶ 127); and **does not** show that, on the facts of this case, a conjoint survey is viable. As to this latter point, Defendant identified that a conjoint survey requires that product price and attribute (here, the discount) be separate. (Mtn., pp. 17-18.) However, Dimofte's theoretical conjoint survey collapses these features into one attribute. (*Id.*, citing Dkt. 222-003, ¶¶ 108-111.) Consequently, Dimofte **cannot** use Sawtooth software to run the survey and he **cannot** use conjoint to turn purchase price probability into dollars – which means he **cannot** reliably use his theoretical conjoint survey to demonstrate damages. (*Id.*, ¶ 111; Hitt Reply Decl., ¶¶ 26-29, 31.) Plaintiffs did not respond to these criticisms.

As demonstrated in *Usler v. Vital Farms, Inc.*, Plaintiffs' failure to respond to these methodological defects is critical. 2024 U.S. Dist. LEXIS 131033 (W.D. Tex. July 9, 2024), *report and recommendation adopted by Usler v. Vital Farms, Inc.*, 2024 U.S. Dist. LEXIS 172095 (W.D. Tex., Sept. 23, 2024). There, the plaintiffs offered a survey expert (Allenby) who had "been successfully offered as an expert in many cases," and the court recognized that conjoint analysis itself has been accepted by many courts. *Id.*, at *19-20. While the court did not have concerns about the expert's qualifications generally or with conjoint analysis generally, the court was concerned about "how Allenby uses conjoint analysis **in this case**." *Id.*, at *20 (emphasis added). Allenby had never applied his methodology to the type of supply chain situation presented by the facts of the case. *Id.* He assumed that the defendant's benefit was equal to the consumer's injury, but could not show the foundation for this assumption (or for other key assumptions). *Id.* Accordingly, the court granted the defendant's *Daubert* motion, finding, "although the court

1  recognizes both Allenby's expertise and the credibility of conjoint analysis, Plaintiffs have not
2  shown here that Allenby's application of conjoint analysis is sufficiently tied to their damages
3  model." *Id.*, at *23.  The circumstances here are substantially similar.  Even if Dimofte generally
4  has knowledge about conjoint analysis and even if conjoint surveys can be accepted by the courts,
5  Plaintiffs and Dimofte have not accounted for or responded to Defendant's fundamental concerns –
6  chiefly that conjoint cannot be used here because price and discount are the same survey attribute.

### 2.   The Proposed Conjoint Survey Lacks Necessary Details

Rather than respond to the flaws identified by Defendant, Plaintiffs argue that these go to weight and can – apparently – be ignored at this stage of the case.  While this is belied by many cases, including *Usler* cited *supra,* in support of their position, Plaintiffs cite *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 953-54 (C.D. Cal. 2015).  However, in that case, the defendant challenged technical inadequacies with some aspects of the proposed models.  *Id.*, accord, Hitt Reply Decl., ¶ 25.  Here, Defendant has identified systemic problems.  As discussed in the preceding section, Plaintiffs' failure to respond to these challenges support exclusion of Dimofte's proposed survey and opinions about it.

As explained in the Motion, Dimofte argues he will conduct a "market simulation" to "test multiple real-world product configuration possibilities" in order to calculate a price premium. (Mtn., p. 18, citing Dkt. 222-003, ¶ 122.)  However, a market simulation must "adequately account for supply-side factors" by "reflect[ing] actual market prices that prevailed during the class period" and "the actual quantities of products sold during the class period." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018).  Plaintiffs (and Dimofte) have provided no specific information on how Dimofte will or could accommodate supply side characteristics in his conjoint survey.  (Dkt. 222-003, ¶ 39; accord Hitt Reply Decl., ¶ 32.)  This may be particularly difficult here – and therefore it warranted Dimofte's careful consideration to show his model could accommodate these circumstances reliably – because the three main, non-Apple brands for these types of consumer electronics are Lenovo, HP, and Dell; and Lenovo (here) and HP (in N.D. Cal. Case No. 21-cv-08015-BLF, *Carvalho v. HP, Inc.*) are being sued for the same alleged conduct.  The interaction

between competitors is a salient supply-side consideration[5], as Dimofte admits, and Plaintiffs have offered no clues as to how Dimofte would account for competitor conduct in his conjoint survey. (Meyer Decl., Ex. A, 106:11-107:5.)

Finally, and notably, Plaintiffs did not respond to any of Defendant's arguments that Dimofte failed to (1) define the number of simulations necessary to accurately calculate the price premium, raising questions about the feasibility and reliability of his methodology; or (2) detail how he would practically implement these simulations, including the integration of unique price attributes and the determination of price premiums. The conjoint survey's fundamental methodological shortcomings, coupled with its inability to reflect the comprehensive consumer decision-making landscape, show that Dimofte's opinions and conclusions regarding his proposed conjoint survey are unreliable, and therefore they must be excluded.

## IV.     CONCLUSION

For all of the foregoing reasons and the reasons stated in the Motion, Defendant respectfully requests that the Court grant the Motion.

Dated: December 20, 2024            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/ Abby H. Meyer
P. CRAIG CARDON
ABBY H. MEYER
BENJAMIN O. AIGBOBOH
ALYSSA SONES
*Attorneys for Defendant*
LENOVO (UNITED STATES) INC.

---

[5] Accord, *Usler*, 2024 U.S. Dist. LEXIS at **20 (a critical shortcoming was the failure to consider the role of other marketplace players on the supply chain).