EDGE, A PROFESSIONAL LAW
CORPORATION
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
981 Mission Street 20
San Francisco, CA 94103
Telephone: (415) 515-4809

CAPSTONE LAW APC
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Shahin Rezvani (SBN 199614)
Shahin.Rezvani@capstonelawyers.com
Majdi Y. Hijazin (pro hac vice)
Majdi.Hijazin@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>      v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>             Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br>*Assigned to the Hon. Jeffrey S. White*<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE**<br><br>Date:        May 12, 2026<br>Time:       11:00 a.m.<br>Courtroom:   Eureka-McKinleyville<br><br>Action Filed:  Aug. 31, 2021<br>FAC Filed:   Jan. 25, 2022<br>Trial Date:   None set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 12, 2026, at 11:00 a.m., or as soon thereafter as the matter can be heard, in the United States District Court located at the Eureka-McKinleyville Courthouse, 3140 Boeing Avenue, McKinleyville, California, Plaintiffs Andrew Axelrod and Eliot Burk ("Plaintiffs") will move the Court for sanctions against Lenovo and its counsel pursuant to Federal Rules of Civil Procedure 37(e)(1) and (2) and the Court's inherent authority to control the judicial process and litigation ("Motion").

This Motion is made on the grounds that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████[1] ███████████████████████████████ ████████████████████████████████. Lenovo knew the pricing data was critical to Plaintiffs' and the class members' claims, that it had a duty to preserve it, and that the data cannot be restored or replaced through additional discovery. Because Plaintiffs and the class members have been severely prejudiced by the destruction of the pricing data, and because Lenovo acted with intent to deprive them of the data's use, they are entitled to the full range of available sanctions under Rule 37(e). Moreover, in light of Lenovo and its counsel's deliberate attempts to cover up the spoliation—including by improperly invoking attorney-client privilege to withhold non-privileged documents and information—Plaintiffs are entitled to sanctions under the Court's inherent authority.

Plaintiffs seek sanctions under Federal Rules of Civil Procedure 37(e)(1) and (2) and the Court's inherent authority, including all appropriate remedial, evidentiary, issue, and case-dispositive sanctions, as well as any other relief the Court deems just. Plaintiffs seek leave to submit supplemental briefing addressing the precise sanctions to be imposed following disposition of this Motion and any related motions addressing Lenovo's broader discovery misconduct. Plaintiffs seek monetary sanctions in an amount to be determined following disposition of this Motion. *See Skyline*

---

[1] The Class Period is defined as "on or after August 13 [*sic*], 2017." Order Granting, in Part, Daubert Motions and Granting, in Part, Motion for Class Certification (dkt. 270) at 17.

*Advanced Tech. Servs. v. Shafer*, No. 19-cv-787-CRB, 2020 U.S. Dist. LEXIS 263064, at *48-49 (N.D. Cal. July 14, 2020) (Illman, J.) (finding an award of reasonable attorneys' fees and expenses warranted under Rule 37 and permitting fee motion to be submitted following final disposition).

In the alternative, Plaintiffs request leave to conduct spoliation discovery. Lenovo concealed its spoliation for over four years, and Plaintiffs did not learn about ▮▮▮▮▮▮▮▮▮▮ or the destruction of the pricing data until they received documents in November 2025, after the close of fact discovery. Those documents were produced pursuant to a third-party subpoena which Lenovo opposed on the grounds that the requested materials were irrelevant and based entirely on Plaintiffs' "self-serving assumption." *See generally* Lenovo's Opp. to Pls.' Mot. to Compel Compliance with Rule 45 Subpoena (dkt. 326-3). Lenovo's specious arguments were yet another attempt to prevent Plaintiffs from discovering the spoliation and resulted in additional unnecessary delay.

This Motion is based on this Notice and the accompanying Memorandum of Points and Authorities, the Declaration of Daniel A. Rozenblatt ("Rozenblatt Decl."), the Compendium of Evidence ("CE"), and the Proposed Order submitted concurrently herewith, all pleadings, papers and other documentary materials in the Court's file for this action, all matters of which the Court may take judicial notice, such evidence and argument as may be presented at or before the hearing on the Motion, and any other matters which the Court may properly consider.

Dated:  April 7, 2026

EDGE, A PROFESSIONAL LAW CORPORATION

By:    /s/ Daniel A. Rozenblatt
       Daniel A. Rozenblatt

       CAPSTONE LAW APC
       Cody R. Padgett
       Shahin Rezvani
       Majdi Y. Hijazin

       *Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     ISSUES TO BE DECIDED ..................................................................................2

III.    STATEMENT OF FACTS ....................................................................................2

        A.      Relevant procedural background. .............................................................2

        B.      Lenovo's long history of class litigation relating to fake discounts. .........2

                (1)     *In 2013, Lenovo faced class claims related to fake discounts.* ......2

                (2)     *In 2016, Lenovo again faced class claims related to fake discounts.* ................................................................................3

                (3)     *In 2019, Lenovo again faced class claims related to fake discounts.* ................................................................................4

        C.      ████████████████████████ ..........................5

        D.      Lenovo took affirmative steps to conceal its spoliation ███████ ████████ . ..................................................................................6

                (1)     ████████████████████████████ ████████████████ ..........................6

                (2)     *Lenovo did not disclose ████████████ ████████ in 2022.* ........................................6

                (3)     *Lenovo withheld the Atindaana Demand Letter in 2023 and failed to log it.* ..................................................................7

                (4)     *Lenovo's counsel instructed Lenovo employees not to answer questions about ████████████ in depositions in 2024.* ......7

                (5)     *Lenovo continued to withhold the Atindaana Demand Letter in 2024 and 2025.* ..............................................................9

                (6)     *Kevin Morey gave false testimony in depositions in 2025.* ........11

                (7)     *Lenovo advanced specious arguments in October 2025 ████ ████████████* ..................12

        E.      Lenovo deleted Internal Pricing Data and concealed the spoliation in discovery. ..........................................................................13

                (1)     *Lenovo failed to suspend its automatic deletion of ████████* ...............13

        (2)     *Lenovo deleted Hybris data after this lawsuit was filed.* ............................14

IV.    LEGAL STANDARD .........................................................................................................15

V.    ARGUMENT ....................................................................................................................16

    A.    The threshold spoliation requirements under Rule 37(e) are satisfied. ...................16

        (1)    *Lenovo's duty to preserve arose no later than March 2016.* .......................16

        (2)    *Lenovo* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓*, failed to preserve* ▓▓▓▓▓▓▓*, and deleted Hybris data.*......................................19

        (3)    *The lost pricing data cannot be restored or replaced.*................................21

    B.    Sanctions are warranted under Rule 37(e)(1) because Plaintiffs are prejudiced. ...................................................................................................21

    C.    Sanctions are warranted under Rule 37(e)(2) because Lenovo acted with intent.....................................................................................................22

    D.    Plaintiffs seek leave to separately brief the precise sanctions warranted. ...................................................................................................24

    E.    In the alternative, Plaintiffs seek leave to conduct spoliation discovery.................25

VI.    CONCLUSION ....................................................................................................................25

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

# TABLE OF AUTHORITIES

*CASES*

*Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139 (C.D. Cal. 2023) .................................. 19, 20

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) ......................... 17, 20

*Aviva USA Corp. v. Vazirani*, 2012 U.S. Dist. LEXIS 3069 (D. Ariz. Jan. 10, 2012)....................... 19

*Bank of the W. v. Valley Nat'l Bank*, 132 F.R.D. 250 (N.D. Cal. 1990) ........................................... 23

*Bolding v. Banner Bank*, 2020 U.S. Dist. LEXIS 90551, at *3-6, 14-15 (W.D. Wash.
    May 22, 2020) ....................................................................................................................... 18

*Beeman v. Caremark Inc.*, 322 F. Supp. 3d 1027 (C.D. Cal. 2018)..................................................... 21

*Century ML-Cable Corp. v. Carrillo Diaz*, 43 F. Supp. 2d 176 (D.P.R. 1998) ........................... 19, 20

*Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091 (9th Cir. 2024) ......................................................... 18

*Doe v. Uber Techs., Inc.*, 710 F. Supp. 3d 794 (N.D. Cal. 2024) ......................................................... 19

