EDGE, A PROFESSIONAL LAW
CORPORATION
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
981 Mission Street 20
San Francisco, California 94103
Telephone: (415) 515-4809

CAPSTONE LAW APC
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Shahin Rezvani (SBN 199614)
Shahin.Rezvani@capstonelawyers.com
Majdi Y. Hijazin (pro hac vice)
Majdi.Hijazin@capstonelawyers.com
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs and the Certified Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ANDREW AXELROD and ELIOT BURK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENOVO (UNITED STATES) INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:21-cv-06770-JSW-RMI<br>*Assigned to the Hon. Jeffrey S. White*<br><br>**PLAINTIFFS' OPPOSITION TO LENOVO'S ADMINISTRATIVE MOTION TO ENFORCE SCHEDULING ORDER**<br><br>Action Filed:    Aug. 31, 2021<br>FAC Filed:    Jan. 25, 2022<br>Trial Date:    None set |

Lenovo seeks a determination that Plaintiffs' spoliation motion is time-barred.  (Dkt. No. 382, Lenovo's Adm. Mot. to Enforce the Scheduling Order ("Adm. Mot.") at 1:3-6, 3:8-10.)  It asserts all contentions made in that motion "were raised before the deadline to file a timely motion."  (*Id.* at 1:19-21.)  That is demonstrably false.  The three communications on which Lenovo relies do not mention spoliation or data destruction.[1]  The notion they show "Plaintiffs were aware of the grounds of their Motion not later than November 14, 2025" taxes credulity.  The Court should find Plaintiffs' spoliation motion timely and appropriate for Magistrate Judge Illman's consideration.

### A.    Plaintiffs discovered the spoliation at issue in November 2025.

Plaintiffs did not learn of the spoliation until November 2025.  During Lenovo's November 10 30(b)(6) deposition, its designee revealed for the first time in this litigation Lenovo deleted the very pricing data which was the subject of no fewer than 15 discovery disputes before Magistrate Judge Illman.  (*See* Dkt. Nos. 57, 61, 73, 98, 101, 113, 121, 126, 151, 170, 174, 177, 184, 193, 198.)  Then, on November 26, non-party Hattis & Lukacs produced documents showing Lenovo ███████████ ██████████████████████████████████████████████ ██████████████████████.

Plaintiffs first caught wind of a secret ████████ when Lenovo finally produced, after a six-month delay, its May 22, 2025 privilege log.  (Dkt. No. 380, Mot. for Sanctions against Lenovo and Its Counsel for Spoliation of Evidence ("Spoliation Mot."), at 9:17-10:15.)  The log identifies a file titled "Hattis & Lukacs March 22 Consumer Demand.pdf," which appears to be a demand letter sent by a class action law firm.  (*Id.*)  Plaintiffs promptly challenged Lenovo's improper withholding of the letter, but Lenovo claimed it was protected by attorney-client privilege because it was attached to an email from its in-house counsel and thus demonstrates counsel's thought process.  (*Id.* at 10:16-23.)  Plaintiffs also demanded Lenovo produce its communications and agreements with Hattis & Lukacs, but it objected and refused to produce the requested documents.  (*Id.* at 10:24-11:2.)  Plaintiffs then sought the documents from Hattis & Lukacs.  Lenovo opposed Plaintiffs' efforts, telling the Court the documents were irrelevant and the arguments for obtaining the documents were "based purely on

---

[1] Lenovo did not submit the communications on which it relies.  Plaintiffs therefore attach them to the Declaration of Daniel Rozenblatt ("Rozenblatt Decl.") filed concurrently herewith.  (Dkt. No. 390-1.)

Plaintiffs' self-serving speculation." (*See* Dkt. No. 325, Lenovo's Opp. to Pls.' Mot. to Compel.)  It made those assertions knowing what the subpoenaed documents would reveal.

On November 26, 2025, Hattis & Lukacs complied with the Court's production order.  (Dkt. No. 343, Order on Disc. Ltr. Br.) Included within its production was the purportedly privileged demand letter.  As expected, it contains no legal advice.  (Dkt. No. 380-3, Compendium of Evid. in Support of Spoliation Mot., Vol. 1, Ex. 8.)  Instead, it reveals the existence of a database of daily prices and screenshots—the same pricing data Plaintiffs repeatedly requested during discovery.  (*Id.* at 3.)  The documents describe the database as ████████████████████████████ ████████████████████████████████ ██████████████████████████.  (Spoliation Mot. at 4:21-5:19, 21:8-13.)  They further reveal Lenovo ████████████████████ ████████████████████████████████ ███████████████ (*Id.* at 6:8-22.)  They also show Lenovo ███████████ ████████████████████████████████ ██████████████████████████ (*Id.*)  Plaintiffs did not know any of the foregoing facts before November 26, 2025.