*Estate of Bosco v. Cty. of Sonoma*, 640 F. Supp. 3d 918 (N.D. Cal. 2022) ........................................ 23

*Fishman v. Tiger Nat. Gas, Inc.*, No. 17-cv-5351-WHA, 2018 U.S. Dist. LEXIS 198067
    (N.D. Cal. Nov. 20, 2018) ...................................................................................................... 17, 18

*Gay v. Parsons*, No. 16-cv-5998-CRB-PHK, 2024 U.S. Dist. LEXIS 167574 (N.D. Cal.
    Sep. 17, 2024)........................................................................................................................ 19

*Gross v. Scottsdale Ins. Co.*, No. 24-cv-2069-EJD-VKD, 2025 U.S. Dist. LEXIS 53151
    (N.D. Cal. Mar. 21, 2025) ...................................................................................................... 23

*hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 978 (N.D. Cal. 2022) ................................. 22

*In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................... 16, 19, 20

*In re Vaxart, Inc. Sec. Litig.*, No. 20-cv-05949-VC, 2025 U.S. Dist. LEXIS 128589
    (N.D. Cal. July 7, 2025) ......................................................................................................... 16

*IO Grp. Inc. v. GLBT Ltd.*, No. 10-cv-1282-MMC-DMR, 2011 U.S. Dist. LEXIS 120819
    (N.D. Cal. Oct. 19, 2011) ....................................................................................................... 20

*Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730 (9th Cir. 2024) ....................................................... 16, 22

*Lee v. Cty. of L.A.*, No. 23-cv-6875, 2025 U.S. Dist. LEXIS 172599 (C.D. Cal. Aug. 29,
    2025)........................................................................................................................................ 22

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ........................................................... 24

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) ....................................... 17

*Porter v. City & Cty. of S.F.*, No. 16-cv-03771-CW-DMR, 2018 U.S. Dist. LEXIS
    151349 (N.D. Cal. Sep. 5, 2018) ......................................................................................... 21

*Ramos v. Swatzell*, No. 12-cv-1089, 2017 U.S. Dist. LEXIS 103014 (C.D. Cal.
    June 5, 2017) ......................................................................................................................... 19

*Rockman Co. (USA), Inc. v. Nong Shim Co.*, 229 F. Supp. 3d 1109 (N.D. Cal. 2017)...................... 17

*Skyline Advanced Tech. Servs. v. Shafer*, No. 19-cv-787-CRB, 2020 U.S. Dist. LEXIS
    263064 (N.D. Cal. July 14, 2020) (Illman, J.)............................................................... 16, 17

*Taylor v. Null*, No. 17-cv-231, 2019 U.S. Dist. LEXIS 164133 (E.D. Mo. Sep. 25,
    2019)...................................................................................................................................... 19

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ................................................................. 23

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010) ....................................... 24

*Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA, 2018 U.S. Dist. LEXIS
    16020 (N.D. Cal. Jan. 29, 2018)........................................................................................... 16

*WeRide Corp. v. Kun Huang*, No. 18-cv-7233-EJD, 2020 U.S. Dist. LEXIS 72738
    (N.D. Cal. Apr. 16, 2020)................................................................................. 16, 17, 23, 24

**STATUTES**

16 C.F.R. § 233.1 ...................................................................................................................... 21

28 U.S.C. § 1927 ....................................................................................................................... 25

Cal. Bus. & Prof. Code § 17501................................................................................................ 3, 21

Cal. Civ. Code § 1770(a)(13) .................................................................................................... 21

Fed. R. Civ. P. 26(a)................................................................................................................... 6

Fed. R. Civ. P. 26(e)................................................................................................................... 25

Fed. R. Civ. P. 26(g)................................................................................................................... 25

Fed. R. Civ. P. 30(b)(6).............................................................................................................. 25

Fed. R. Civ. P. 37(a)–(c) ............................................................................................................ 25

Fed. R. Civ. P. 37(e)(1) ..........................................................................................................*passim*

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

Fed. R. Civ. P. 37(e)(2) ...................................................................................................*passim*

Fed. R. Civ. P. 37(f) ...............................................................................................................25

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

## I.    INTRODUCTION

For over four years—throughout this litigation—Lenovo withheld a demand letter from a class action firm sent on behalf of a consumer named Edmond Atindaana. The letter revealed that Atindaana's counsel had compiled a comprehensive database of historical prices and screenshots for thousands of products on Lenovo's website over a five-year period. That data was so damaging to Lenovo, and so critical to the class claims at issue, ████████████████████████████

Lenovo claimed the letter, because it was attached to an email from in-house counsel, revealed its counsel's thought processes, thus rendering it attorney-client privileged. But a demand letter from a third party is clearly not privileged. Lenovo's privilege assertion was a pretext to conceal evidence ████████████████████████████████████████████.

Because Lenovo refused to produce the letter, Plaintiffs had to obtain it by subpoenaing Atindaana's counsel. At the time, Plaintiffs were unaware of the letter's substance ████████ ████████████████████████████████. Lenovo ███████████████ ████████████████ told the Court the documents sought by the subpoena were irrelevant and Plaintiffs' motion to compel was ███████████████████████████████ ███████████████████████████████████████ ██████████████ *See* Lenovo's Opp. to Mot. to Compel (dkt. 326-3) at 2. ███████████████ ███████████████████████ the documents produced in response to the subpoena were not only relevant, but clear evidence of Lenovo's spoliation. ████████████████████████████████████████████ ████████████. Earlier that month, Plaintiffs also learned Lenovo had deleted the very pricing data they repeatedly sought in discovery. Lenovo concealed the deletion by telling Plaintiffs (and the Court) that the data could not be retrieved from its systems. In truth, the data was unavailable because Lenovo had both affirmatively deleted it and failed to suspend its automated deletion policy.

Lenovo spoliated pricing data it knew was critical to Plaintiffs' and the class members' claims. Then, throughout this litigation, its counsel actively concealed the spoliation, thereby preventing Plaintiffs from discovering it until after the close of discovery. Lenovo's and its counsel's misconduct has significantly delayed this case and caused Plaintiffs and the Court to

expend substantial time and resources on discovery disputes that should never have arisen. The data's destruction has profoundly prejudiced Plaintiffs and the class members. The most serious sanctions are warranted.

## II.   ISSUES TO BE DECIDED

Whether Lenovo spoliated pricing data, warranting sanctions under Rule 37(e); and whether Lenovo attempted to conceal the spoliation, warranting sanctions under the Court's inherent authority.

## III.   STATEMENT OF FACTS

### A.   Relevant procedural background.

This case concerns false reference pricing on Lenovo's website. Plaintiffs allege Lenovo artificially inflates the regular prices on its website and then advertises inflated discounts based on those prices. Plaintiffs allege this scheme induces consumers to pay more for Lenovo-branded products based on a false perception of value and misleads consumers into believing they are getting a great deal when, in reality, the advertised discounts are fictitious. *See generally* FAC (dkt. 19).

In May 2025, the Court certified two classes under Rule 23(b)(2) consisting of consumers who, from August 31, 2017 to present ("**Class Period**"), purchased laptops, desktops, workstations, or tablets on Lenovo's website ("**Class Products**"), on any day the product had been offered at a discount for a majority of the preceding 90 days ("**Class Day**"). *See* Class Cert. Order (dkt. 270) at 17.

Records of the historical prices and discounts on Lenovo's website ("**pricing data**") are central to Plaintiffs' and the class members' claims, and to class certification. Lenovo, however, failed to produce a complete set of pricing data in a reliable and usable format. As a result, Plaintiffs filed over fifteen related discovery letters, motions, and briefs in an attempt to obtain pricing data for the class products and spent hundreds of hours on meet-and-confer efforts. *See* dkts. 57, 61, 73, 98, 101, 113, 121, 126, 151, 170, 174, 177, 179, 184, 193, 198; Rozenblatt Decl. (dkt. 380-1) ¶ 2.