**B.     Lenovo conflates disputes over discovery misconduct with discovery of the spoliation.**

Lenovo conflates disputes over discovery misconduct with discovery of the spoliation itself. While Plaintiffs raised concerns about Lenovo's document withholding and its counsel's instructions not to answer deposition questions, those disputes did not themselves reveal the spoliation.

Lenovo cites three communications as evidence Plaintiffs knew of the spoliation before fact discovery closed.  *First*, Lenovo cites a June 12, 2025 email from Plaintiffs.[2]  (Adm. Mot. at 1:22-2:6.)  But that email does not mention spoliation or data destruction.  (Rozenblatt Decl., Ex. 1.) Instead, the email challenges Lenovo's privilege claim over the Hattis & Lukacs demand letter, whose contents were unknown to Plaintiffs at the time.  Only after Plaintiffs received the letter in November 2025 did they understand why Lenovo withheld it: it reveals the existence of pricing data Lenovo

---

[2] Although Lenovo refers to a "letter," Ms. Meyer's supporting declaration (Dkt. No. 382-1 ¶ 3) and Lenovo's July 17, 2025 response (Dkt. No. 382-2) refer to an "email."

PLAINTIFFS' OPPOSITION TO LENOVO'S ADMINISTRATIVE MOTION TO ENFORCE SCHEDULING ORDER

repeatedly claimed was unavailable.  (*See supra.*)  Had Plaintiffs found out about the data, they would have sought to obtain it—███████████████████████████.

*Second*, Lenovo cites a July 7, 2025 letter from Plaintiffs.  (Adm. Mot. at 2:7-13.)  That letter, too, does not mention spoliation or data destruction.  (Rozenblatt Decl., Ex. 2.)  It instead addresses Lenovo's improper privilege instructions during March 2024 depositions of three Lenovo employees.  Those instructions prevented testimony about a ██████████.  Although the employees testified they did not communicate with counsel about the ████ Lenovo nevertheless asserted privilege over *information* that came "directly *or indirectly*" from counsel or that "*derived*" from counsel, and instructed them to answer only if they had "independent knowledge" or an "independent basis." (*Id.* at 1-3.)  Plaintiffs challenged the improper instructions, not because they knew about the spoliation, but because Lenovo's counsel was preventing deponents from answering questions that did not call for privileged communications.  Only after Plaintiffs received the ██████████ on November 26, 2025, did they learn the ████████████████.  (Spoliation Mot. at 5:25-6:4, 7:21-8:9.)  Had Plaintiffs found out about the ██████ in March 2024, they would have pursued it in discovery, and uncovered it ███████████████████████.

*Third*, Lenovo cites a November 14, 2025 letter from Plaintiffs.  (Adm. Mot. at 2:14-3:3.)  That letter also does not mention spoliation or data destruction.  (Rozenblatt Decl., Ex. 3.)  The letter addresses Lenovo's discovery misconduct which came to light during Lenovo's Rule 30(b)(6) deposition in November 2025.  Although the letter references Lenovo's concealment of the demand letter and ██████ (*id.* at 3), it does not address the spoliation.  Indeed, during the deposition, Lenovo continued concealing the spoliation by asserting privilege over the information and claiming it had no knowledge of it.  (*See* Spoliation Mot. at 11:28-12:24.)

**C.  Good cause exists to hear Plaintiffs' spoliation motion.**

The Federal Rules of Civil Procedure and the Northern District's Local Rules provide exceptions to scheduling deadlines for good cause.  *See* Fed. R. Civ. P. 16(b)(4); Civil L.R. 37-3.  To determine whether good cause exists, courts examine the opposing party's conduct.  Courts routinely find good cause where the moving party diligently sought the relevant material but was "thwarted by Defendant's failure to comply with its discovery obligations," *Martinez v. Aramark Servs., Inc.*, 2026

LX 30846, at \*8 (E.D. Cal. Jan. 28, 2026), or where it was "defendant's dawdling, not plaintiff's," that caused critical evidence to emerge after the deadline, *Orozco v. Midland Credit Mgmt.*, 2013 LX 77170, at \*9 (E.D. Cal. July 29, 2013). *See also In re Sandisk SSDs Litig.*, No. 23-cv-4152-RFL-LJC, 2025 LX 323591, at \*6 (N.D. Cal. Aug. 11, 2025) (reopening discovery where defendants had "brought this situation on themselves by withholding documents from production without sufficient cause"); *Macias v. City of Clovis*, 2016 LX 23925, at \*8 (E.D. Cal. Mar. 24, 2016) (motions to modify scheduling orders "are more often granted when the opposing party's actions caused delay"). Here, Lenovo's four-year concealment caused the delay it now invokes as reason to dodge sanctions.