### B.   Lenovo's long history of class litigation relating to fake discounts.

#### (1)   In 2013, Lenovo faced class claims related to fake discounts.

In 2013, Lenovo faced class claims alleging Lenovo advertised false discounts on its website from June 2008 to August 2012. CE 2 (Lieff Cabraser Press Release).[2] Lenovo resolved those

---

[2] Plaintiffs cite the Compendium of Evidence filed concurrently herewith (dkts. 380-2, -3, -4) "CE."

claims on a classwide basis in an out-of-court settlement and agreed to change "its methodology for online consumer advertising" and pay $50 to each class member ████████████████ ████████████████. *Id.*; CE 926 (Morey 30(b)(6) Dep.).

(2)     In 2016, Lenovo again faced class claims related to fake discounts.

Despite the 2013 settlement, Lenovo continued its deceptive pricing practices and, in March 2016, faced another class action alleging fake discounts. CE 4 (Notice of Removal, ECF No. 1, *Ponce v. Lenovo* ("**Ponce**"), No. 16-cv-1000 (D. Minn.)); CE 11 (Amended Class Action Complaint, *Ponce*).

In January 2017, Lenovo settled the class claims in *Ponce* and agreed to a nationwide class action settlement. CE 94 (*Ponce* Settlement Agreement). For a second time, Lenovo agreed to pay $50 to each class member. CE 102 (*id.* ¶ 13). Lenovo also agreed to a five-year period of prospective relief which prohibited it from advertising former prices for certain products unless those prices reflected the prevailing market price during the preceding three months, or unless Lenovo disclosed when the former price had prevailed. *Id.* ¶ 11. The prospective relief language mirrored California law governing the advertisement of former prices. *See* Cal. Bus. & Prof. Code § 17501 ("**Section 17501**").

████████████████████████████████████████████████████ ████████████████████████. CE 120 ████████████████████████; CE 407 ████████████████████████████████. ████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████.

In January 2018, the district court approved the *Ponce* Settlement Agreement. CE 122 (Final Approval Order). Lenovo paid over $2 million to the class and $750,000 to class counsel. CE 128-29 (Order Granting Motion for Attorneys' Fees). As for the prospective relief, however, ████████████ ██████████████████████████████████████████ ████████████████████. CE 842-43 (Morey 30(b)(1) Dep.)

-3-                    Case No. 4:21-cv-06770-JSW-RMI

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

██████████████████████████████████████████████; CE 917-20 (Morey 30(b)(6) Dep.).[3]

(3)   In 2019, Lenovo again faced class claims related to fake discounts.

Despite the 2013 and 2018 settlements, Lenovo continued its deceptive pricing practices and was threatened with another class action. In March 2019, Lenovo received a "Pre-Lawsuit Notice of Unlawful Conduct" from a class action firm on behalf of a consumer named Edmond Atindaana. CE 133 ("**Atindaana Demand Letter**"). The letter detailed Lenovo's deceptive pricing practices and was supported by a multi-year investigation into the prices and discounts on Lenovo's website. CE 135 (*id.* at 3). As part of that investigation, Atindaana's counsel compiled "a comprehensive historical database of daily prices and screenshots of hundreds of thousands of daily offerings for thousands of products ("**Atindaana Pricing Data**"). *Id.* The data revealed that the majority of Lenovo's products were never offered at the "regular" price, and "the huge majority of the time [Lenovo's] advertised discounts were false and misleading." *Id.* Atindaana threatened to file a class action unless Lenovo agreed to cease its deceptive practices and compensate consumers. CE 139 (*id.* at 7).



████████████████████████████████████████████████████

████. CE 143 (Email from R. Bennett, 4/23/19). ████████████████

████████████████████████████████████████████████████

██████████████████████ CE 145 ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ CE 145-46 (*id.* at 1-2).

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ CE 157-59 (Emails to J. Silver, 8/2/19); CE 324 (Email from D. Palko, 8/13/19). ████████████████████████

[3] Mr. Morey testified ████████████████████████████████████ ████████████████████████████████████████████████████ *Id.*; CE 936 (*id.*, Ex.164); CE 944 (*id.*, Ex. 165). ██████████████████ ████████████████████████████████████████ *See* CE 520 (Skype chat from K. Morey, 4/18/2022) ████████████████████ ████████████████████████████████████

CE 390 (Email to J. Silver, 8/21/19).

CE 328 .

On February 1, 2020, . CE 465 (Email from D. Hattis, 2/1/2020).

*Id.*

CE 415-21

**C.**

Three days later, on February 4, 2020,

. CE 472 .

*Id.*

CE 472-73 (*id.* ¶ 7).

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

CE 485 ███████████████████ ████████████████

███████████████ *Id.*

**D.      Lenovo took affirmative steps to conceal its spoliation** ██████████████.

(1)    ██████████████████████
███████████████

█████████████████████
████████ CE 472 ████████████. ██████████████
█████████████████████
████████████████████████████
████████ CE 495 (Email from J. Silver, 2/16/20). Lenovo's counsel explained:

██████████████████
████████████████
████████████████
████████████████
████████████████
████████████████
████████████████
████████████████
████████████████
███████████

*Id.* (emphasis added). To further conceal ███████████████
████████████████████████
██████████████ *Id.* (emphasis added).

(2)    <u>Lenovo did not disclose</u> ████████████████ in 2022.

Lenovo continued to conceal the spoliation in this litigation. At the outset, Lenovo failed to disclose ████████████████████████ as required by Rule 26(a)(1). CE 513 (Lenovo's Initial Disclosures, 2/25/22). Two years later, Lenovo again failed to disclose ████████ as likely to be in possession of relevant records, as required by the Court's Order (dkt. 162) regarding production of ESI. *See* CE 633 (Lenovo's ESI Disclosures). As



discussed above, Lenovo's counsel ▌▌▌▌▌▌▌▌ (Jay Silver, Ray Bennett,[4] and David Palko) ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. CE 172-321 ▌▌▌ ▌▌▌▌▌▌. Lenovo never disclosed ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

(3)    Lenovo withheld the Atindaana Demand Letter in 2023 and failed to log it.

Lenovo also withheld the Atindaana Demand Letter, which reveals the existence of the Atindaana Pricing Data ▌▌▌▌▌▌▌▌▌▌▌▌.

On June 8, 2023, Lenovo produced its first set of documents, including ▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌ Rozenblatt Decl. ¶ 4. ▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌ *Id.* Lenovo's production thus created the impression that it had complied with Plaintiffs' requests for documents relating to consumer pricing complaints during the Class Period. *See* CE 533 (RFP Nos. 18, 22). Lenovo, however, did not produce the Atindaana Demand Letter, even though it fell within the stated time period ▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌. Rozenblatt Decl. ¶ 4.

Lenovo also failed to log the Atindaana Demand Letter on its privilege log, preventing Plaintiffs from challenging its withholding or discovering its existence. CE 631 (Privilege Log, 1/2/24).

(4)    Lenovo's counsel instructed Lenovo employees not to answer questions about ▌▌▌▌▌▌ in depositions in 2024.

Lenovo also invoked attorney-client privilege during depositions to block testimony ▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌, which would have led to the discovery of the spoliation. ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌ CE 624 (Supp. Resp. to ROG No. 20). ▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

---

[4] Ray Bennett currently serves as Lenovo's Executive Director for Global Litigation. https://www.linkedin.com/in/ray-bennett (last visited Apr. 2, 2026).

-7-                    Case No. 4:21-cv-06770-JSW-RMI

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

██████████████████████████ [5] Plaintiffs accordingly had no reason to suspect ████████ ██████████████████ when they took the depositions of Lenovo employees in March 2024.

During those depositions, each employee testified they never communicated with counsel regarding ██████████████. Yet, when asked about ███████████████, Lenovo's counsel objected on attorney-client privilege grounds and instructed them not to answer. Lenovo asserted privilege over any *information* that came "directly or indirectly" from counsel (or "derived" from counsel) and instructed the deponents to answer only if they had "independent knowledge" or an "independent basis." Lenovo's aggressive privilege assertions prevented Plaintiffs from discovering ██████████████████████, which would have led them to the spoliation.