District courts routinely reject the notion spoliation motions are untimely merely because they are filed after fact discovery closes. For example, in *Skyline Advanced Tech. Servs. v. Shafer,* this Court found no unreasonable delay where the plaintiff filed its spoliation motion six months after fact discovery closed. No. 18-cv-6641-CRB-RMI, 2020 LX 62338, at \*27, 29 (N.D. Cal. July 14, 2020) (Illman, J.). The defendant asserted the plaintiff knew of the spoliation for seven to nineteen months before filing its motion. *Id.* at \*21. But the Court rejected that assertion as "conclusory," found the plaintiff's explanation "reasonable," and held the motion was filed "without unreasonable delay." *Id.* at \*21, 29.[3] The Court also emphasized the spoliating party had "identified no prejudice whatsoever" from the motion's timing. *Id.* at \*29. Here, as in *Skyline,* Lenovo's assertion Plaintiffs knew of the spoliation for six months to two years is conclusory and unsupported. (Adm. Mot. at 3:4-10.) The evidence came to light only during Lenovo's Rule 30(b)(6) deposition and after Hattis & Lukacs produced documents on November 26, 2025. Plaintiffs thus could not have filed the motion by the November 21, 2025 deadline imposed by Rule 37-3.

The four-month period during which Plaintiffs prepared their motion is reasonable given the scale of the concealment they uncovered and now prove. Once Hattis & Lukacs produced the documents pursuant to court order, Plaintiffs had to review them and piece together the full extent of

---

[3] Other courts applying the same principle reach the same conclusion. In *Zucchella v. Olympusat, Inc.*, the court rejected a time-bar argument where a spoliation motion was filed three months after fact discovery closed because "the ongoing discovery saga in this case has delayed bringing a motion for sanctions." No. 19-cv-7335, 2021 U.S. Dist. LEXIS 257672 (C.D. Cal. Dec. 20, 2021). Such cases show the relevant inquiry is not the mere passage of time, but whether the timing is reasonable considering when and how the spoliation evidence came to light.

PLAINTIFFS' OPPOSITION TO LENOVO'S ADMINISTRATIVE MOTION TO ENFORCE SCHEDULING ORDER

Lenovo's concealment.  That required analyzing thousands of pages of discovery disclosures, discovery responses, discovery motions, deposition testimony, meet-and-confer correspondence, privilege logs (as well as Lenovo's massive document production).  Even after narrowing the record to the most probative evidence, the motion cites 65 exhibits comprising nearly a thousand pages.

Courts recognize diligence includes taking time to analyze newly obtained evidence.  *See Symantec Corp. v. Veeam Corp.*, No. 12-cv-700-SI, 2013 U.S. Dist. LEXIS 97740, at *11 (N.D. Cal. July 11, 2013) (finding good cause where delay was caused by late, voluminous production); *Mat Van v. Sheldon Good & Co. Auctions*, 2009 U.S. Dist. LEXIS 301, at *9 (S.D. Cal. Jan. 5, 2009) (finding good cause where delay in production made it impossible to review the documents and take depositions before scheduling order deadline).  Here, the surrounding schedule further underscores the timeliness of Plaintiffs' motion: Plaintiffs finalized three expert reports in December, took and defended five expert depositions in January, and opposed Lenovo's motion to decertify in February and March.  Just as important, no trial date is set, and thus Lenovo cannot (and does not) identify any "prejudice whatsoever stemming from this alleged delay."  *See Skyline*, 2020 LX 62338, at *29.

Plaintiffs acted diligently and filed their spoliation motion "as soon as practicable" once they uncovered Lenovo's concealment, and Lenovo will suffer no undue prejudice.  *See* Civil L.R. 7-8(c).  Good cause exists to hear the Motion.

* * *

For the foregoing reasons, Plaintiffs respectfully request the Court deny Lenovo's administrative motion and find Plaintiffs' spoliation motion timely.

Dated:  April 17, 2026

EDGE, A PROFESSIONAL LAW CORPORATION

By:    /s/ Daniel A. Rozenblatt
       Daniel A. Rozenblatt

CAPSTONE LAW APC
Cody R. Padgett
Shahin Rezvani
Majdi Y. Hijazin

*Attorneys for Plaintiffs and the Certified Classes*

-5-                    Case No. 4:21-cv-06770-JSW-RMI