For example, Susan Lowerre, a merchandising manager, testified that all her information ██████████████████████ came through category managers. CE 664, 670-71 (Lowerre Dep.). Lenovo's counsel nevertheless repeatedly instructed her not to answer questions regarding ████████:

> **Q.** What is your understanding of ████████████████████?
>
> **MS. MEYER**:  Again, hold on. Interposing an objection that if your knowledge or understanding is based off of information obtained from counsel, in-house counsel, outside counsel for Lenovo, then I would instruct the witness not to answer. If you have an independent basis for this, you may answer as that independent basis only.

CE 663-64 (*id.*); *see also* CE 662, 663, 666, 668, 668-69, 669, 671, 671-72, 672 (*id.*).

Jimmy Plater, a category manager, similarly testified all his information about █████████ ████████ came from his manager, and that he had never communicated with counsel regarding pricing and promotions. CE 686, 697-701 (Plater Dep.). Despite this, Lenovo's counsel repeatedly instructed him not to answer questions regarding █████████████:

> **Q.** Are you familiar with ████████████████████████████ ████████████████████████████?
>
> **MS. MEYER**:  I'm going to interpose an objection. If you have knowledge or information on this topic that's derived from communications with in-house or -- in-house counsel or outside counsel, I instruct you not to answer. If you have information separate and apart from these sources, you may answer.

CE 678-79 (*id.*); *see also* CE 683, 684, 685, 686, 687, 689, 690, 692, 693, 695, 697, 699, 701 (*id.*).

---

[5] Category managers Steve St. Amant and Jimmy Plater were unable to identify any documents ████████████████████████. CE 651-52 (St. Amant Dep.); CE 691 (Plater Dep.).

Steven St. Amant, another category manager, testified he did not work or communicate with legal, was instructed ██████ by management, and during his 18 years at Lenovo, interacted with counsel only in preparation for his deposition. CE 640-46 (St. Amant Dep.). Yet, when Plaintiffs asked Mr. St. Amant about ████████████, Lenovo's counsel instructed him not to answer:

> **Q.** Is there a reason why ████████████████████████████?
>
> **MR. CARDON**: Objection; same instruction as to privilege. Do not disclose any information which came either directly *or indirectly* to you through counsel.

CE 646 (*id.*) (emphasis added); *see also* CE 644, 649-50 (*id.*).

Plaintiffs later learned Mr. St. Amant and Mr. Plater knew ████████████████ ████████████████████████████████████████ ████████████████. *See infra* III.D(6). Lenovo's counsel prevented Plaintiffs from discovering this *information* by claiming it was privileged because it came *indirectly* from counsel.

(5)    Lenovo continued to withhold the Atindaana Demand Letter in 2024 and 2025.

Lenovo continued to withhold the Atindaana Demand Letter in 2024 and 2025. In November 2024, Lenovo made its first production pursuant to the ESI protocol and dumped over 1.6 million pages of documents on Plaintiffs just three weeks before their Reply in Support of Class Certification was due. Rozenblatt Decl. ¶ 6. Although the Atindaana Demand Letter was responsive to the agreed-upon ESI search terms, Lenovo withheld it and did not provide a privilege log for over six months, despite repeated requests from Plaintiffs. *See* CE 705-15 (requesting Lenovo produce a privilege log on 10/29/2024, 1/7/2025, 1/21/2025, 3/5/2025, 3/12/2025, 3/13/2025, 3/28/2025, 4/2/2025, and 5/19/2025).

Lenovo's counsel justified the delay by claiming a privilege log would "require[] manual review of each document" in order to provide appropriate descriptions. CE 707 (Email from A. Meyer, 3/31/25). Despite the delay, Lenovo's counsel did not conduct such a review or provide appropriate descriptions. Instead, on May 22, 2025, Lenovo produced only a metadata export for the 1,443 documents it was withholding.[6] CE 717 (Privilege Log, 5/22/25). Such a privilege log should take days, not months, to produce.

---

[6] Even then, Lenovo did not provide metadata or identify counsel for hundreds of entries. *See* CE 800-801 (Letter from D. Rozenblatt, 6/2/25).

Despite the deficiencies, several entries in Lenovo's privilege log indicated Lenovo was improperly withholding documents. Representative entries are excerpted below:

| Privilege ID | Parent Date | Author | Custodians | DocType | File Extension | Description | Privilege |
|---|---|---|---|---|---|---|---|
| 0404 | 5/22/2019 | Jill Auer <jauer@lenovo.com> | Morey, Kevin; O'Neill, Melissa | Microsoft Outlook Note | eMail | Request from Legal: Information for Atindaana Consumer Pricing Claim (Confidential & Privileged) | Attorney Client and Attorney Work Product |
| 0405 | 5/22/2019 | | Morey, Kevin; O'Neill, Melissa | Portable Document Format | pdf | Hattis & Lukacs March 22 Consumer Demand.pdf | Attorney Client and Attorney Work Product |
| 0594 | 10/24/2019 | Kevin Morey <kmorey@lenovo.com> | Morey, Kevin | Microsoft Outlook Note | eMail | RE: In Person Atindaana Task Force Meeting - Availability Thursday | Attorney Client and Attorney Work Product |
| 0599 | 11/5/2019 | Carlo Savino <csavino@lenovo.com> | Morey, Kevin | Microsoft Outlook Note | eMail | FW: Atindaana Class Action | Attorney Client |
| 0650 | 11/21/2019 | Lenovo | Morey, Kevin | Microsoft 2007 PowerPoint Presentation | pptx | Atindaana - Web Pricing Strategies for Discussion.pptx | Attorney Client and Attorney Work Product |
| 0719 | 2/10/2020 | bbrowning | Morey, Kevin | Portable Document Format | pdf | Ex. A - Draft Atindaana Settlement Agreement.pdf | Attorney Client and Attorney Work Product |

*Id.* These excerpts show, on May 22, 2019, Lenovo's legal team sought information regarding a consumer pricing claim from Atindaana and circulated a "March 22 Consumer Demand" from Hattis & Lukacs—a firm with experience bringing deceptive pricing class actions.[7] Plaintiffs later discovered the "March 22 Consumer Demand" Lenovo claimed was privileged was the Atindaana Demand Letter. *See* CE 133 (Atindaana Demand Letter) (bearing the same date, March 22, 2019).

Plaintiffs challenged Lenovo's privilege claim over the demand letter, but Lenovo maintained it was privileged because it was attached to an email from counsel and thus could "demonstrate an attorneys' [*sic*] thought processes." CE 808-809 (Email from A. Meyer, 6/11/25); CE 808 (Email from D. Rozenblatt, 6/12/25); Pls.' Opp. to Stay Discovery (dkt. 278) at 1 ("Lenovo maintains . . . the Hattis & Lukacs letter is privileged because it is attached to an email from in-house counsel and thus demonstrates counsel's thought process—despite being drafted by Hattis & Lukacs and containing no confidential legal advice."); *see also* CE 802 (Letter from D. Rozenblatt, 6/2/25) (challenging Lenovo's withholding of "Hattis & Lukacs March 22 Consumer Demand.pdf").

Plaintiffs also served discovery seeking production of the letter and Lenovo's admission it ██████████████████████████████████. Lenovo again invoked attorney-client privilege and refused to produce the letter or respond to Plaintiffs' requests for admission. *See, e.g.*, CE 835 (Resp. to RFA No. 19) ("[Lenovo's] pricing policies and decisions have been determined

[7] *See* https://www.hattislaw.com (last visited Apr. 2, 2026) ("Fake Discounts | Retailers who advertise fake discounts are violating the law. A product is not 'On Sale' if it is *always* 'On Sale.'")

based on advice of counsel. Privileged information is not discoverable under Rule 26."); CE 818 (Resp. to RFP No. 104) (asserting privilege over ██████████████████████).

(6)   Kevin Morey gave false testimony in depositions in 2025.

To further conceal the spoliation, Kevin Morey, Lenovo's Executive Director of eCommerce and 30(b)(6) designee, falsely testified during his depositions in July and November 2025.

In July 2025, ███████████████████████████████████████████████ ████████████████. CE 844-46 (Morey 30(b)(1) Dep.). But Lenovo's privilege log shows otherwise: Mr. Morey received the Atindaana Demand Letter, participated in the "Atindaana Task Force," was included on numerous emails regarding the "Atindaana Consumer Pricing Claim," the "Atindaana Class Action," and "Atindaana - Web Pricing Strategies," and received a copy of Exhibit A to the settlement agreement. CE 717 (Privilege Log, 5/22/25) Priv. IDs 404, 405, 406, 419, 448, 449, 450, 451, 452, 453, 456, 457, 496, 497, 591, 592, 594, 595, 596, 599, 650, 652, 719, and 1165.

Mr. Morey's own communications also contradict his testimony. In discussing the implications of ██████████████, he relayed to Carlos Savino, Lenovo's Vice President of eCommerce, ██████████████████████████████████ CE 154 (Skype chat from K. Morey, 7/22/19). And in explaining ████████████████████████ ██████, he told Craig Taylor, Director of Consumer Segment for Lenovo Canada,██████████ ██████████████████████████ CE 504 (Email from K. Morey, 6/9/2020). When asked whether █████████████████████, he told the category managers—including Messrs. St. Amant and Plater—██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ CE 506 (Email from K. Morey, 7/7/21). Mr. Morey's communications show ██████████████ ████████████████████████████████████ ████████████████████████████. They also show Messrs. St. Amant and Plater were aware ██████████████, which explains why Lenovo's counsel instructed them not to answer questions at their depositions. *See supra* III.D(4).

Mr. Morey also falsely testified as a 30(b)(6) witness. He testified ████████████████████

-11-   Case No. 4:21-cv-06770-JSW-RMI

. CE 928, 931 (Morey 30(b)(6) Dep.). But that is plainly false. *See* CE 479 *compare* CE 485 (*id.*, Ex. A) *with* CE 624 (Supp. Resp. to ROG No. 20) (admitting . Mr. Morey's communications, *supra*, show , and Lenovo's privilege log shows . CE 717 (Privilege Log, 5/22/25) Priv. IDs 701-702, 704-705, 718-20, 755, 776-83, 907-908, 950.

The deposition record further shows Lenovo's counsel, Mr. Cardon, coached Mr. Morey to prevent disclosure of the spoliation. For example, when asked , Mr. Cardon instructed: "if your understanding of that answer only comes from an analysis by the lawyers, don't disclose that." CE 929 (Morey 30(b)(6) Dep.). Mr. Morey then responded, "I have no other understanding other than the conversations that occurred between the business and the lawyers." CE 929-30. When asked whether , Mr. Morey initially responded, "Again, that would be information with the attorneys ," but then Mr. Cardon gave a different instruction: "this is not a legal analysis issue so you're free to disclose whatever you know *or don't know* about this issue." CE 930 (emphasis added). Following the cue, Mr. Morey changed his answer to "I do not know the answer to that question." *Id.* When asked whether , Mr. Cardon reverted back to his privilege cue, instructing "because that does call for a legal analysis. To the extent that you have an understanding of that that came from the legal analysis of counsel, do not disclose that." CE 930-31. Following the cue, Mr. Morey responded, "My only understanding of that would have come through conversations with legal counsel." CE 930.

(7)   Lenovo advanced specious arguments in October 2025 .

Because Lenovo refused to produce non-privileged documents , Plaintiffs subpoenaed Atindaana's counsel. Lenovo opposed the subpoena, asserting it



did not seek relevant documents and contending Plaintiffs' motion to compel was "entirely based on speculation" and ███████████████████████████████████ ████████████████████████████████████████ *See generally* Lenovo's Opp. to Mot. to Compel (dkt. 326-3).

███████████████████████████████ ████████████████████████████████ Furthermore, the documents responsive to the subpoena are highly relevant to this litigation and go directly to Lenovo's liability—something Lenovo and its counsel also knew. *See, e.g.*, CE 172-321 (Price History Charts).

**E.      Lenovo deleted Internal Pricing Data and concealed the spoliation in discovery.**

███████████████████████████████████████████ ████████ During that same month, Plaintiffs also learned Lenovo failed to preserve ██████ ████████████ the actual prices and discounts displayed on Lenovo's website during the Class Period, and had taken affirmative steps to delete data reflecting the purported "savings" promised to class members at the time of their respective purchases ("**Internal Pricing Data**").

(1)      Lenovo failed to suspend its automatic deletion of ████████

During the Class Period, Lenovo used two web platforms to control the prices and discounts displayed on its website—Hybris and Flash. CE 860-61, 868-69, 875 (Casimir 30(b)(6) Dep.); CE 958, 971, 973 (Poneleit 30(b)(6) Dep.). Lenovo used Hybris until July 2021, when it migrated to Flash, the web platform it still uses. CE 633 (Lenovo's ESI Disclosures); CE 859 (Casimir 30(b)(6) Dep.).

To set prices and discounts on Lenovo's website, █████████████████████████ █████████████████████████████. CE 962-66, 969-71, 973-74, 977 (Poneleit 30(b)(6) Dep.). ████████████████████████████████████ ████████████████████████ *Id.*; CE 983-84 (*id.*, Ex. 183) (showing how █████████████████████); CE 860-61, 864 (Casimir 30(b)(6) Dep.); *see also* CE 888 (*id.*, Ex. 148) (export of ████████); CE 894-96 (*id.*, Ex. 149) (example of ████████). Because ████████████████████████████████████████, when Lenovo's ███████████████████████████████████ ████████, it specifically requested ████████████████ CE 898 (*id.*, Ex. 155).



Plaintiffs learned in November 2025 that Lenovo had been spoliating ▮▮▮▮ throughout this litigation. Lenovo's 30(b)(6) witness testified the ▮▮▮▮ have a retention period of only two years, after which they are discarded and no longer retained. CE 864-65 (*id.*); *see also* CE 862 (*id.*) ("does that price information get deleted?" [...] "that information would be present for two years."), 865 ("Do you know if Lenovo's made any backups of ▮▮▮▮?" "No, I don't know."). When Plaintiffs asked whether Lenovo took any steps to preserve ▮▮▮▮ beyond two years, Lenovo's counsel invoked attorney-client privilege to prevent inquiry into the spoliation. CE 863 (*id.*) (Mr. Cardon: "Va- -- vague and ambiguous. I will instruct the witness not to disclose any information on that topic that you may have learned from counsel.").

(2)    <u>Lenovo deleted Hybris data after this lawsuit was filed.</u>

The promised discounts were also memorialized in purchase confirmation emails Lenovo sent to customers after they placed an order, where they appeared as the "CouponSaved" amount:

| | |
|---|---|
| Sub total: | $949.99 |
| Tax : | $80.75 |
| Recycling Fee : | $4.00 |
| CouponSaved: | $1,329.01 |
| Shipping Fees: | FREE |
| Total: | $1,034.74 |

*See* Compl. (dkt. 1) ¶¶ 83, 96. Even before filing suit, Plaintiffs notified Lenovo of the importance of the CouponSaved data on July 20, 2021 in a CLRA letter. *See* CE 509 ("Lenovo reinforces this false sense of savings and value by telling customers exactly how much they 'saved' in the Order Summary that Lenovo provides after an order is placed."). Plaintiffs reiterated the data's importance throughout their complaint (dkt. 1, ¶¶ 33, 83, 96, 111, 114, 197), indicated their intent to obtain it in discovery (*see* Joint Case Mgmt. Stmt. (dkt. 27) at 8-9, n.1), and specifically requested it be produced (CE 531 (RFP No. 5)).

In June 2023, Lenovo produced its first set of documents and data but refused to produce the CouponSaved data, forcing Plaintiffs to engage in a months-long meet-and-confer process. In multiple conferrals and correspondence, Plaintiffs repeatedly requested the data and explained that it was available because Lenovo includes it in email confirmations sent to class members. *See* CE 539 (Letter from C. Padgett, 6/23/23); CE 550 (Letter from C. Padgett, 8/9/23); CE 564 (Email from D. Rozenblatt, 9/8/23); CE 566 (Email from C. Padgett, 9/22/23); CE 572 (Email from C. Padgett, 10/3/23). Lenovo, however, refused to produce the data.

In a final effort to avoid court intervention, Plaintiffs met with Lenovo's counsel again on October 6, 2023. During that meeting, Lenovo's counsel, Ms. Meyer, asserted Lenovo could not produce "actual emails" because no such repository exists. Rozenblatt Decl. ¶ 5. But Plaintiffs never requested actual emails—only the *data* contained within them. *Id.* Ms. Meyer continued to assert confusion, prompting Plaintiffs to follow up in writing: "To be clear, we are not seeking actual copies of any email confirmations. We are seeking data contained within those email confirmations." CE 579 (Email from C. Padgett, 10/6/23). Five days later, Lenovo offered a new explanation for its refusal to produce the data: "With respect to sales that occurred prior to the transition to [Flash], there is no information from the confirmation emails available except for what was actually charged to the customer, as well as the discount/coupon code used (if any)." CE 581 (Email from A. Sones, 10/11/23). According to Lenovo's counsel, the CouponSaved data could not be "pulled" from Hybris. *Id.*

Plaintiffs later learned the CouponSaved data was indeed available in Hybris, but it could not be retrieved because Lenovo had deleted it after this lawsuit was filed in August 2021. Lenovo's 30(b)(6) witness testified that after transitioning to Flash in July 2021, Lenovo maintained Hybris data for nine months to three years, but then dismantled Hybris without backing up the data. *See* CE 869 (Casimir 30(b)(6) Dep.) ("Was there a backup of the data?" "The data from Hybris was maintained and then it was dismantled"), 869-70 ("how long was it maintained for?" [...] "I can't tell you accurately, but it's -- I know that we don't have that. That Hybris data is not available or backed up now"), 877 ("where is this data stored" [...] "We no longer have Hybris data"). That Hybris data included the "CouponSaved" data Plaintiffs sought in discovery. *See, e.g.*, CE 878-79 (*id.*) ("What does [COUPONSAVEDAMOUNT] represent?" "The total savings attributed to coupons"). For months, Lenovo stonewalled Plaintiffs' attempts to obtain this data, then misled Plaintiffs about the reason it could not be retrieved. In fact, the CouponSaved data was available in Hybris, but Lenovo deleted it. *See* CE 885 (*id.*, Ex. 145) (showing "COUPONSAVED" data fields in Hybris).

## IV.   LEGAL STANDARD

Rule 37(e) authorizes the Court to sanction a party for spoliation upon a showing that a party had a duty to preserve electronically stored information ("ESI"), failed to take reasonable steps to

preserve it, and the lost ESI cannot be restored or replaced through additional discovery.[8] Fed. R. Civ. P. 37(e). Once a party makes this threshold showing, the rule contemplates two levels of sanctions. *In re Vaxart, Inc. Sec. Litig.*, No. 20-cv-05949-VC, 2025 U.S. Dist. LEXIS 128589, at *19 (N.D. Cal. July 7, 2025). "If the district court finds the loss prejudicial, it 'may order measures no greater than necessary to cure the prejudice.'" *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (quoting Fed. R. Civ. P. 37(e)(1)). But, if the court finds the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," the Court may issue more severe sanctions—including terminating sanctions. Fed. R. Civ. P. 37(e)(2). Courts in this district apply the preponderance of the evidence standard to spoliation motions. *WeRide Corp. v. Kun Huang*, No. 18-cv-7233-EJD, 2020 U.S. Dist. LEXIS 72738, at *32-33 (N.D. Cal. Apr. 16, 2020) (collecting cases). In resolving such motions, courts make factual findings and assess the credibility of witnesses. *Id.*

## V.    ARGUMENT

### A.    The threshold spoliation requirements under Rule 37(e) are satisfied.

The threshold requirements under Rule 37(e) are easily satisfied. Lenovo foresaw class litigation related to its pricing practices and understood the relevance of the pricing data. Yet rather than preserve the data, Lenovo took steps to destroy it, and it cannot be restored or replaced.

#### (1)    Lenovo's duty to preserve arose no later than March 2016.

"The duty to preserve documents attaches 'when a party should have known that the evidence may be relevant to future litigation.'" *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citation omitted). "'This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation.'" *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-939-WHA, 2018 U.S. Dist. LEXIS 16020, at *50-51 (N.D. Cal. Jan. 29, 2018) (quoting

---

[8] Because the pricing data was stored in electronic format, Plaintiffs seek sanctions under Rule 37(e), which precludes invocation of the Court's inherent authority for spoliation of ESI. *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024). Plaintiffs rely on the Court's inherent authority for sanctions for Lenovo's related litigation misconduct. *See Skyline Advanced Tech. Servs. v. Shafer*, No. 19-cv-787-CRB, 2020 U.S. Dist. LEXIS 263064, at *30 (N.D. Cal. July 14, 2020) (Illman, J.) ("[I]t is well established that federal courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.") (internal quotation marks and citations omitted).

*Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). The standard is "not so inflexible as to require that litigation be 'imminent, or probable without significant contingencies.'" *Id.* The duty "is triggered once a potential claim is identified," *Skyline Advanced Tech. Servs.*, 2020 U.S. Dist. LEXIS 263064, at *31, and "may arise even before litigation is formally commenced," *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012). *See also WeRide Corp.*, 2020 U.S. Dist. LEXIS 72738, at *52 ("[T]he duty may arise 'before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.'").

The duty to preserve applies with equal force to class claims. In *Fishman v. Tiger Nat. Gas, Inc.*, the Court held the duty to preserve class evidence arose when the defendant received a demand letter alleging it made misrepresentations during telemarketing calls that "were typical of other consumers." No. 17-cv-5351-WHA, 2018 U.S. Dist. LEXIS 198067, at *4-5 (N.D. Cal. Nov. 20, 2018). Although the complaint was filed more than a year later, the Court explained "[a] reasonable party in Tiger's position would have foreseen putative class litigation," and a duty to preserve recordings of the calls made to putative class members existed. *Id.* at *9-10. The Court in *Rockman Co. (USA), Inc. v. Nong Shim Co.*, also recognized prior litigation creates an ongoing duty to preserve evidence that would be required by similarly situated individuals in reasonably foreseeable lawsuits. 229 F. Supp. 3d 1109, 1124 (N.D. Cal. 2017) (discussing cases).

Under these standards, Lenovo's duty to preserve arose no later than March 16, 2016, when it was served with a class action lawsuit alleging the same deceptive pricing scheme at issue here. *See* CE 11 (Class Action Compl. ¶ 1, *Ponce*). The *Ponce* complaint alleged Lenovo resumed advertising the same fake discounts it promised to stop advertising in connection with the 2013 settlement. CE 11-12 (*id.* ¶ 2). The class claims in *Ponce*, like the class claims here, rely on the historical prices and discounts advertised on Lenovo's website. *See, e.g.*, CE 18-19, 20-22 (*id.* ¶¶ 21-24, 28-32).

Lenovo's duty to preserve pricing data did not terminate on entry of judgment in *Ponce*. In granting final approval of the class settlement, the district court expressly referenced the prospective relief and retained jurisdiction to enforce it. CE 124, 126 (Final Approval Order ¶¶ 5, 11, *Ponce*). That prospective relief barred Lenovo from advertising a former price unless it was the prevailing market price during the preceding three months. *See supra* III.B(2). Without historical pricing data, the

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

district court would be unable to assess compliance. Lenovo's duty to preserve therefore continued until the end of the five-year prospective relief period, which did not conclude until January 7, 2023.[9]

Moreover, because the *Ponce* prospective relief imposed specific limitations on the discounts Lenovo could advertise, ███████████████████████████████ ████████, *see supra* III.B(2), a reasonable party in Lenovo's position would have foreseen future class litigation concerning its pricing practices (which is precisely what occurred). *See Fishman*, 2018 U.S. Dist. LEXIS 198067 at *9 (finding duty where a reasonable party in the defendant's position would have foreseen putative class litigation).

Lenovo's duty to preserve was reinforced in March 2019 when Lenovo received the Atindaana Demand Letter, alleging a "massive false discount advertising scheme" and threatening to file a class action. CE 133 (Atindaana Demand Letter); *see also Fishman*, 2018 U.S. Dist. LEXIS 198067 at *11 (duty arose where demand letter referenced potential class action). Here, Lenovo's preservation duty was even clearer than the defendant's duty in *Fishman*, having received express notice the pricing data was both relevant to and probative of its classwide liability.

Lenovo clearly foresaw putative class litigation after receiving the Atindaana Demand Letter. Within three months, █████████████████████████████████ ████████████████████████████████████ ██████████████████████████████ ██████ CE 145 ████████████████████ Thereafter, Lenovo's counsel ████████████████████████████████████ ██████████████████████████████ *See supra* III.B(3). Lenovo was thus on unmistakable notice of foreseeable class litigation and the central role pricing data would play therein, triggering a clear duty to preserve such evidence.[10] *See Defries v. Union*

---

[9] The *Ponce* prospective relief began on January 8, 2018, the date of the Final Approval Order. *See* CE 96 (*Ponce* Settlement Agreement ¶¶ 1.n); CE 122 (Final Approval Order, *Ponce*).

[10] ████████████████████████████████████ ████████. The duty to preserve class evidence does not depend on whether the first individual to allege a class claim ultimately pursues it. *See Bolding v. Banner Bank*, 2020 U.S. Dist. LEXIS 90551, at *3-6, 14-15 (W.D. Wash. May 22, 2020) (finding duty to preserve arose upon notice of a potential class claim, even though no suit was filed and the later action was brought by different plaintiffs).

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

*Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024) (cleaned up) ("Alerted by the complaint, a class action defendant has the essential information necessary . . . to become aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class.'").

          (2)      <u>Lenovo ████████████████████████, failed to preserve ████ ████████, and deleted Hybris data.</u>

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster*, 462 F. Supp. 2d at 1067. Rule 37(e) requires parties take "reasonable steps" to preserve relevant ESI. Fed. R. Civ. P. 37(e). This includes the obligation to "identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation" and suspend routine document retention/destruction policies to ensure the preservation of relevant documents. *Doe v. Uber Techs., Inc.*, 710 F. Supp. 3d 794, 801 (N.D. Cal. 2024) (internal citations and quotation marks omitted).

Spoliation also includes affirmative procurement of destruction, including directing or arranging for a third party to destroy relevant ESI. *See, e.g.*, *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1148 (C.D. Cal. 2023) (spoliation where defendants directed third-party vendor to destroy relevant ESI); *Century ML-Cable Corp. v. Carrillo Diaz*, 43 F. Supp. 2d 176, 181 (D.P.R. 1998) (spoliation where defendant intentionally arranged for destruction of evidence). Consistent with this principle, courts routinely hold spoliation by a third party may be imputed to a defendant where the defendant had a duty to preserve and acted with a "culpable state of mind" in failing to prevent the third party from destroying evidence. *Gay v. Parsons*, No. 16-cv-5998-CRB-PHK, 2024 U.S. Dist. LEXIS 167574, at *20 (N.D. Cal. Sep. 17, 2024); *see also Taylor v. Null*, No. 17-cv-231, 2019 U.S. Dist. LEXIS 164133, at *18-19 (E.D. Mo. Sep. 25, 2019) (imputing spoliation to defendants who did not control the evidence but failed to request its preservation); *Ramos v. Swatzell*, No. 12-cv-1089, 2017 U.S. Dist. LEXIS 103014, at *19-21 (C.D. Cal. June 5, 2017) (imputing spoliation onto defendant not involved in the spoliation but not "blameless" either). As one district court explained: "It would be a perversion of justice to allow Defendants to claim they are not personally responsible for the destruction of relevant evidence when third parties were acting at their behest." *Aviva USA Corp. v. Vazirani*, 2012 U.S. Dist. LEXIS 3069, at *19 (D. Ariz. Jan. 10, 2012).

Lenovo violated its duty to preserve in two distinct ways.

See supra III.C.

Lenovo had a duty to preserve and acted with a culpable state of mind when The record leaves no doubt CE 487 2/18/20); CE 499 (Email from J. Silver, 4/29/2020) ; CE 502 ( , 5/23/20).

*Second*, Lenovo failed to take reasonable steps to preserve its Internal Pricing Data. Courts routinely find spoliation where a party continues automated deletion practices after its preservation duty has arisen. For example, in *In re Napster*, the Court held even if there existed long standing deletion policies, the spoliating party was required to suspend those policies once the duty to preserve attached, and that duty continued even after dismissal of an earlier related lawsuit because "there were several indicators that they would be sued again." 462 F. Supp. 2d at 1070; *see also Apple, Inc.*, 888 F. Supp. 2d at 991-92 (finding Samsung violated its duty to preserve by failing to suspend its email system's automatic destruction policy). The same is true here. Even after Lenovo settled *Ponce*, it knew it would be sued again. Lenovo was therefore obligated to suspend its automatic deletion practices at least by March 2016, when *Ponce* was filed, and certainly no later than March 2019, when it received the Atindaana Demand Letter. Lenovo did not do so. Instead, it continued to allow data in Hybris and Flash to be automatically deleted and, after this lawsuit was filed, went further by affirmatively deleting Hybris sales data. *See supra* III.E(2); *see also IO Grp. Inc. v. GLBT Ltd.*, No. 10-cv-1282-MMC-DMR, 2011 U.S. Dist. LEXIS 120819, at *15 (N.D. Cal. Oct. 19, 2011) (failure to suspend automatic deletion function "*over a year*" after the lawsuit was filed" violated duty to preserve) (emphasis original). By failing to preserve and dismantling Hybris, Lenovo deprived Plaintiffs of the most reliable internal records of the

prices and discounts actually displayed for the Class Products during the Class Period.

(3)    The lost pricing data cannot be restored or replaced.

Lenovo cannot reasonably dispute

*See supra* III.D(1); *see also Porter v. City & Cty. of S.F.*, No. 16-cv-03771-CW-DMR, 2018 U.S. Dist. LEXIS 151349, at *9 (N.D. Cal. Sep. 5, 2018) (finding Rule 37 satisfied where "the only entity that maintained a copy of the [ESI] . . . erased it").

*See* CE 487 ("▮▮▮▮▮▮" 2/18/20); CE 396

Because the data

. CE 403                              .

Nor can Lenovo reasonably dispute its Internal Pricing Data cannot be restored or replaced. Lenovo's corporate designee confirmed ▮▮▮▮▮▮ are "not retained after two years" and the Hybris data "was dismantled" and "is not available or backed up now." *See supra* III.E(1)-(2).

**B.    Sanctions are warranted under Rule 37(e)(1) because Plaintiffs are prejudiced.**

Sanctions are warranted under Rule 37(e)(1) because Plaintiffs and the class members are prejudiced by the loss of data. "Prejudice is determined by looking at whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence." *Beeman v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1036 (C.D. Cal. 2018).

This case turns on whether Lenovo advertised false discounts by artificially inflating its reference prices and overstating consumers' purported savings. The spoliated data bears directly on that issue: it would show whether Lenovo's advertised former prices were bona fide prices offered on a regular basis for a reasonably substantial period of time. *See* 16 C.F.R. § 233.1 (requiring former prices be offered for a reasonably substantial period of time); *see also* Cal. Bus. & Prof. Code § 17501 (prohibiting advertising a former price unless it was the prevailing market price during the preceding

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

three months); Cal. Civ. Code § 1770(a)(13) (prohibiting deceptive price reductions). Accordingly, when Plaintiffs moved to compel production of the pricing data *before they learned it had been destroyed*, they explained: "This data goes to the very heart of this case." Disc. Ltr. Br. (dkt. 57) at 1.

The spoliated data is also important common evidence for class certification. It would show the savings advertised to each class member for each transaction, and a simple empirical review of the pricing history would demonstrate classwide liability. *See* Pls.' Mot. for Class Cert. (dkt. 201-3) at 10. Indeed, the very class definitions here depend on identifying "Class Days," which requires historical pricing data. *See* Class Cert. Order (dkt. 270) at 3 n.4, 17. Such data is also relevant to classwide damages. *See* Tregillis Decl. in Support of Pls.' Mot. for Class Cert (dkt. 210-5) ¶¶ 37-38.

By destroying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ its Internal Pricing Data, Lenovo deprived Plaintiffs of evidence of daily prices and discounts and the exact savings represented to consumers at the time of purchase. Because that evidence goes directly to liability, class certification, and damages, there can be no serious dispute Plaintiffs are prejudiced by its loss.

**C.    Sanctions are warranted under Rule 37(e)(2) because Lenovo acted with intent.**

Sanctions are warranted under Rule 37(e)(2) because Lenovo intended to deprive Plaintiffs and the class members of the pricing data's use. Fed. R. Civ. P. 37(e)(2). In this context, intent "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones*, 95 F.4th at 735. Because intent is rarely shown directly, courts may infer intent from circumstantial evidence, including "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.*

The timing of the destruction alone proves Lenovo's intent. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 978 (N.D. Cal. 2022) (timing of the offending conduct is "[t]he most decisive factor" in analyzing intent). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See supra* III.B(3). ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ *See supra* III.C. This sequence shows clear intent. ▮▮▮▮▮▮▮▮▮▮▮▮ cannot be credibly explained as anything other than bad faith. *See Lee v. Cty. of L.A.*, No. 23-cv-6875, 2025 U.S. Dist. LEXIS

172599, at *28 (C.D. Cal. Aug. 29, 2025) (finding intent where "the affirmative act causing the loss cannot be credibly explained as not involving bad faith"). The only reasonable inference is that ████████████████████████████████████████████ After all, Lenovo knew ███ ████████████████████████████████████████████ CE 403, and thus required ███████████████████████████████████████ ███████, CE 495 (emphasis added). Lenovo's ███████████████████████ confirms it knew the destruction of the data was wrongful.

Lenovo's concealment of the spoliation further supports a finding of intent. *See WeRide Corp.*, 2020 U.S. Dist. LEXIS 72738, at *55 (spoliating party's attempt to "cover his tracks" supported a finding of intent). ████████████████████████████████████████████ ███████ *See supra* III.D(1). Then, throughout this litigation, Lenovo concealed ████████████████ ████████████████, and used attorney-client privilege to withhold non-privileged documents and block disclosure of non-privileged information at depositions. *See supra* III.D(2)-(5).[11] Each would have ████████████████████████ led Plaintiffs to discover the spoliation.

Mr. Morey's false deposition testimony also supports finding intent. *See Estate of Bosco v. Cty. of Sonoma*, 640 F. Supp. 3d 918, 927–28 (N.D. Cal. 2022) (intent may be inferred where a party seeks to keep incriminating facts out of evidence). Despite extensive evidence showing ████ ████████████████████████████████████████████, Mr. Morey testified he was unaware of either. *See supra* III.D(6). Mr. Morey gave plainly false answers to straightforward questions. For example, when asked: ██████████████████████████████ ██████████████████████████████████████



---

[11] To be sure, the Atindaana Demand Letter is not privileged. *See Bank of the W. v. Valley Nat'l Bank*, 132 F.R.D. 250, 255 (N.D. Cal. 1990) ("[A] demand letter from one party to its adversary in litigation is not a confidential communication between a client and its lawyer."). Nor can Lenovo claim privilege over ████████████████████████████████████. It is black-letter law the privilege extends only to confidential legal advice; it does not shield underlying facts from disclosure. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Moreover, even if privilege could somehow apply, it was waived. ██████████████████████████████████ ████████████████████████████████ its basis was therefore disclosed to third parties, thereby waiving any conceivable privilege. *Gross v. Scottsdale Ins. Co.*, 2025 U.S. Dist. LEXIS 53151, at *7 (N.D. Cal. Mar. 21, 2025) (attorney-client privilege waived when a party discloses privileged information to a third party not bound by the privilege).

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE

██████████ he answered, "No." CE 928 (Morey 30(b)(6) Dep.). Mr. Morey's testimony is contradicted by ████████████ and his own emails, which show he understood ██ ████████████████████. *See supra* III.D(6).

Mr. Morey's false testimony was not inadvertent. The deposition record shows a coordinated effort by Lenovo and its counsel to prevent disclosure of facts that would lead to discovery of the spoliation, including instructing employees not to answer questions about ██████████ and coaching Mr. Morey to assert privilege or claim ignorance. *See supra* III.D(4), (7). This pattern of directing witnesses to withhold non-privileged information supports a clear inference that Lenovo sought to keep incriminating facts out of evidence and prevent Plaintiffs from discovering the spoliation.

Lenovo's deletion of its Internal Pricing Data reflects a broad pattern of spoliation and further supports finding intent. Courts recognize repeated destruction of discoverable evidence is powerful evidence of willfulness. *See WeRide*, 2020 U.S. Dist. LEXIS 72738, at *44 (sanctions warranted where a defendant engaged in a "disturbing pattern of destroying discoverable material"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 502 n.10 (D. Md. 2010) (prior spoliation is "relevant to [a party's] state of mind"). "[D]estruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (emphasis in original). Here, Lenovo knew the pricing data was not only potentially relevant, but central to proving classwide liability. ████████████████████ ██████████████, even before suit was filed, Plaintiffs informed Lenovo of the critical importance of the CouponSaved data. *See supra* III.E(2). Yet, as Plaintiffs sought Hybris data and ██ ██ in discovery, Lenovo was simultaneously deleting them. *See supra* III.E(1). Having faced class claims over the same deceptive pricing practices three times before, Lenovo was fully aware of the data's significance but took no steps to preserve it. *See* CE 863, 865 (Casimir 30(b)(6) Dep.) (testifying he was unaware of any preservation efforts or the existence of any backups).

**D.      Plaintiffs seek leave to separately brief the precise sanctions warranted.**

This motion addresses Lenovo's spoliation of ESI and Plaintiffs' request for sanctions pursuant to Rule 37(e) and the Court's inherent authority. The loss of that ESI, however, did not occur in isolation. As discussed above (*see supra* III.D) and as will be addressed more fully in a separate

motion, Lenovo and its counsel engaged in a broader pattern of discovery misconduct, including failing to make accurate and timely disclosures; serving incomplete, inaccurate, and misleading discovery responses; misrepresenting to the Court the existence and availability of pricing data; failing to comply with discovery orders; and producing inadequately prepared corporate witnesses. Lenovo's misconduct unreasonably and vexatiously multiplied the proceedings in this case. Plaintiffs therefore intend to file a separate motion addressing that specific misconduct and seeking sanctions under Federal Rules of Civil Procedure 26(g), 26(e), 30(b)(6), and 37(a)-(c), 37(f), as well as 28 U.S.C. § 1927 and the Court's inherent authority.

Because Lenovo's spoliation of ESI and discovery misconduct concern the same evidence and arise from the same conduct aimed at obstructing Plaintiffs' ability to certify a damages class and prosecute their claims, Plaintiffs respectfully request leave to separately brief the appropriate sanctions after the related motion has been filed and fully briefed. Proceeding in this manner promotes efficiency: it permits the Court to evaluate Lenovo's misconduct on a complete record and fashion a single sanctions remedy in light of the full extent of Lenovo's misconduct, including both its spoliation of evidence and its separate litigation misconduct.

**E.    In the alternative, Plaintiffs seek leave to conduct spoliation discovery.**

In the alternative, if the Court is not prepared to find spoliation on the current record, Plaintiffs respectfully request leave to conduct targeted spoliation discovery. Lenovo concealed the destruction of ███████████████████ its own Internal Pricing Data throughout this litigation until the close of fact discovery. Targeted discovery is therefore warranted to determine the full scope of the destruction, including when and how it occurred, who authorized it, what preservation steps Lenovo failed to take, and the extent of Lenovo's and its counsel's concealment. This will ensure Plaintiffs have a fair opportunity to present the Court with a complete record before it decides whether spoliation occurred and what sanctions, if any, are appropriate.

**VI.    CONCLUSION**

Plaintiffs respectfully request the Court find Lenovo spoliated ███████████████ its own Internal Pricing Data, and order briefing on the appropriate sanctions. In the alternative, Plaintiffs request leave to conduct spoliation discovery.

Dated:  April 7, 2026

EDGE, A PROFESSIONAL LAW
CORPORATION

By:    /s/ Daniel A. Rozenblatt
Daniel A. Rozenblatt

CAPSTONE LAW APC
Cody R. Padgett
Shahin Rezvani
Majdi Y. Hijazin

*Attorneys for Plaintiffs*

Case No. 4:21-cv-06770-JSW-RMI

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST LENOVO AND ITS COUNSEL FOR SPOLIATION OF EVIDENCE